**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDVIN RUSIS, HENRY GERRITS, and PHIL MCGONEGAL, individually and on behalf of all other similarly situated individuals, ) ) ) ) ) | Civil Action No. _____ |
| Plaintiffs, ) | **JURY DEMANDED** |
| v. ) | |
| INTERNATIONAL BUSINESS MACHINES CORP. ) ) | |
| Defendant. ) | |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

1.       This is a class and collective action brought by Edvin Rusis, Henry Gerrits, and Phil McGonegal on behalf of themselves and all other similarly situated employees who have worked for Defendant International Business Machines Corporation (hereinafter "IBM"), alleging that IBM, through its layoff and hiring practices, violated (1) the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621 *et seq.*; (2) the California Fair Employment and Housing Act, Cal. Gov. Code § 12941 (with respect to California employees); and (3) the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3 (with respect to North Carolina employees).  As described further below, IBM has discriminated, and continues to discriminate, against its older workers, both by laying them off disproportionately to younger workers and by not hiring them for open positions. Over the last several years, IBM has been in the process of systematically laying off older

employees in order to build a younger workforce. Between 2012 and the present, IBM has laid off at least 20,000 employees over the age of forty. Such discriminatory layoff and hiring practices constitute unlawful discrimination under the ADEA and state anti-discrimination law.

2.      Plaintiffs bring these claims on behalf of themselves and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

3.      Plaintiffs also bring these claims under the laws of the states in which they have worked pursuant to Fed. R. Civ. P. 23.

## II.   PARTIES

4.      Plaintiff Edvin Rusis is fifty-nine (59) years old and resides in Laguna Niguel, California. Mr. Rusis worked for IBM for approximately fifteen (15) years before his layoff, effective June 27, 2018.

5.      Plaintiff Henry Gerrits is sixty-seven (67) years old and resides in Cary, North Carolina. Mr. Gerrits worked for IBM for approximately thirty-three (33) years, before his layoff, effective on June 27, 2018.

6.      Plaintiff Phil McGonegal is fifty-five (55) years old and resides in Atlanta, Georgia. Mr. McGonegal worked for IBM for approximately thirty-four (34) years before his layoff, effective approximately June 30, 2018.

7.      Plaintiffs bring these claims on behalf of themselves and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

2

8.    Plaintiff Rusis also brings this case as a class action on behalf of himself and all similarly situated individuals who worked for IBM in California, pursuant to Fed. R. Civ. P. 23.

9.    Plaintiff Gerrits also brings this case as a class action on behalf of himself and all similarly situated individuals who worked for IBM in North Carolina, pursuant to Fed. R. Civ. P. 23.

10.    Defendant International Business Machines Corp. is a New York corporation with its principal place of business in Armonk, New York. IBM is an American multinational technology business that offers services and goods ranging from computing, cloud platforms, advanced analytics tools and others.

III.    **JURISDICTION AND VENUE**

11.    This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiffs have brought a claim pursuant to the federal Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq*. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

12.    The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is in Armonk, New York.

IV.    **STATEMENT OF FACTS**

13.    Plaintiffs were among thousands of IBM employees to be laid off recently, as the result of a shift in IBM's personnel focus to the generation of workers referred to as "Millennials" (which IBM defines as the generation born after 1980) that began in

3

approximately 2012.  At that time, IBM began a program to reform itself into a leading company in the fields of cloud services, big data analytics, mobile, security and social media. As a part of this transformation, IBM endeavored to begin heavily recruiting Millennials in order to make the face of IBM younger, while at the same time pushing out older employees. In an article published by ProPublica following an investigation of IBM's hiring practices, ProPublica reported that it estimates that "in the past five years alone, IBM has eliminated more than 20,000 American employees ages 40 and over, about 60 percent of its estimated total U.S. job cuts during those years." Peter Gosselin and Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (March 22, 2018), https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/

14.     As reported by ProPublica, IBM's shift in focus toward the Millennial workforce came as "IBM was falling behind . . . by failing to quickly devise innovative uses for the internet like its new rivals, Google, Facebook, and Amazon." Id. In response to that problem, IBM's CEO Virginia Rommetty "launched a major overhaul that aimed to make IBM a major player in the emerging technologies of cloud services, big data analytics, mobile security and social media, or what came to be known inside as CAMS" and "sought to sharply increase hiring of people born after 1980." Id. Additionally, IBM embraced the belief that "CAMS are driven by Millennial traits." Id.

15.     Moreover, in 2006 one of IBM's consulting arms issued a paper that referred to workers in the "Baby Boomer" generation as "gray hairs" and "old heads," stated that "successor generations . . . are generally much more innovative and receptive to technology than baby boomers," and advised that "What businesses can't afford to do is simply rehire their experienced workers and put them back into their old

jobs." <u>See</u>, The Maturing Workforce: Innovation in Workforce Enablement, IBM

Business Consulting Services, https://www-935.ibm.com/services/uk/bcs/pdf/maturing-

workforce-feus01291-1.pdf (2006).

16.     As another expression of IBM's shift in focus to embrace Millennials, at a

2014 IBM conference called "Reinvention in the Age of the Millennial," IBM announced

its intent to "embrace the 'Millennial mindset'" and announced that "What's good for

Millennials is good for everyone." <u>See</u> Reinvention in the Age of the Millennial,

https://ibmcai.com/2014/12/16/reinvention-in-the-age-of-the-millennial/ (Dec. 16, 2014).

17.     IBM pared down the population of its older workers largely through what

IBM refers to as "Resource Actions," reductions in force or layoffs, in other words. IBM

shields its youngest employees from layoff, exempting recent college graduates from

reduction for nine months from their hire date.

18.     Prior to 2014, IBM provided lists to any workers who were laid off, which

disclosed the positions and ages of all the employees laid off from their business units

at the same time, as well as a list showing the positions and ages of all those in the

business units that were not being laid off.  IBM distributed this information, presumably,

in order to comply with the Section 626(f) of the ADEA, which requires disclosure of this

information if an employer seeks to obtain a release of age discrimination claims from a

group of employees. However, in 2014, in an apparent effort to conceal its systematic

effort to shed its older workers, IBM stopped disclosing this information to the

employees. While IBM could no longer include a release of ADEA claims in its

severance agreements with its employees as a result, it opted instead to require its

employees to agree to binding individual arbitration of those claims, in order to receive a

small severance payment.  Many IBM employees who were laid off, including the named plaintiffs in this action, rejected the severance offer and did not sign the arbitration agreement.

19.      Plaintiff Rusis began working at IBM in 2003 as a strategic services specialist and later became a solution manager for IBM's global system integrator alliances. In March 2018, Plaintiff Rusis received a letter from IBM stating that he was being laid off, effective on June 27, 2018. After being notified that he would be laid off, Plaintiff Rusis used IBM's internal hiring platform to apply for five positions for which he was qualified, including one position on his former Global System Integrator Sales team. Plaintiff Rusis did not receive a response regarding any of these job applications.

20.      Plaintiff Gerrits began working for IBM, in August 1985, and most recently held the position of global commodity manager. On March 29, 2018, Plaintiff Gerrits received a letter from his manager informing him that he was being laid off by IBM effective June 27, 2018.  Plaintiff Gerrits was one of the oldest employees in his group. Although Plaintiff Gerrits applied to several positions through IBM's internal hiring platform for which he was qualified, he did not receive any response to his applications.

21.      Plaintiff McGonegal began working for IBM in 1986 in Atlanta, Georgia. Most recently, Plaintiff McGonegal worked for IBM as a second line manager of its asset management organization. Plaintiff McGonegal was let go by IBM on June 30, 2018.

22.      Upon information and belief, IBM has flagged the individuals who have been laid off through its Resource Actions as ineligible for consideration for other positions through IBM's internal hiring platform.  It has used this type of technique to

6

prevent its older workers who have been laid off from obtaining new positions within the company.

**V.**    **COLLECTIVE ACTION ALLEGATIONS**

23.    Plaintiffs bring this case as a collective action on behalf of IBM employees who have worked anywhere in the country who may opt in to this action.

24.    These employees who may opt in to this collective action are similarly situated to the named Plaintiffs. They have all worked for IBM under substantially similar conditions and have all been subjected to IBM's policy and practices of targeting for layoff, and disproportionately laying off employees over forty (40) years old, and then precluding those employees from consideration for other open internal IBM positions for which they are qualified.

**VI.**   **CLASS ACTION ALLEGATIONS**

25.    Plaintiffs also bring this case as a class action on behalf of IBM employees over the age of forty (40) and were laid off, who have worked for IBM in California or North Carolina.

26.    These California and North Carolina classes all meet the prerequisites of Fed. R. Civ. P. 23 in that:

>   a.    The classes are so numerous that joining all members is impracticable. The exact number of the members of each class is unknown, but it is estimated that there have been well more than forty (40) IBM employees over the age of forty (40) who have been laid off in each of these states. As a result, joinder of all of these individuals is impracticable.

b.  There are questions of fact and law common to all of the putative class members, because all of those individuals were subject to IBM's uniform effort to shift its personnel focus to Millennials, leading to the unlawful termination of a disproportionate number of older IBM employees, in violation of the laws of their respective states. Additionally, upon information and belief, those individuals were red-flagged in IBM's internal hiring system, meaning that they were not considered for jobs for which they were qualified because of their age.

c.  With respect to these common issues, the claims of the named plaintiffs are typical of the claims of IBM employees over the age of forty (40) who had worked in each of these states and been laid off by IBM.

d.  Plaintiffs and their counsel will fairly and adequately represent the interests of each class. The named plaintiffs have no interests adverse to or in conflict with the class members whom they propose to represent. Plaintiffs' counsel have litigated and successfully resolved many dozens of class action cases involving employment law and many discrimination claims.

e.  The questions of law or fact common to all members of each class predominate over any questions affecting only individual members. The common questions include, among other things, whether IBM targeted older employees for layoff and whether IBM refused to consider hiring those employees to other open positions for which they were qualified due to their age.

     f.   Litigating these claims as a class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in a highly inefficient duplication of discovery for many IBM employees in these states, briefing of legal issues, and court proceedings.

## VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES

27.    Plaintiffs timely filed Class Charges of Discrimination with the EEOC. More than sixty (60) days have passed since they submitted those Charges of Discrimination.

## COUNT I

(Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*)
(On Behalf of Plaintiffs and Class)

28.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

29.    IBM's conduct in systematically targeting for layoff employees who are older than forty (40), including Plaintiffs, and refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the ADEA. IBM's violation of the ADEA has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs and similarly situated employees have lost their jobs and have been denied the fair opportunity to obtain new positions with IBM.

30.    This claim is brought on behalf of a class of IBM employees across the country who may choose to opt in to this case, pursuant 29 U.S.C. §§ 216(b), 626(b).

## COUNT II

(California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.*)
(On Behalf of Plaintiff Rusis and Class)

31.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

32.     Plaintiff Rusis brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in California and have been subjected to the discriminatory practices described herein.  IBM's conduct in systematically targeting for layoff employees who are older than forty (40), including Plaintiff Rusis, and refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.* IBM's violation of California law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Rusis and similarly situated employees who have worked in California have lost their jobs and have been denied the fair opportunity to obtain new positions with IBM.

## COUNT III

(North Carolina Employment Practices Act,
N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3)
(On Behalf of Plaintiff Gerrits and Class)

33.    Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

34.    Plaintiff Gerrits brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in North Carolina and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for layoff its employees who are older than forty (40), including Plaintiff Gerrits, and refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the North Carolina Employment Practices Act, N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3. IBM's violation of North Carolina law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Gerrits and similarly situated employees have lost their jobs and have been denied the fair opportunity to obtain new positions with IBM.

## JURY DEMAND

Plaintiffs request a trial by jury on all claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1.      Permission for Plaintiffs to notify other IBM employees of their right to opt-in to this action under the ADEA, pursuant to 29 U.S.C. §§ 216(b), 626(b);

2.      Find and declare that IBM violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*;

3.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count II and appoint Plaintiff Rusis and his counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in California, and were laid off;

4.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count III and appoint Plaintiff Gerrits and his counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in North Carolina, and were laid off;

5.      Award compensatory damages, including back pay and front pay, in an amount according to proof;

6.      Reinstate Plaintiffs and similarly situated employees to their positions;

7.      Award all costs and attorney's fees incurred prosecuting this claim;

8.      Award liquidated damages and all appropriate statutory and regulatory damages;

9.      Award interest;

10.     Issue injunctive relief in the form of an order directing IBM to comply with the ADEA and applicable state law.

11.     Any other relief to which Plaintiffs and class members may be entitled.

Dated: September 17, 2018

Respectfully submitted,

EDVIN RUSIS, HENRY GERRITS, and
PHIL MCGONEGAL, on behalf of themselves
and all others similarly situated,

By their attorneys,


/s/ Shannon Liss-Riordan
Shannon Liss-Riordan,
*pro hac vice forthcoming*
Thomas Fowler,
*pro hac vice* forthcomimg
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, tfowler@llrlaw.com