UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDVIN RUSIS, HENRY GERRITS, PHIL MCGONEGAL, and DAVID HO ENG, individually and on behalf of all other similarly situated individuals,<br><br>            Plaintiffs,<br>   v.<br><br>INTERNATIONAL BUSINESS MACHINES CORP.<br><br>            Defendant. | 1:18-cv-08434 (DAB) |

## DECLARATION OF SUSAN SPECTOR

I, Susan Spector, declare as follows:

1. I have worked with International Business Machines Corporation ("IBM" or the "Company") for approximately 36 years, and I have been a manager for most of my tenure at the Company. In early 2019, I began my current role as Vice President, GTS Journey to Cloud Enablement. I currently work out of IBM's offices in Armonk, New York.

2. I make this declaration based on my personal knowledge and based on my familiarity with and personal review of IBM's business records as described below. If called as a witness, I could and would competently testify to the facts contained here.

3. I am 60 years old and am competent to make this declaration.

4. Before I became Vice President, GTS Journey to Cloud Enablement, my title was Vice President, GTS Infrastructure Services Offering and Sales Enablement. In this role, I worked in the Infrastructure Services business unit within IBM's Global Technology Services

("GTS") business group. In 2018 I reported to Steven Welsh, General Manager, WW GTS Infrastructure Services Sales & Enablement.

5. In January 2018, I was charged with forming a sales enablement team with individuals who came to me from various parts of the Company. The individuals on this new team would provide support and training to IBM employees who sold GTS' services. When my team first formed, it included approximately five U.S.-based individuals, all of whom came to me from various parts of the Company. These individuals were located in New York, North Carolina, Texas, and Colorado.

6. Cheryl Hart was one of my direct reports on my new sales enablement team. Ms. Hart worked from Denver, Colorado. I never met Ms. Hart, and I do not know her age.

7. As a member of my sales enablement team, Ms. Hart was responsible for sales enablement for a group of sellers who worked on very large deals that were essential to GTS. Typically, these deals involved additions or changes to an existing client arrangement, such as situations where the client wanted to move its IT infrastructure to the Cloud or incorporate artificial intelligence. Alternatively, these deals could involve a full suite of IBM services for new clients. The sellers for whom Ms. Hart was responsible for sales enablement could work with a client on the same deal for as long as 18 months.

8. Ms. Hart's day-to-day tasks included attending meetings and networking with her peers. Ms. Hart was responsible for building a community for her sales team, managing communication among her team, and providing classes or other training opportunities for the sellers. Ms. Hart was also involved in an internal initiative in which we examined sales tools to see how IBM tools could be made more effective.

9. IBM uses "Bands" to classify jobs. Non-executive Bands run from 1 to 10, with 10 being the highest non-executive level. Ms. Hart, and the other U.S. members of my team, came to me as Band 10 employees. However, Ms. Hart and another Band 10 employee were new to the sales enablement role. Both had been in traditional sales roles prior to joining my team. Specifically, Ms. Hart's previous position was an international sales role. All of the other U.S. members of my new team had held sales-enablement-type roles in other IBM departments before joining my team.

10. In or around April 2018, I first learned that I would need to reduce my team by one through a staff reduction. I was given the discretion to select the member of my team who would be subject to the Resource Action.

11. In determining which of my employees would be subject to the Resource Action, I examined the workload of my team members and quickly determined that I would select one of my two employees who were new to the sales enablement role. Ms. Hart and my other Band 10 employee new to the sales enablement role did not have a significant amount of work at that time. In contrast, the other individuals on my team who had already been performing a sales enablement role prior to joining my team came onto my team with a set of sellers they were already supporting. Because these other team members were established in the sales enablement role by the time they joined my team, they had a greater workload at the time of the Resource Action. As such, I felt that I could let go of one of my two employees new to the sales enablement position without impacting client deliverables.

12. When deciding between Ms. Hart and the other employee new to the sales enablement role for the Resource Action, I compared each employee's performance, as well as their most recent client successes and responsibility to others on the team. I evaluated the

3

respective accomplishments of Ms. Hart and the other employee and determined that Ms. Hart had accomplished very little when compared to the other employee. For example, one of Ms. Hart's responsibilities was setting up periodic calls for her sellers to create a community within their team. These calls were unsuccessful – very few sellers joined or participated in Ms. Hart's calls. Ms. Hart did not appear to reflect critically on how to improve the calls or whether it was worth the effort to continue planning and scheduling these calls. In general, Ms. Hart was not a self-starter and frequently expressed that she did not know what to do and needed day-to-day direction. This is not behavior that I expect from a Band 10 employee. In contrast, the other employee that was new to the sales enablement role demonstrated initiative and had developed solid relationships in a relatively short amount of time.

13. After reviewing this information, I selected Ms. Hart's position for reduction.

14. Age was not a factor that I considered in making my selection for the Resource Action.

15. I conferred with Mr. Welsh concerning my decision to select Ms. Hart for the Resource Action, and he agreed with and approved my selection. Only Mr. Welsh and I were involved in the decision to select Ms. Hart for separation.

16. When I informed Ms. Hart that she was selected for the Resource Action, she was calm and professional. Ms. Hart never expressed any indication that she thought she was selected for the Resource Action because of her age.

17. I did not backfill Ms. Hart's position after her separation from IBM. The majority of Ms. Hart's responsibilities were absorbed by the other new sales enablement employee on my team.

18. This declaration is not intended to be a complete recitation of my knowledge of the details surrounding Ms. Hart's employment with, or separation of employment from, IBM.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 22, 2019

_____
Susan Spector