UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDVIN RUSIS, HENRY GERRITS, PHIL MCGONEGAL, and DAVID HO ENG, individually and on behalf of all other similarly situated individuals,<br><br>        Plaintiffs,<br>  v.<br><br>INTERNATIONAL BUSINESS MACHINES CORP.<br><br>        Defendant. | **1:18-cv-08434 (VEC)** |

**DEFENDANT INTERNATIONAL BUSINESS MACHINES CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO
<u>ARBITRATION OPT-INS AND TO COMPEL ARBITRATION</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

    I.      The Separation Agreements. .................................................................................................. 2

    II.     Arbitration Proceedings. ........................................................................................................ 4

    III.    Procedural History. ................................................................................................................ 5

LEGAL STANDARD................................................................................................................... 6

ARGUMENT ................................................................................................................................. 7

    I.      The Prior Arbitration Opt-Ins—Whose ADEA Claims Have Already Been Adjudicated in Arbitration—Should Be Dismissed. ................................................................................... 7

    II.     The Opt-Ins Who Signed Separation Agreements With An Arbitration Clause And A Class and Collective Action Waiver Are Barred From Participating In This Action And Must Be Compelled To Arbitration .................................................................................. 11

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*14 Penn Plaza LLC v. Pyett*,
  556 U.S. 247 (2009) .................................................................................................... 13, 14

*Am. Ex. Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) .............................................................................................................. 12

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) .............................................................................................................. 12

*Chen-Oster v. Goldman, Sachs & Co.*,
  --- F. Supp. 3d ---, 2020 WL 1467182 (S.D.N.Y. Mar. 26, 2020) ........................................ 12

*Conntech Dev. Corp. v. Univ. of Conn. Educ. Props., Inc.*,
  102 F.3d 677 (2d Cir. 1996) .................................................................................................. 10

*Conopco, Inc. v. Roll Int'l*,
  231 F.3d 82 (2d Cir. 2000) ...................................................................................................... 6

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991) ...................................................................................................... 2

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) .................................................................................................... 11, 12

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ................................................................................................................ 12

*Goldstein v. Doft*,
  236 F. Supp. 730 (S.D.N.Y. 1964), *aff'd*, 353 F.2d 484 (2d Cir. 1965) ................................. 8

*Gracia v. City of N.Y.*,
  2017 WL 4286319 (S.D.N.Y. Sept. 26, 2017) ........................................................................ 2

*Green Tree Fin. Corp. Ala. v. Randolph*,
  531 U.S. 79 (2000) .................................................................................................................. 7

*Hayden v. Paterson*,
  594 F.3d 150 (2d Cir. 2010) .................................................................................................... 6

*Horowitz v. AT&T Inc.*,
    2018 WL 1942525 (D.N.J. Apr. 25, 2018) ............................................................... 13, 14

*Hutchens v. Capital One Services, LLC*,
    2020 WL 3053657 (E.D. Va. June 8, 2020) ............................................................ 13, 14

*Int'l Eng'g & Constr. S.A. v. Baker Hughes*,
    399 F. Supp. 3d 194 (S.D.N.Y. 2019) ............................................................................ 2

*Lobban v. Cromwell Towers Apts.*,
    345 F. Supp. 3d 334 (S.D.N.Y. 2018) ............................................................................ 9

*McLeod v. Gen. Mills, Inc.*,
    856 F.3d 1160 (8th Cir. 2017) ................................................................................ 13, 14

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ................................................................................... 6, 7, 11

*Michaelesco v. Estate of Richard*,
    355 F. App'x 572 (2d Cir. 2009) .................................................................................... 9

*Monahan v. N.Y.C. Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000) ........................................................................................... 8

*Nghiem v. NEC Elec., Inc.*,
    25 F.3d 1437 (9th Cir. 1994) ....................................................................................... 10

*Nicosia v. Amazon.com, Inc.*,
    84 F. Supp. 3d 142 (E.D.N.Y. 2015) *aff'd in part, vacated in part on other
    grounds* 834 F.3d 220 (2d Cir. 2016) ......................................................................... 12

*PolyOne Corp. v. Westlake Vinyls, Inc.*,
    937 F.3d 692 (6th Cir. 2019) ....................................................................................... 10

*Pool Deals, LLC v. United Parcel Serv., Inc.*,
    --- F. Supp. 3d . ---, 2020 WL 1982883 (W.D.N.Y. Apr. 16, 2020) ............................. 7

*PRC Harris, Inc. v. Boeing Co.*,
    700 F.2d 894 (2d Cir. 1983) ........................................................................................... 9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ..................................................................................................... 13

*Streit v. Amdocs, Inc.*,
    307 F. App'x 505 (2d Cir. 2009) ...................................................................................8

*Thomas v. Atl. Express Corp.*,
    2009 WL 856993 (S.D.N.Y. Mar. 31, 2009) ..................................................................8

*U.S. Postal Serv. v. Gregory*,
    534 U.S. 1 (2001) (Ginsburg, J. concurring) .................................................................8

**STATUTES**

Age Discrimination in Employment Act .................................................................. passim

Federal Arbitration Act ................................................................................................1, 11, 12

Older Workers Benefit Protection Act....................................................................................13, 14

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12 ...................................................................................6

Federal Rule of Civil Procedure 23 ...................................................................................5


*Streit v. Amdocs, Inc.*,
    307 F. App'x 505 (2d Cir. 2009) ...................................................................................8

*Thomas v. Atl. Express Corp.*,
    2009 WL 856993 (S.D.N.Y. Mar. 31, 2009) ..................................................................8

*U.S. Postal Serv. v. Gregory*,
    534 U.S. 1 (2001) (Ginsburg, J. concurring) .................................................................8

**STATUTES**

Age Discrimination in Employment Act .................................................................. passim

Federal Arbitration Act ................................................................................................1, 11, 12

Older Workers Benefit Protection Act....................................................................................13, 14

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12 ...................................................................................6

Federal Rule of Civil Procedure 23 ...................................................................................5

## **INTRODUCTION**

Forty-five of the individuals who have opted into this putative class and collective action to assert claims under the Age Discrimination in Employment Act ("ADEA") are parties to valid and binding arbitration agreements that foreclose their participation here. Their arbitration agreements require that ADEA claims be resolved exclusively through individual arbitration and expressly waive the right to participate in a class or collective action. Indeed, 26 of the individuals who have opted into this action already initiated—and lost—arbitration against IBM on the same claims they seek to bring here. The remaining 19 individuals flouted the terms of their arbitration agreements by attempting to pursue their ADEA claims here instead of arbitrating them. All of the opt-in plaintiffs who are bound by arbitration agreements ("Arbitration Opt-Ins") are barred by the terms of their agreement from participating in this case.

Tellingly, Plaintiffs concede that the Arbitration Opt-Ins cannot remain in this action and must resolve their claims in arbitration. Dkt. 113 at 4-5. But they ask the Court to invalidate certain provisions of their arbitration agreements before compelling them to arbitration. The provisions at issue are fully enforceable, and the Arbitration Opt-Ins' contrary arguments run afoul of the Federal Arbitration Act ("FAA") and Supreme Court authority. But more importantly, this Court should not entertain any of these challenges to the arbitration agreements because *all* of the Arbitration Opt-Ins have expressly waived the right to participate in a class or collective action. Moreover, Arbitration Opt-Ins who have previously voluntarily arbitrated their claims to a final decision have waived the opportunity to challenge enforceability.

Because it is clear on the face of the Complaint and the arbitration agreements that the claims of the Arbitration Opt-ins are legally barred, the Court should render judgment on the pleadings in favor of IBM as to these claims. The Court should moreover dismiss with prejudice

the claims of the Arbitration Opt-Ins who have already arbitrated their claims and compel to arbitration those who have not yet arbitrated their ADEA claims.

## BACKGROUND

I.   THE SEPARATION AGREEMENTS.

Each of the Arbitration Opt-Ins, upon their separation from IBM, was offered severance and other benefits in exchange for signing a Separation Agreement.  *See* Dkt. 11, First Amended Class and Collective Action Complaint ("FAC") ¶ 20; Declaration of Craig S. Friedman ("Friedman Decl.") ¶ 3.[1]  The Separation Agreement contains three key provisions.[2]

*First*, the Separation Agreement requires any ADEA claims to be resolved exclusively through *individual* arbitration ("Arbitration Clause"): "You agree that any and all legal claims or disputes between you and IBM under the . . . ADEA . . . will be resolved on an individual basis by private, confidential, final and binding arbitration."  Friedman Decl. ¶ 4.  The Arbitration Clause further provides that arbitration will be conducted pursuant to the IBM Arbitration Procedures attached to and incorporated by reference in the Separation Agreement.

---

[1] In ruling on IBM's Motion, the Court may consider the Separation Agreements executed by the Arbitration Opt-Ins.  The FAC references the Separation Agreement (FAC ¶ 20), the Arbitration Opt-Ins "either possessed or knew about" them, IBM references the Separation Agreement in its Answer (Dkt. 24 at 9), and the Separation Agreement is dispositive of whether the Arbitration Opt-Ins may participate in this action.  *Int'l Eng'g & Constr. S.A. v. Baker Hughes*, 399 F. Supp. 3d 194, 198-99 (S.D.N.Y. 2019); *Gracia v. City of N.Y.*, 2017 WL 4286319, at *2 n.2 (S.D.N.Y. Sept. 26, 2017) (Caproni, J.) ("[I]n adjudicating a Rule 12(c) motion, the court may consider the complaint, the answer, any written documents attached to them or incorporated by reference, and any matter of which the court can take judicial notice."); *cf. Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion.").

[2] There are some differences in the provisions of the various Separation Agreements, but each of the three key arbitration and waiver provisions is identical across all Separation Agreements.

*Second*, the IBM Arbitration Procedures provide a deadline for initiating arbitration ("Arbitration Filing Deadline"). *Id.* ¶ 5. The Arbitration Filing Deadline instructs that claimants must submit a written demand for arbitration within the same deadline for bringing their claim before a governmental agency or in court. Specifically, the Arbitration Filing Deadline requires a claimant to "submit a written demand for arbitration . . . . no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim." This means that, for ADEA claims, the Arbitration Filing Deadline requires claimants to initiate arbitration within the same time as they would otherwise be required to file a pre-suit charge with the EEOC, that is within 180 or 300 days (depending on the state) of the alleged unlawful conduct.[3] If the claimant fails to timely submit the demand, "the claim shall be deemed waived." *Id.* The Arbitration Filing Deadline further provides that the deadline for filing the demand cannot be tolled or satisfied by filing a charge with a government agency: "The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM [internal resolution process] shall not substitute for or extend the time for submitting a demand for arbitration."

---

[3] The ADEA specifies the deadline for bringing an age discrimination claim. Under the ADEA, as a pre-condition to suit, an individual must file a charge with the EEOC or an analogous state agency within 180 or 300 days (depending on the state) of the alleged wrongful act. *See* 29 U.S.C. § 626(d) ("[A] charge shall be filed . . . within 180 days after the alleged unlawful employment practice; or [in a deferral state], within 300 days after the alleged unlawful practice occurred . . . .").

*Third*, the Separation Agreement expressly waives any ability to join or participate in a class or collective action ("Class and Collective Action Waiver"):  "[Y]ou agree that no [ADEA claim] may be initiated, maintained, heard or determined on a class action, collective action or multi-party basis either in court or in arbitration, and that you are not entitled to serve or participate as a class action member or representative or collective action member or representative or receive any recovery from a class or collective action involving any [ADEA claim] either in court or in arbitration."  *Id.* ¶ 6.

Of the individuals who have filed consent forms to participate in this case ("Opt-Ins"), a total of 45 individuals—the Arbitration Opt-Ins—executed a Separation Agreement, and in return received severance and other benefits upon their termination.  *Id.* ¶ 7.

## II.   ARBITRATION PROCEEDINGS.

Pursuant to the terms of their Separation Agreements, 26 of the Arbitration Opt-Ins pursued their ADEA claims to a final judgment of dismissal in individual arbitration ("Prior Arbitration Opt-Ins").[4]  Each of the Prior Arbitration Opt-Ins submitted a materially identical arbitration demand raising an age discrimination claim under the ADEA against IBM.  In each arbitral proceeding, the Prior Arbitration Opt-Ins were represented by the same counsel representing Plaintiffs in this action.  Each arbitration ended in a final and binding decision by the arbitrator dismissing the claim as untimely.  *Id.* ¶¶ 53-54.  Specifically, the arbitrators

---

[4] Specifically, the 26 Prior Arbitration Opt-Ins who have already arbitrated their ADEA claim against IBM to a final arbitration award of dismissal are: Gregory Abelar, William Abt, Brian Brown, Brian Burgoyne, Mark Carlton, William Chandler, William Chastka, Denise Cote, Michael Davis, Mario DiFelice, Joseph Duffin, Fred Gianiny, Om Goeckermann, Mark Guerinot, Douglas Lee, Colleen Leigh, Patricia Lodi, Steven Mandel, Mark McHugh, Sandy Plotzker, Alexander Saldarriaga, Deborah Tavenner, Richard Ulnick, Mark Vornhagen, James Warren, and Dean Wilson.

unanimously concluded that the Prior Arbitration Opt-In had submitted his or her demand after the Arbitration Filing Deadline had expired, resulting in waiver of the claim.[5]

### III. PROCEDURAL HISTORY.

Named Plaintiffs Rusis, Gerrits, and McGonegal initiated this lawsuit on September 17, 2018. Dkt. 1. The Amended Complaint, filed on December 11, 2018, added Named Plaintiff Eng. Dkt. 11. The Amended Complaint raises claims of age discrimination under the ADEA and the analogous anti-discrimination laws of California, North Carolina, and New Jersey law. *See* FAC ¶¶ 31-39. Plaintiffs maintain that "IBM has discriminated, and continues to discriminate, against its older workers, both by laying them off (or terminating or constructively discharging them) disproportionately to younger workers and then not hiring them for open positions." *Id.* ¶ 1. Plaintiffs seek to assert each state law claim on behalf of a class of former employees pursuant to Federal Rule of Civil Procedure 23. *Id.* ¶¶ 34-39.

On May 6, 2019, Plaintiffs filed a Motion for Issuance of Notice (Dkt. 46), seeking conditional certification of a putative ADEA collective consisting of "all individuals who worked for IBM in the United States over forty (40) years of age whose employment with IBM ended (either because of layoff, discharge, or voluntarily—and thus may have been constructively discharged) any time since July 14, 2017." Dkt. 47 at 25. On March 10, 2020, the Court denied conditional certification. Dkt. 97. The Court concluded that Plaintiffs had "made no showing, beyond conjecture and the individual affiants' beliefs, that a unifying scheme at IBM links the potential members of the

---

[5] For the Court's convenience, the chart at Friedman Decl. ¶ 54 excerpts the key dismissal language in the final arbitration award pertaining to each Prior Arbitration Opt-In and provides the date of each award.

collective to one another despite vast differences in their jobs, locations, and circumstances surrounding their departure from IBM." *Id.* at 6. Thus, Plaintiffs had failed to meet "even the lenient evidentiary burden for issuing notice" to the proposed collective. *Id.*

Despite the denial of conditional certification, 130 Opt-Ins have joined this action to date. The Arbitration Opt-Ins (45 in total) comprise nearly a third of the total Opt-Ins. The 45 Arbitration Opt-Ins consist of 26 Prior Arbitration Opt-Ins, plus another 19 Arbitration Opt-Ins who have bypassed the mandatory arbitration process for resolving ADEA claims.[6] All of the Arbitration Opt-Ins are foreclosed from pursuing their claims in this Court.

## **LEGAL STANDARD**

In deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), a court applies the same standard applicable to Rule 12(b)(6) motions to dismiss. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). In order to withstand a Rule 12(c) motion, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Dismissal is required when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

When deciding a motion to compel arbitration, a court applies a standard "similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d

---

[6] Specifically, the 19 Arbitration Opt-Ins who signed a Separation Agreement that requires individual arbitration of any ADEA claims and contains a Class and Collective Action waiver are: Timothy Anderson, Veerabhadra Chinnam, Adam Clements, Alyson Dildine, Perry Hartswick, Cynthia Horton, Duane Jessee, Bruce Jones, Robert Klein, Linwood Lassiter, Janine Miller, Andrew Odor, Myriah Prusik, David Reynolds, Michael Rosol, Kurt Runco, Jeff Scholl, Maria Schwenger, and Paul Stevenson.

Cir. 2017) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). In particular, it considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000). "If the parties do not 'identif[y] any material factual dispute bearing on the central issue of whether [they] entered into a contract that included a mandatory arbitral provision,' a court may summarily resolve the motion to compel arbitration." *Pool Deals, LLC v. United Parcel Serv., Inc.*, --- F. Supp. 3d . ---, 2020 WL 1982883, at *3 (W.D.N.Y. Apr. 16, 2020) (alterations in original) (quoting *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 423 (S.D.N.Y. 2012)).

## ARGUMENT

**I.     THE PRIOR ARBITRATION OPT-INS—WHOSE ADEA CLAIMS HAVE ALREADY BEEN ADJUDICATED IN ARBITRATION—SHOULD BE DISMISSED.**

The Prior Arbitration Opt-Ins are barred from participating in this action under the doctrine of res judicata. Each previously adjudicated his or her ADEA claim in a final and binding arbitration in which the arbitrator concluded the claim was untimely and, on that basis, dismissed it. The Prior Arbitration Opt-Ins cannot rehash their failed arbitration claims (or the issue of the timeliness of their arbitration demands) in this Court.

The Prior Arbitration Opt-Ins already obtained full adjudication of their ADEA claims. Pursuant to the Separation Agreement, each submitted an individual arbitration demand alleging that their separation from IBM violated the ADEA. Friedman Decl.

¶ 53. IBM then moved to dismiss each claim as untimely. Ultimately, each motion was granted, resulting in dismissal on grounds of untimeliness in a final, binding decision issued by an arbitrator. *See id.* ¶ 54. The arbitrators concluded that the claimant had failed to file the demand within the Arbitration Filing Deadline. Nevertheless, the Prior Arbitration Opt-Ins are now attempting to pursue identical claims in this Court.

Under the doctrine of res judicata or claim preclusion, "a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449, U.S. 90, 94 (1980)). Arbitration awards have an equally preclusive effect as judgments obtained through litigation. *Streit v. Amdocs, Inc.*, 307 F. App'x 505, 509 (2d Cir. 2009) ("It is well settled that [claim preclusion] serves to bar . . . claims in federal court based on the binding effect of past determinations in arbitral proceedings." (alteration omitted) (quoting *Pike v. Freeman*, 266 F.3d 78, 90 (2d Cir. 2001))); *see also U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 16 n.2 (2001) (Ginsburg, J. concurring) ("arbitration awards have the same preclusive effects as court judgments"); *Goldstein v. Doft*, 236 F. Supp. 730, 732 (S.D.N.Y. 1964) ("[The plaintiff's claim] was squarely presented to the arbitrators, who ruled adversely to him. This may not be relitigated."), *aff'd*, 353 F.2d 484 (2d Cir. 1965); *Thomas v. Atl. Express Corp.*, 2009 WL 856993, at *3 (S.D.N.Y. Mar. 31, 2009) ("A party may not collaterally attack an arbitration award.").

A previously arbitrated claim is precluded when: (i) the arbitration "involved an adjudication on the merits"; (ii) the arbitration "involved the [same] plaintiffs"; and (iii) the claims now asserted "were, or could have been, raised in the [arbitration]." *Monahan*, 214 F.3d at 284–85. All three elements are satisfied here.

*First*, the arbitrators' orders dismissing the claims as time-barred are "adjudication[s] on the merits." *See Michaelesco v. Estate of Richard*, 355 F. App'x 572, 573 (2d Cir. 2009) (a dismissal "on the ground that [plaintiff's] claims were time-barred . . . [is] an adjudication on the merits" ); *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 896 (2d Cir. 1983) (same); *see also Lobban v. Cromwell Towers Apts.*, 345 F. Supp. 3d 334, 345 (S.D.N.Y. 2018) ("final judgments in arbitration . . . satisfy the first element of claim preclusion – i.e., an adjudication on the merits" (quoting *Weinraub v. Glen Rauch Sec., Inc.*, 399 F. Supp. 2d 454, 459 (S.D.N.Y. 2005))). *Second*, the parties here are identical to the parties in the individual arbitrations: the Prior Arbitration Opt-Ins and IBM. *Third*, the Prior Arbitration Opt-Ins are pursuing the very same claims in this action as they did in their individual arbitrations—namely age discrimination claims under the ADEA. *See* FAC ¶¶ 31-39. Accordingly, res judicata bars the Prior Arbitration Opt-Ins from attempting to pursue those same claims in this action.

Plaintiffs attempt to re-litigate the arbitration proceedings by offering various theories for why—contrary to the arbitrators' final judgments—the demands were timely. Dkt. 113. But any challenge to the arbitrators' conclusions that the Prior Arbitration Opt-Ins' demands were untimely is similarly precluded by res judicata for the same reasons discussed above. In particular, as to the third element, the question of timeliness was squarely presented in arbitration, and each arbitrator ultimately concluded the demand was untimely and dismissed it on that basis. The Prior Arbitration Opt-Ins do not get a second bite at the apple on timeliness.

Furthermore, to the extent the Prior Arbitration Opt-Ins are now implicitly challenging the validity or enforceability of the Arbitration Filing Deadline or any other

provision of the Separation Agreement, this argument is waived. By expressly invoking the Arbitration Clause and voluntarily pursuing their claims against IBM to a final decision in arbitration, the Prior Arbitration Opt-Ins have forfeited the opportunity to challenge the Separation Agreement. *See, e.g.*, *Conntech Dev. Corp. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 685 (2d Cir. 1996) ("An objection to the arbitrability of a claim must be made on a timely basis, or it is waived."); *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 698 (6th Cir. 2019) (holding that by "initiat[ing] the arbitration that gave rise to this dispute. . . . [the plaintiff] 'missed the chance to come back later, before a court, and deny that [a valid] agreement to arbitrate existed" (alteration in original) (quoting *Env't Barrier Co. v. Slurry Sys., Inc.*, 540 F.3d 598, 607 (7th Cir. 2008))); *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994) ("[V]oluntary initiation of arbitration [is] interpreted as waiver of any objection [the former employee] may have had over the authority of the arbitrator."). If the Prior Arbitration Opt-Ins wished to challenge the enforceability of the Separation Agreements, they should have done so before voluntarily invoking those agreements and proceeding to a final decision in arbitration.[7]

Accordingly, the Court should dismiss the Prior Arbitration Opt-Ins because they are precluded from re-litigating both the substance of their ADEA claims and the timeliness of their demands, and they have moreover waived any challenge to the Separation Agreement.[8]

---

[7] Even if the Prior Arbitration Opt-Ins could challenge the Separation Agreements, they cannot do so by joining this lawsuit. The Separation Agreement contains an enforceable Class and Collective Action Waiver that precludes their participation in this action. Section II, *infra*. And any challenge to the enforceability of the Class and Collective Action fails on the merits for the reasons discussed in Section II, *infra*.

[8] The Prior Arbitration Opt-Ins should be dismissed for a second, independent reason as discussed in Section II, *infra*. Like the remaining Arbitration Opt-Ins, the Prior Arbitration Opt-Ins each signed a Separation Agreement containing an Arbitration Clause and a Class and Collective Action Waiver, both of which foreclose their participation in this action.

## II. THE OPT-INS WHO SIGNED SEPARATION AGREEMENTS WITH AN ARBITRATION CLAUSE AND A CLASS AND COLLECTIVE ACTION WAIVER ARE BARRED FROM PARTICIPATING IN THIS ACTION AND MUST BE COMPELLED TO ARBITRATION

As to the remaining 19 Arbitration Opt-Ins who have never arbitrated their claims, the Court should dismiss them from this action and compel their ADEA claims to arbitration.[9] Each of these individuals signed a Separation Agreement containing an Arbitration Clause and a Class and Collective Action Waiver that forecloses their participation in this action and requires their ADEA claims be resolved exclusively through individual arbitration. The Court must "rigorously" enforce these provisions. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (the FAA requires courts to "rigorously . . . enforce arbitration agreements according to their terms" and to "respect and enforce the parties' chosen arbitration procedures").

In deciding whether an agreement to arbitrate requires that claims be compelled to arbitration, the court conducts a limited, two-prong inquiry. First, it considers whether "such an agreement exists between the parties." *Meyer*, 868 F.3d at 73-74. Here, Plaintiffs concede—as they must—that all of the Arbitration Opt-Ins are parties to a Separation Agreement containing an Arbitration Clause. Dkt. 113 at 4. Second, the court considers "whether the dispute falls within the scope of the arbitration agreement." *Meyer*, 868 F.3d at 74 (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002)). This issue too is uncontested. Under the Arbitration Clause in the Separation Agreement, the Arbitration Opt-Ins agreed to resolve any claims arising under the ADEA through individual arbitration—not court litigation. *See* Friedman Decl. ¶ 4.

---

[9] All of the Arbitration Opt-Ins' arbitration demands will be untimely under the Arbitration Filing Deadline and therefore will likely be dismissed as time-barred.

Because the undisputed facts show that the Arbitration Opt-Ins are parties to an Arbitration Clause that encompass the claim at issue, the FAA requires the Court to enforce the terms of the Separation Agreement and compel the Arbitration Opt-Ins to individual arbitration.  *See Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 148 (E.D.N.Y. 2015) (granting motion to dismiss under Rule 12 based on a mandatory arbitration agreement) *aff'd in part, vacated in part on other grounds* 834 F.3d 220 (2d Cir. 2016); *Chen-Oster v. Goldman, Sachs & Co.*, --- F. Supp. 3d ---, 2020 WL 1467182, at *13 (S.D.N.Y. Mar. 26, 2020) (if both prongs of motion to compel inquiry are satisfied, "the role of the court ends and the matter is one for arbitration" (quoting *Unique Woodworking, Inc. v. N.Y.C. District Council of Carpenters' Pension Fund*, 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007))).

In a futile attempt to bypass the clear import of the FAA, Plaintiffs seek to challenge the enforceability of the Arbitration Filing Deadline and ask the Court to deem the Arbitration Opt-Ins' now-time-barred claims timely before compelling them to arbitration.  This effort faces an insurmountable obstacle:  the Arbitration Opt-Ins have waived the right to assert claims or seek relief in a class or collective action.  Pursuant to the Class and Collective Action Waiver, the Arbitration Opt-Ins expressly waived the right to participate in a class or collective action.  There is no carve-out in the Class and Collective Action Waiver that permits joining such an action in order to challenge a procedural provision in the Separation Agreement.  The Class and Collective Action Waiver is fully enforceable.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) (holding that class and collective action waivers in the ADEA context specifically are enforceable); *see also Epic*, 138 S. Ct. at 1623 (rejecting challenge to enforceability of class and collective action waiver); *Am. Ex. Co. v. Italian Colors Rest.*, 570 U.S. 228, 237 (2013) (same); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) (same).  Accordingly, if the

Arbitration Opt-Ins wish to challenge the enforceability of the Arbitration Filing Deadline, they cannot do so in this action.

Plaintiffs seek to avoid the effect of the Class and Collective Action Waiver by arguing that it is unenforceable.  They claim unenforceability because IBM did not provide the signatory employees with certain demographic information that is required under the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f)(1)(H), in order for an employee to waive a "right or claim" under the ADEA.  *See* Dkt. 113 at 4; Dkt. 47 at 23 & n.33.  But the OWBPA applies only to waivers of "substantive rights" under the ADEA—not waivers of procedural rights.  *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 259, 265-66 (2009); *see also McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1164-66 (8th Cir. 2017) (OWBPA "refers narrowly to waiver of *substantive* ADEA rights or claims"); *Hutchens v. Capital One Services, LLC*, 2020 WL 3053657, at *14 (E.D. Va. June 8, 2020) (concluding that OWBPA applies only to waivers of the "statutory right to be free from workplace age discrimination" (quoting *Penn Plaza*, 556 U.S. at 265)); *Horowitz v. AT&T Inc.*, 2018 WL 1942525, at *18-19 (D.N.J. Apr. 25, 2018) (concluding that OWBPA requirements apply "only to waiver of substantive ADEA rights or claims").

Class and collective action waivers affect only procedural rights—not substantive ones.  They leave intact the *substantive* right to bring an ADEA claim and affect only the *procedure* by which such a claim may be brought by requiring such a claim be resolved outside the context of a class or collective action (here, through individual arbitration). *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (class and collective mechanisms "alter only how the claims are processed" leaving

- 13 -

"parties' legal rights and duties intact and the rules of decision unchanged"); *see also Penn Plaza*, 556 U.S. at 265 ("The decision to resolve ADEA claims by way of arbitration instead of litigation does not waive the statutory right to be free from workplace age discrimination.").

Courts therefore have repeatedly rejected the argument that employers must comply with the OWBPA in order to secure enforceable class and collective action waivers. *See McLeod*, 856 F.3d at 1165 (holding the ADEA's "class-action authorization can be waived by a valid arbitration agreement" because it is not a "substantive" right under OWPBA); *Hutchens*, 2020 WL 3053657, at *12 ("[OWBPA] does not limit [an employee's] ability to waive her right to proceed in a collective action" under the ADEA); *Horowitz*, 2018 WL 1942525, at *18-19 (holding that even if employer "did not satisfy the specific requirements of OWBPA," the "Class, Collective and Representative Action Waiver" "remain[s] enforceable"). IBM was accordingly not required to provide OWBPA disclosures and this does not render the Class and Collective Action Waiver unenforceable. The Class and Collective Action Waiver therefore precludes the Arbitration Opt-Ins from using this action to challenge the enforceability of the Separation Agreements.

The Court should enforce the clear terms of the Separation Agreement and compel the 19 Arbitration Opt-Ins who have never arbitrated their ADEA claims to arbitration and dismiss them from this action.

## CONCLUSION

For the reasons stated above, the Court should grant IBM's Motion for Partial Judgment on the Pleadings and dismiss the 45 Arbitration Opt-Ins. It should further compel to arbitration the claims of the Arbitration Opt-Ins who have not previously arbitrated their claims.

Dated: August 14, 2020  
New York, New York

JONES DAY

By */s/ Matthew W. Lampe*
    Matthew W. Lampe
    James M. Jones
    Ira Handa
    250 Vesey Street
    New York, New York 10281
    Tel: 212.326.3939
    Fax: 212.755.7306
    mwlampe@jonesday.com
    jmjones@jonesday.com
    ihanda@jonesday.com

    Alison B. Marshall
    51 Louisiana Ave., N.W.
    Washington, D.C. 20001
    Tel: 202.879.3939
    Fax: 202.626.1700
    abmarshall@jonesday.com

    Craig S. Friedman
    1420 Peachtree Street, Suite 800
    Atlanta, GA 30309
    Tel: 404-581-8412
    Fax: 404-581-8330
    csfriedman@jonesday.com

*Attorneys for Defendant IBM*