**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____ )
                                  )
EDVIN RUSIS, HENRY GERRITS,        )
PHIL MCGONEGAL, and DAVID HO       )
ENG, individually and on behalf    )
of all other similarly situated individuals, )
                                  )        Civil Action No. 1:18-cv-08434
                                  )
            Plaintiffs,            )
                                  )
        v.                         )
                                  )
INTERNATIONAL BUSINESS             )
MACHINES CORP.                     )
                                  )
            Defendant              )
_____ )

**PLAINTIFFS' RESPONSE TO IBM'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS AS TO ARBITRATION OPT-INS
AND TO COMPEL ARBITRATION**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ................................................. 6

    A.    General Background ................................................................................... 6

    B.    The <u>Rusis</u> Named Plaintiffs' EEOC Charges ................................................. 8

    C.     Plaintiffs Who Signed Arbitration Agreements ............................................. 8

III.    ARGUMENT ...................................................................................................... 10

    A.    Legal Standard ........................................................................................ 10

    B.    The Provision in IBM's Arbitration Agreement Purporting to Waive the Piggybacking Rule is Unenforceable, and these Forty-Five (45) Individuals Should Thus be Permitted to Arbitrate Their Claims .................................... 11

    C.    The Plaintiffs Who Received Arbitration Awards are not Precluded from Advancing their Claims by *Res Judicata* ..................................................... 21

    D.    The Plaintiffs Who Began Their Claims in Arbitration Did Not Waive Their Argument Before This Court That the Piggybacking Waiver is Unenforceable ........................................................................................... 23

IV.    CONCLUSION.................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

14 Penn Plaza LLC v. Pyett
   556 U.S. 247 (2009) ................................................................. 20

Castellanos v. Raymours Furniture Co., Inc.
   291 F. Supp. 3d 294 (E.D.N.Y. 2018) ............................... 2, 4, 17

Channer v. Dep't of Homeland Sec.
   527 F.3d 275 (2d Cir. 2008) ..................................................... 22

Cole v. Convergys Customer Mgmt. Grp., Inc.
   2012 WL 6047741 (D. Kan. Dec. 5, 2012) ................................ 17

Conntech Dev. Corp. v. Univ. of Conn. Educ. Props., Inc.
   102 F.3d 677 (2d Cir. 1996) ..................................................... 24

Cronas v. Willis Group Holdings Ltd.
   2007 WL 2739769 (S.D.N.Y. Sept. 17, 2017) ................... 2, 13, 15

Davis v. Mills
   194 U.S. 451 (1904) .................................................................. 16

Denney v. BDO Seidman, L.L.P.
   412 F.3d 58 (2d Cir. 2005) .......................................................... 4

EEOC v. Comm. Office Prods. Co.
   486 U.S. 107 (1988) .............................................................. 5, 17

Env't Barrier Co. v. Slurry Sys., Inc.
   540 F.3d 598 (7th Cir. 2008) ..................................................... 25

Estle v. International Business Machines Corp.
   2020 WL 5633154 (S.D.N.Y. Sept. 21, 2020) .......................... 21

Fed. Exp. Corp. v. Holowecki
   552 U.S. 389 (2008) .................................................................. 17

First Options of Chicago, Inc. v. Kaplan
   514 U.S. 938 (1995) .................................................................. 24

Friedmann v. Raymour Furniture Co., Inc.
   2012 WL 4976124 (E.D. N.Y. Oct. 16, 2012) ............................ 17

Gilmer v. Interstate/Johnson Lane Corp.
    500 U.S. 20 (1991)........................................................................ 1, 5, 12, 16

Graham Oil v. Arco Products Co.
    43 F.3d 1244 (9th Cir. 1994)......................................................... 17

Grayson v. K Mart Corp.
    79 F.3d 1086 (11th Cir. April 9, 1996).......................................... 13

Hammaker v. Brown & Brown, Inc.
    214 F. Supp. 2d 575 (E.D. Va. 2002)............................................ 20

Hayden v. Paterson
    594 F.3d 150 (2d Cir. 2010)........................................................... 10

Holowecki v. Federal Exp. Corp.
    440 F.3d 558 (2d Cir. 2006)..................................................... 1, 2, 5, 12

In the Matter of Arbitration Between: [Claimant], Claimant, v. [Respondent] (Food and
    Kindred Products), Respondent
    2018 WL 1933357 (Abramson, Arb. Feb. 27, 2018) ................................. 14

Johnson v. Rowley
    569 F.3d 40 (2d Cir. 2009) (per curiam)....................................... 10

Jones v. American Postal Workers Union
    192 F.3d 417 (4th Cir. 1999).......................................................... 17

Lewis v. Harper Hosp.
    241 F.Supp.2d 769 (E.D. Mich. 2002)........................................... 17

Livingston v. City of Chicago
    2019 WL 194848 (N.D. Ill. Jan. 14, 2019)..................................... 12

Logan v. MGM Grand Detroit Casino
    939 F.3d 824 (6th Cir. 2019)................................................... 5, 16, 19, 20

Mabry v. W. & S. Life Ins. Co.
    2005 WL 1167002 (M.D.N.C. Apr. 19, 2005).............................. 17

Marrese v. American Academy of Orthopaedic Surgeons
    470 U.S. 373 (1985)........................................................................ 22

Mazurkiewicz v. Clayton Homes, Inc.
    971 F.Supp.2d 682 (S.D. Tex.2013) ............................................. 17

Merck & Co. v. Mediplan Health Consulting, Inc.
    425 F. Supp. 2d 402 (S.D.N.Y. 2006) ........................................................ 11

Nadeu v. Equity Residential Properties Management Corp.
    251 F. Supp. 3d 637 (S.D.N.Y. 2017) ..................................................... 2, 24

Nagrampa v. MailCoups, Inc.
    469 F.3d 1257 (9th Cir. 2006) .................................................................. 24

Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.
    88 F.3d 129 (2d Cir. 1996) ......................................................................... 4

Nghiem v. NEC Elec., Inc.
    25 F.3d 1437 (9th Cir. 1994) .................................................................... 25

O'Phelan v. Fed. Express Corp.
    2005 WL 2387647 (N.D. Ill. Sept. 27, 2005) ........................................... 17

Oubre v. Entergy Operations, Inc.
    522 U.S. 422 (1998) ................................................................................. 19

Pike v. Freeman
    266 F.3d 78 (2d Cir. 2001) ....................................................................... 21

PolyOne Corp. v. Westlake Vinyls, Inc.
    937 F.3d 692 (6th Cir. 2019) .................................................................... 24

Ragone v. Atlantic Video at Manhattan Center
    595 F.3d 115 (2d Cir. 2010) ............................................................ 4, 6, 17

Salisbury v. Art Van Furniture
    938 F.Supp. 435 (W.D. Mich. 1996) ......................................................... 17

Sanford v. Quicken Loans
    2014 WL 266410 (E.D. Mich. Jan. 24, 2014) ........................................... 17

See Alexander v. Gardner-Denver Co.
    415 U.S. 36 (1974) ................................................................................... 23

Snell v. Suffolk County
    782 F.2d 1094 (2d Cir. 1986) ................................................................... 12

Thiele v. Merrill Lynch, Pierce, Fenner & Smith
    59 F. Supp. 3d 1060 (S.D. Cal. 1999) ...................................................... 20

Thompson v. Fresh Products, LLC
   2020 WL 1160190 (6th Cir. March 2, 2020) .................................................... 5, 17, 19

Tillman v. Tillman
   825 F.3d 1069 (9th Cir. 2016) .................................................................................. 24

Tolliver v. Xerox Corp.
   918 F.2d 1052 (2d Cir. 1990) ............................................................................. passim

W.J. O'Neil Co. v. Sheply, Bulfinch, Richardson & Abbott, Inc.
   765 F.3d 625 (6th Cir. 2014) ................................................................................... 22

Whalen v. W.R. Grace & Co.
   56 F.3d 504 (3d Cir. 1995) ...................................................................................... 13

Williams v. E.F. Hutton & Co., Inc.
   753 F.2d 117 (D.C. Cir. 1985) ................................................................................ 22

Wineman v. Durkee Lakes Hunting & Fishing Club, Inc.
   352 F. Supp. 2d 815 (E.D. Mich. Jan. 13, 2005) ................................................... 17

**Statutes**

29 C.F.R. § 1625.22 ........................................................................................................ 19

29 U.S.C. § 626 .......................................................................................................... 7, 12, 19

29 U.S.C. § 633 ............................................................................................................... 12

29 U.S.C. §§ 621 *et seq*. ................................................................................................... 1

42 U.S.C. § 2000e-5 ......................................................................................................... 12

## I.      INTRODUCTION

In its Motion for Partial Judgment on the Pleadings as to Arbitration Opt-ins and to Compel Arbitration (Dkt. 121), IBM seeks to use its arbitration agreement as a tool to prevent forty-five (45) of its former employees from advancing *in any forum* their claims of age discrimination brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. IBM's argument should be rejected.

Plaintiffs do not disagree that these 45 individuals must arbitrate their claims. What Plaintiffs oppose is IBM's argument that these individuals cannot advance their claims *anywhere*.  The law is clear that arbitration is a viable alternative to court where employees can pursue the same claims they could pursue in court; the law is also clear that employees cannot be required to give up substantive rights if they proceed in arbitration, rather than in court. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991) ("the prospective litigant [must be able to] effectively . . . vindicate his or her statutory cause of action in the [specific] arbitral forum"). In other words, all that changes when a party pursues a claim in arbitration (rather than in court) is the forum, and perhaps some procedural rights.  Pursuing a claim in arbitration should be just like pursuing a claim in court.

Here, these 45 individuals could clearly proceed on their ADEA claims if they were in court.  Second Circuit authority gives them the right to "piggyback" onto the timely filed EEOC charges of named Plaintiffs Edvin Rusis, Henry Gerrits, and Phil McGonegal.  The "piggybacking" doctrine allows individuals to pursue discrimination claims even if they did not file their own administrative charge of discrimination at the EEOC.  See Tolliver v. Xerox Corp., 918 F.2d 1052, 1057-59 (2d Cir. 1990); Holowecki v. Federal Exp. Corp., 440 F.3d 558, 565-70 (2d Cir. 2006).[1]  All that is required for

---

[1]       The reason for the piggybacking rule is that the ADEA's administrative exhaustion requirement is designed to allow the EEOC the opportunity to investigate a claim and engage in conciliation, and where the EEOC has had this opportunity as the result of an earlier-filed charge that alleged a broad scheme of discrimination (such as those in this case), technical

"piggybacking" is that the earlier filed charge of discrimination is similar to the discrimination claim that the individual wants to pursue. <u>Tolliver</u>, 918 F.2d at 1057-59. Where these earlier charges of discrimination (of Rusis, Gerrits, and McGonegal) were expressly filed as "class" discrimination charges, there is no question that individuals having similar claims within the scope of those class charges can piggyback on those administrative filings. <u>See</u> <u>id.</u>

Thus, these 45 individuals have opted into this case in order for the Court to rule that they can proceed on their claims – in arbitration – pursuant to the "piggybacking" rule. And there is a reason that they brought this issue to the Court: IBM's arbitration agreement expressly provides that it is for a court, not an arbitrator, to decide the enforceability of the terms of IBM's arbitration agreement. Indeed, it is commonplace, when similar cases are being litigated both in court and in arbitration, for cases to go back and forth between arbitration and court, in order to allow the court to decide issues that are for the court and for arbitrators to decide issues that are for the arbitrator.[2]

Indeed, here, 26 of these 45 individuals began their claims in arbitration – in good faith recognizing that they had agreed to arbitration – only to be told by the assigned arbitrators in their cases that the question of whether they can "piggyback"

---

timing deficiencies should not prevent employees from advancing their age discrimination claims. <u>See</u> <u>Holowecki</u>, 440 F.3d at 565-70; <u>Tolliver</u>, 918 F.2d at 1057-59. Courts have recognized that this interpretation of the ADEA's requirements advances the broad remedial purpose of that statute - to stamp out age discrimination in the workplace. <u>See</u> <u>Cronas v. Willis Group Holdings Ltd.</u>, 2007 WL 2739769, at *2 (S.D.N.Y. Sept. 17, 2017). The Second Circuit makes clear that employees seeking to utilize the piggybacking rule may do so regardless of whether they "elect to join a preexisting suit **or initiate their own.**" <u>Tolliver</u>, 918 F.2d at 1057 (emphasis added).

[2]     The question of who decides various issues (the court or the arbitrator) is a complex and developing area of arbitration law. It is not uncommon for there to be back-and-forth between court and arbitration as these issues play out. <u>See, e.g.</u>, <u>Castellanos v. Raymours Furniture Co., Inc.</u>, 291 F. Supp. 3d 294, 298-302 (E.D.N.Y. 2018) (striking an arbitration agreement's provision shortening the statute of limitations period, while also enforcing the class action waiver and compelling the plaintiffs to individual arbitration); <u>Nadeu v. Equity Residential Properties Management Corp.</u>, 251 F. Supp. 3d 637, 641-44 (S.D.N.Y. 2017) (permitting the plaintiff to proceed in court after plaintiff had filed an arbitration demand but could not adjudicate claim in arbitration).

onto the earlier EEOC charges needed to be decided by a court.[3]  Thus, they are now

following what they have been essentially directed to do by the arbitrators, which is seek

a ruling on this issue from the Court.[4]

The other 19 of these 45 individuals have not yet filed in arbitration.[5] Instead,

they opted in to this case in order to ask this Court (up front) for a ruling on their right to

piggybacking, given that many other arbitrators had already ruled that was an issue for

the Court to decide – and given that IBM made the consistent argument in arbitration

that arbitrators did not have the power to decide that question. Thus these individuals

are not disputing that they must pursue their discrimination claims in arbitration; they are

---

[3]     See, e.g., Burgoyne v. International Business Machines Corp., JAMS No. 1310024364, at *11 (Schneider, Arb. Jan. 21, 2020) (Exhibit I) (“*only a court* has authority to determine that a provision in the arbitration agreement is unenforceable”) (emphasis in original). See also Section III.C infra.  The individuals whose arbitrators reached this conclusion are Gregory Abelar (Dismissal attached as Exhibit F), William Abt (Exhibit G), Brian Burgoyne (Exhibit I), Mark Carlton (Exhibit J), William Chandler (Exhibit K), William Chastka (Exhibit L), Michael Davis (Exhibit N), Mario DiFelice (Exhibit O), Fred Gianiny (Exhibit Q), Om Goeckermann (Exhibit R), Mark Guerinot (Exhibit S), Douglas Lee (Exhibit T), Colleen Leigh (Exhibit U), Patricia Lodi (Exhibit V), Steven Mandel (Exhibit W), Sandy Plotzker (Exhibit Y), Alexander Saldarriaga (Exhibit Z), James Warren (Exhibit DD). The individuals whose arbitrators dismissed on timeliness grounds but without explicitly stating that only a court could decide that a provision in the arbitration agreement is not enforceable are Brian Brown (Exhibit H), Denise Cote (Exhibit M), Joseph Duffin (Exhibit P), Mark McHugh (Exhibit X), Deborah Tavenner (Exhibit AA), Richard Ulnick (Exhibit BB); Mark Vornhagen (Exhibit CC); Dean Wilson (Exhibit EE). All of these individuals were opted in to this case at Dkt. 84-94, 96, 103-104, 109.

[4]     IBM contends that these individuals’ claims have been dismissed in arbitration, so they cannot get a “second bite at the apple” in court.  This argument misreads the general holding of these arbitrators.  They ruled that they did not have the power to decide the “piggybacking” question because that question was for the Court.  These individuals cannot be faulted for having first gone to arbitration, as required by their agreements, but then learning that the arbitrators had no power to make the decision that was central to their cases – whether the agreement’s purported waiver of piggybacking would be enforced.  Notably, the arbitration agreement requires the arbitrator to decide issues of arbitrability. (See, Exemplar Arbitration Agreement at 25, Exhibit E.)  Thus these claimants reasonably understood that it would be for the arbitrators to determine if they had the power to decide the piggybacking question.  Now that they know the question is for the Court, once the Court decides this issue (assuming it determines that they may “piggyback” on the earlier EEOC charges), then these individuals should be permitted to resume their arbitrations.

[5]     These individuals are Timothy Anderson, Veerabhadra Chinnam, Adam Clements, Alyson Dildine, Perry Hartswick, Cynthia Horton, Duane Jessee, Bruce Jones, Robert Klein, Linwood Lassiter, Janine Miller, Andrew Odor, Myriah Prusik, David Reynolds, Michael Rosol, Kurt Runco, Jeff Scholl, Maria Schwenger, and Paul Stevenson. (Dkt. 8, 9, 109-12, 117.)

simply asking first that this Court rule on their ability to actually pursue their claims in arbitration, by virtue of the piggybacking doctrine.[6]

IBM argues that none of these individuals can be in this case in court, even for the temporary purpose of determining the threshold issue of whether they can rely on piggybacking to pursue their claims, because they agreed to a class and collective action waiver.  Significantly, however, these individuals are not seeking adjudication of the merits of their cases in court; they are merely seeking a court ruling on this threshold issue.  It is commonplace for courts to rule on threshold issues that will affect arbitrations (including on the enforceability of terms) and then the individuals go off to pursue the merits of their claims in arbitration.[7]  However, if the Court were to agree that these individuals cannot be in this collective action in court (even for a moment for this threshold issue to be decided)[8], they could very well refile their claims individually and

---

[6]     One arbitrator (Nancy Kramer, Esq.), who is presiding over the cases of two individuals bringing age discrimination claims against IBM, ruled that these individuals could take advantage of piggybacking.  See Boyles v. International Business Machines Corp., JAMS No. 1425028754, Order on Motion to Dismiss for Untimeliness (Kramer, Arb. Aug. 26, 2019) (Exhibit FF); Sullivan v. International Business Machines Corp., JAMS No. 1425028752, Pre-Hearing Order No. 2 (Kramer, Arb. Oct. 2, 2019) (Exhibit GG).  Those claims are proceeding in arbitration.  However, that arbitrator was in the minority of arbitrators, in deciding that the arbitrator had the ability to reach this conclusion.  Thus, the individuals listed in note 5 filed their claims directly in court in order to seek a ruling on piggybacking, rather than engaging in the more circuitous (and time-consuming and costly) path of bringing the issue to arbitration, only to then be told they had to go to court to get a ruling on this issue.

[7]     See, e.g., Ragone v. Atlantic Video at Manhattan Center, 595 F.3d 115, 120-28 (2d Cir. 2010) (addressing the validity of arbitration terms and compelling plaintiff to arbitration); Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp., 88 F.3d 129 (2d Cir. 1996) (compelling arbitration to proceed after determining whether a specific issue was to be arbitrated under a contract); Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 60 (2d Cir. 2005) (resolving questions regarding the scope of the arbitration agreement and compelling arbitration); Castellanos, 291 F. Supp. 3d at 298.

[8]     The class action waiver states that these individuals' claims shall not "be initiated, maintained, heard or determined on a class action . . .  basis." (Exemplar Arbitration Agreement, Exhibit E at 25). These individuals are not "initiat[ing]" a class action (as this case was already pending); nor are they asking to have their discrimination claims "maintained," "heard," or determined on a class basis. They are not seeking a recovery on the merits from a class case – they are just here to get a threshold ruling, as many arbitrators have decided they must do. See note 3, supra.

seek this same ruling from the Court.  Given that IBM is based in New York, they could all file these claims in this Court, which claims would likely be related to one another and thus brought back before this Court but with separate docket numbers.  Plaintiffs can do that, if the Court deems it necessary, but such a process seems burdensome on the Court and unnecessary (see note 8).

Finally, IBM argues that what Plaintiffs are seeking to do is ask the Court to rule that the arbitration clause is not enforceable and that those individuals who already filed their claims in arbitration have "waived" an argument that the arbitration agreement is unenforceable.  That is not correct.  Again, Plaintiffs are not challenging the enforceability of the arbitration agreements as a whole.  They recognize they must pursue their ADEA claims in arbitration.  They are asking this Court to rule that the purported waiver of the "piggybacking" rule in IBM's arbitration agreement is unenforceable.  Once again, it is common for courts to make such preliminary threshold determinations prior to arbitration. See note 7.  Plaintiffs in good faith are presuming that IBM intended to have them sign legal, enforceable arbitration agreements.  In order for them to be legal and enforceable, they must not waive their substantive right to pursue a claim under the ADEA, see Gilmer, 500 U.S. at 28.  As explained further below, the time period established to file ADEA claims (and thus "piggybacking" as well, since it goes to the issue of timeliness) is a substantive right. See Logan v. MGM Grand Detroit Casino, 939 F.3d 824, 829-33 (6th Cir. 2019). The EEOC has recently taken this position, see Thompson v. Fresh Products, LLC, Brief of the Equal Employment Opportunity Commission as Amicus Curiae, 2020 WL 1160190, at *19-23 (6th Cir. March 2, 2020), and the EEOC is entitled to deference in its interpretation of the federal discrimination laws. See EEOC v. Comm. Office Prods. Co., 486 U.S. 107, 115 (1988). Indeed, the Second Circuit has generally sided with plaintiffs seeking the ability to piggyback on earlier charges and thus appears to take an expansive view of the right to piggyback.  See, e.g., Holowecki, 440 F.3d at 568 (permitting plaintiffs to piggyback off

of an EEOC intake questionnaire); Tolliver, 918 F.2d at 1057-59 (permitting individuals to invoke piggybacking rule in individual actions).

Thus, Plaintiffs submit, this Court should hold that the individuals at issue here may proceed on their claims in arbitration and be able to rely on piggybacking.  To the extent that the IBM agreement purports not to allow piggybacking, as IBM has argued, such an interpretation would render the agreement unenforceable.  The Court should either interpret the agreement so as to render it enforceable (i.e. hold that it does not bar piggybacking), or if the agreement does not allow piggybacking, then the waiver of piggybacking should be stricken by the Court.[9]

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   General Background

In this collective action lawsuit, Plaintiffs allege that they lost their jobs as the result of IBM's discriminatory efforts to systematically reduce its employment of older workers in order to build a younger workforce, and that between 2012 and the present, IBM has laid off at least 20,000 employees over the age of forty. (First Amended Complaint ("FAC") ¶¶ 1, 15, Dkt. 11.)[10]  Plaintiffs allege that IBM was motivated to shift toward a Millennial workforce because "IBM was falling behind . . . by failing to quickly devise innovative uses for the internet like its new rivals, Google, Facebook, and Amazon." (FAC ¶ 16, Dkt. 11 (quoting *Cutting 'Old Heads' at IBM*)). Indeed, the CEO of

---

[9]   See Ragone, 595 F.3d at 124-25 ("[T]he appropriate remedy when a court is faced with a plainly unconscionable provision of an arbitration agreement—one which by itself would actually preclude a plaintiff from pursuing her statutory rights—is to sever the improper provision of the arbitration agreement, rather than void the entire agreement.") (citation omitted).
     Alternatively, the Court could simply rule that the agreement, as written, is not enforceable so that Plaintiffs are able to pursue their claims in Court.  That is not Plaintiffs' primary goal here, but that would be the alternative ruling this Court could reach.

[10]   Indeed, in an article published by ProPublica following an investigation of IBM"s hiring practices, ProPublica reported that it estimates that "in the past five years alone, IBM has eliminated more than 20,000 American employees ages 40 and over, about 60 percent of its estimated total U.S. job cuts during those years." Peter Gosselin and Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (March 22, 2018), https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/. (FAC ¶ 15, Dkt. 11.)

IBM, Ginny Rometty, boasted in 2017 that "50% of IBM is Millennials."[11]

Although IBM has sought – both through its arbitration process and in this court case - to cabin each employee separation as if it existed in a vacuum, the EEOC issued a determination on August 31, 2020, that found otherwise. (EEOC Determination, Exhibit A.) Following a two year investigation of allegations of classwide discrimination against IBM, the EEOC's determination found that reasonable cause exists to believe that IBM has been engaged in an aggressive campaign over a five-year period to reduce the number of its older workers and replace them with younger workers, thereby discriminating against its older workers in violation of the ADEA. (See Exhibit A, EEOC Determination at 2.)  The EEOC's determination pertained to fifty-eight (58) charging parties "and a class of similarly situated parties" who alleged that they were discharged based on their age and was based on data from IBM terminations between 2013 and 2018.  Id.  Although IBM maintained that "there was no centralized decision-making, and that each individual manager was responsible" for making the termination decisions based on considerations of "performance, relevant skills, utilization, and consolidation of services," the EEOC rejected IBM's assertion. Id.  The EEOC stated that IBM's "asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that [IBM] has discriminated against Charging Parties and others on account of their age." Id.  Supporting this conclusion, the EEOC's

---

[11]     See IBM CEO Ginny Rometty: Reinventing IBM, Mad Money, CNBC (June 21, 2017), at 4:22, https://www.youtube.com/watch?v=fgc4aJ-JMJg&app=desktop.
     Beginning in around 2014, IBM has taken affirmative steps to hide the discriminatory nature of its actions by ceasing to disclose information to its terminated employees that is required under the Older Worker Benefits Protection Act ("OWPBA"), 29 U.S.C. § 626(f), in order to obtain a release of ADEA claims.  This information includes the ages of those who were terminated and those who were not terminated within a job group, so as to enable the employees to better judge whether their terminations may have been discriminatory.  Clearly, IBM chose not to disclose this information, but instead attempted to deter ADEA lawsuits by offering modest (one month of salary) severance agreements to induce terminated employees to agree to arbitrate their claims under the ADEA. (See Exhibit E, Exemplar Arbitration Agreement at 23.)  Thus, many terminated IBM employees are subject to arbitration agreements so that IBM could avoid providing them disclosures under the OWPBA that may have pointed to age discrimination.

"investigation uncovered top-down messaging from IBM's highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires." Id.  Moreover, the EEOC "received corroborating testimony from dozens of witnesses nationwide supporting a discriminatory animus based on age."  Id.

### B.      The Rusis Named Plaintiffs' EEOC Charges

As a predicate to filing this lawsuit, lead Plaintiff Edvin Rusis filed a class EEOC charge on May 10, 2018, which states:

> IBM is discriminating against its older workers, both by laying them off disproportionately to younger workers and not hiring them for open positions. Indeed, over the last several years, IBM has been in the process of systematically laying off its older employees in order to build a younger workforce. IBM has laid off at least 20,000 employees over the age of forty in the last five years. I am 59 years old, and I am being laid off by IBM effective June 27, 2018. Since receiving notice of my layoff, I have applied for several other open positions within IBM, for which I am eminently qualified, but I have not been hired for any of these positions, despite my lengthy service and successful experience as an employee for IBM. I believe that I and thousands of other employees have been discriminated against by IBM on the basis of age.

Exhibit B (Rusis EEOC Charge).  Plaintiffs Henry Gerrits and Phil McGonegal subsequently filed class charges with similar language on July 2, 2018 (see Exhibit C, Gerrits EEOC Charge; Exhibit D, McGonegal EEOC Charge)  To date, 134 Plaintiffs (including the four named Plaintiffs) have opted in to this case.[12]

### C.      Plaintiffs Who Signed Arbitration Agreements

Since the Complaint was filed in this case, Plaintiffs' counsel has filed arbitration demands for approximately sixty-eight (68) individuals who wished to pursue age discrimination claims against IBM but who had signed arbitration agreements in order to obtain one month's salary in severance.  The arbitration agreements for these sixty-eight (68) individuals are all materially similar. (Exemplar Arbitration Agreement at 27, Exhibit E.)

---

[12]      See Dkt. 8-10, 28-29, 32, 36-37, 45, 48, 82-96, 99, 102-104, 109-112, 117.

With respect to the time limit for filing an arbitration demand, the arbitration

agreement states:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not timely submitted, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern though the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

Id.

The arbitration agreement also states that "the Arbitrator shall apply the

substantive law (and the law of remedies, if applicable) of the . . . federal law . . . as

applicable to the claim(s) asserted." Id.  Moreover, the agreement states that:

> You and IBM agree the arbitrator(s) is authorized to award any party ***the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction***, including attorneys' fees and expert fees and costs, to the same extent as would a court under applicable law.

Id. (emphasis added). The agreement includes a class action waiver that states:

> To the maximum extent permitted by applicable law, you agree that no Covered Claims may be initiated, maintained, heard or determined on a class action, collective action or multi-party basis either in court or in arbitration, and that you are not entitled to serve or participate as a class action member or representative or collective action member or representative or receive any recovery from a class or collective action involving any Covered Claims either in court or in arbitration.

Id. at 25.

With respect to any challenge of the validity of the arbitration agreement's terms,

the agreement states:

> ***Any issue concerning the validity or enforceability of this Agreement***, including the class action or collective action waivers contained in this section, ***shall be decided only by a court of competent jurisdiction.*** Any issue concerning the arbitrability of a particular issue or claim pursuant to this section (except for issues concerning the enforceability of the class action or collective action waivers) must be resolved by an arbitrator and not a court.

9

Id. (emphasis added).[13]

Of the sixty-eight (68) arbitrations filed by Plaintiffs' counsel, twenty-six (26) of them were dismissed by the arbitrators on the ground that the agreement required that claims be submitted to arbitration by no later than the deadline for filing an administrative charge; while Plaintiffs argued that they could take advantage of the piggybacking rule (which does not require them to file their own charge but instead piggyback off an earlier filed charge alleging the same discrimination), these arbitrators generally ruled that this provision of the arbitration agreement waived the piggybacking rule and it would be up to a court to decide if that was enforceable. See Exhibits F-EE; note 3. These 26 individuals then opted in to this case in order to challenge before a court the validity of the purported waiver of piggybacking in the arbitration agreement.

After those arbitrators determined that a court would need to hear the challenge to the purported piggybacking waiver, an additional nineteen (19) individuals who signed arbitration agreements with IBM opted in to this case also in order to bring before this Court their challenge to the enforceability of that provision.[14]

## III.    ARGUMENT

### A.    Legal Standard

A motion for judgment on the pleadings filed pursuant to Rule 12(c) is reviewed under the "same standard applicable to dismissals pursuant to [Rule] 12(b)(6)." Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010) (citing Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam)). Thus, the Court must "construe the complaint in the light

---

[13]    Although this provision refers to the enforceability of "this agreement" as a whole, it then says that this provision includes the enforceability of class action waivers, suggesting that it empowers the court to decide the enforceability of portions of the agreement as well, not just the full agreement.

[14]    These individuals are Timothy Anderson, Veerabhadra Chinnam, Adam Clements, Alyson Dildine, Perry Hartswick, Cynthia Horton, Duane Jessee, Bruce Jones, Robert Klein, Linwood Lassiter, Janine Miller, Andrew Odor, Myriah Prusik, David Reynolds, Michael Rosol, Kurt Runco, Jeff Scholl, Maria Schwenger, and Paul Stevenson. (Dkt. 8, 90, 109, 110-112, 117.)

most favorable to the nonmoving party." In order to survive a motion for judgment on the pleadings, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. "In deciding a motion for judgment on the pleadings, a court may consider the pleadings and attached exhibits, statements or documents incorporated by reference, and matters subject to judicial notice." Merck & Co. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 410 (S.D.N.Y. 2006).

### B. The Provision in IBM's Arbitration Agreement Purporting to Waive the Piggybacking Rule is Unenforceable, and these Forty-Five (45) Individuals Should Thus be Permitted to Arbitrate Their Claims

The central question raised by IBM's motion is whether the arbitration agreement's provision that purports to waive the piggybacking rule is enforceable.[15] If it is enforceable, the forty-five (45) Plaintiffs in question will be left in an untenable position that they would *not* be in if their claims were to be adjudicated in court.  Even though these Plaintiffs would be deemed timely to participate in this lawsuit (or even their own individual lawsuits) under the piggybacking rule in court, if this rule were permitted to be waived in arbitration, then that would mean they could not advance their age discrimination claims against IBM **at all**. That cannot be the case.  Again, arbitration is an acceptable alternative forum to pursuing discrimination claims, so long as an

---

[15]     As will be explained in Section III.C, *infra*, the twenty-six (26) opt-in Plaintiffs whose claims were initially dismissed in arbitration as untimely raised this argument at arbitration, but the arbitrators generally found that they were not empowered by the terms of the agreement to answer the question, and instead found that it was a question for a court.  As such, they are now properly before this Court seeking that determination.  While IBM contends that *res judicata* prevents these Plaintiffs from advancing this argument here, IBM is wrong because Plaintiffs properly presented their claims to the arbitrators, to which the agreement delegated the authority to decide which issues should be decided in arbitration and which should be decided in court.  See note 3.  Now that it has been determined that this issue needs to be before a court, Plaintiffs are now properly presenting this argument to the Court.
        The nineteen (19) opt-in Plaintiffs who are the subject of this motion who did not first bring their claims in arbitration should likewise be permitted to present this issue to the Court, so as not to unnecessarily waste time and resources eliciting this same ruling from 19 arbitrators (particularly given that IBM argued in those other 26 arbitrations that the arbitrators did not have the power to declare the piggybacking rule unenforceable – and instead urged that only a court could decide such an issue).

employee can pursue their claims there just as they would in court – and not sacrifice any substantive rights. See Gilmer, 500 U.S. at 28. The Court must therefore hold the purported piggybacking waiver is invalid.[16]  The piggybacking waiver in the arbitration agreement is unenforceable because the ADEA's timing scheme is a non-waivable substantive right under the ADEA, and the purported waiver would impermissibly prevent the effective vindication of Plaintiffs' claims.  Id.

Pursuant to the ADEA, individuals are required to file a charge with the EEOC within 300 days of the date of the alleged wrongful act (or within 180 days in non-deferral jurisdictions).[17] 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d), 633(b). However, this statutory period can be tolled by the filing of a classwide charge by a similarly situated individual before the EEOC under the "piggybacking" or "single filing" rule.  As the Second Circuit explained it, "According to the piggybacking rule, 'where one plaintiff has filed a timely EEOC complaint, other non-filing plaintiffs may join in the action if their individual claims aris[e] out of similar discriminatory treatment in the same time frame." Holowecki, 440 F.3d at 564 (quoting Snell v. Suffolk County, 782 F.2d 1094, 1100 (2d Cir. 1986)); see also Livingston v. City of Chicago, 2019 WL 194848, *3 (N.D. Ill. Jan. 14, 2019).

The purpose of the EEOC charge filing requirement is not to limit the time for suit, but instead to afford the EEOC a prompt "opportunity to 'seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.'" Tolliver, 918 F.2d at 1057, 1059. The EEOC "has interpreted the ADEA filing requirements to be satisfied 'so long as the matter complained of was within the

---

[16]    Otherwise, the arbitration agreements themselves are invalid, and these Plaintiffs would be able to pursue their claims in court.

[17]    The non-deferral states are Alabama, Arkansas, Georgia, Mississippi, and North Carolina, as well as the territories American Samoa, Guam, Wake Island, and the Commonwealth of the Northern Mariana Islands, see Individual Field Office Webpages, available at http://www.eeoc.gov/field/.

scope of [a] previously filed charge, regardless of who filed.'" Id. Additionally, courts have found that the administrative prerequisites of discrimination statutes such as the ADEA and Title VII "must be interpreted liberally to effectuate [their] purpose of eradicating employment discrimination," and courts must look to "fairness, and not excessive technicality" in addressing such issues. Cronas, 2007 WL 2739769, at *2. As such, the Second Circuit has adopted the piggybacking rule to excuse the administrative charge filing requirement where an individual falls within the scope of a timely filed administrative charge that describes similar discrimination. See Tolliver, 918 F.2d at 1057. As the Eleventh Circuit has described, the "principle behind the piggybacking rule is to give effect to the remedial purposes of the ADEA and to not exclude otherwise suitable plaintiffs from an ADEA class action simply because they have not performed the 'useless act of filing a charge.'" Grayson v. K Mart Corp., 79 F.3d 1086, 1103 (11th Cir. April 9, 1996).

In Tolliver, the Second Circuit held that the piggybacking rule applied not only in ADEA collective actions but also in individual ADEA cases (where the plaintiffs piggyback off of other individuals who filed similar EEOC charges but then pursued their claims in a different case from the plaintiffs). The court reasoned that "The purpose of the charge filing requirement is fully served by an administrative claim that alerts the EEOC to the nature and scope of the grievance, regardless of whether those with a similar grievance elect to join a preexisting suit **or initiate their own.**" 918 F.2d at 1057 (emphasis added). See also Cronas, 2007 WL 2739769, at *6 (permitting a plaintiff to proceed with an individual Title VII claim even though the plaintiff had not timely filed his own EEOC charge, because he could take advantage of piggybacking from an earlier class EEOC charge).[18] Moreover, in Tolliver, the Second Circuit acknowledged that the

---

[18]    IBM may argue that some of the individuals at issue in this motion worked in jurisdictions that take more restrictive approaches to the use of the piggybacking rule (for example, limiting the use of the piggybacking rule to plaintiffs in multi-plaintiff or collective action cases, see, e.g., Whalen v. W.R. Grace & Co., 56 F.3d 504, 507 (3d Cir. 1995), so that IBM may argue they

impact of the piggybacking rule was to permit individuals to institute lawsuits outside the ADEA's 300 (or 180 day) window, but explained that "[t]he charge filing requirement . . . sets a time limit, not for the purpose of limiting time for suit, but for the purpose of affording a prompt opportunity to attempt conciliation." <u>Tolliver</u>, 918 F.2d at 1059.

The piggybacking rule is equally applicable to an individual who files an individual arbitration.  For example, in a recent arbitration decision concerning an ADEA claim, where there was "no dispute that Claimant failed to file an administrative claim or lawsuit for a period much greater than the 300 day limitations period set forth in the applicable statute," Arbitrator Frank Abramson nevertheless found that the claimant's arbitration demand was timely because the claimant was permitted to invoke the piggybacking rule, given that the claimant was similarly situated to another individual who had filed a timely class charge. <u>In the Matter of Arbitration Between: [Claimant], Claimant, v. [Respondent] (Food and Kindred Products), Respondent</u>, 2018 WL 1933357, at *4 (Abramson, Arb. Feb. 27, 2018).[19]

---

could not make use of the rule in the context of an individual arbitration). However, the arbitration agreement does not mandate application of the law of the circuit in which the individual works or resides. Instead, the agreement reads: "The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted." (Exemplar Arbitration Agreement at 27, Exhibit E.) Plaintiffs contend that the claims all arose in New York, IBM's headquarters are in Armonk, New York. (FAC ¶ 12, Dkt. 11.) In any event, this is not even the correct analysis because it is this Court which has the authority to address the enforceability of IBM's purported waiver of the piggybacking rule, and Plaintiffs here have all chosen to bring their challenge to its enforceability before this Court, which has jurisdiction over IBM (which is headquartered here), and this Court is bound by the Second Circuit.

[19]     IBM may argue that <u>In the Matter of Arbitration</u> is distinguishable from this case, because in that case, the claimant had opted in to a collective action before being compelled to arbitrate his claim, and therefore the claimant's use of the piggybacking rule in that case was more appropriate than it is here. However, in the Second Circuit, piggybacking is available regardless of whether the employee has unsuccessfully attempted to join a collective action. <u>See</u> <u>Tolliver</u>, 918 F.2d at 1057.  Moreover, as already discussed, nineteen (19) of the individuals at issue in this motion did opt in to this case prior to commencing arbitrations (in order to get a ruling from this Court on the "enforceability" of the piggybacking waiver).  The twenty-six (26) individuals who went first to arbitration were reasonable in trying to abide by their arbitration agreements, only to then learn there that IBM would take the position that they had waived their right to piggybacking. Since it is up to the Court to decide whether that provision is enforceable (as it was up to the arbitrators to decide that this was an issue for the Court), the Court now has

Here, these Plaintiffs should be permitted to piggyback on the EEOC charges filed by Rusis (Exhibit B), Gerrits (Exhibit C), and McGonegal (Exhibit D), thereby tolling the time that they had to file their arbitration demands. Those charges alleged that IBM engaged in class-wide age discrimination, and the Plaintiffs who filed arbitrations were terminated in the manner described in those charges (and within 300 days of the filing of those charges), and are thus a part of the class of victims that the charges describe.

In addition, in light of the EEOC's August 31, 2020, determination finding that "there is reasonable cause to believe that [IBM] has discriminated against [58 charging parties and a nationwide class of those similarly situated] and others on account of their age," the EEOC has obviously had the opportunity to investigate the claims alleged in Plaintiffs' charges on a classwide basis.[20]  The EEOC has had ample ability to investigate and conciliate these claims, and IBM has been put on notice of the discrimination allegation; under the piggybacking rule, the Rusis, Gerrits, and McGonegal charges thus sufficed to toll the statutory limitations period under the ADEA for the Plaintiffs who pursued arbitrations, rendering their arbitration demands timely. See Tolliver, 918 F.2d at 1057; Cronas, 2007 WL 2739769, at *6.[21]

IBM argues, however, that the piggybacking rule cannot help the Plaintiffs who signed arbitration agreements because the arbitration agreement states that "The filing of a charge or complaint with a government agency . . .  shall not substitute for or extend the time for submitting a demand for arbitration." (Exemplar Arbitration

the power to make that decision. Assuming the Court holds that the provision is *not* enforceable, then those Plaintiffs should be permitted to resume their arbitrations.

[20]     And while Rusis, Gerrits, and McGonegal received right to sue letters, given that they were advancing this lawsuit, opt-in Plaintiffs Mark Johnson and Andrew Peavy are two of the charging parties included in the EEOC's determination. (EEOC Determination, Exhibit A.)

[21]     The EEOC Determination reveals that the EEOC was investigating these allegations in charges dating back to at least 2015, which would potentially permit piggybacking going back into 2014.  The opt-in Plaintiffs at issue here were all separated from IBM in 2017 or later (within the timeframe that would allow them to piggyback off of the Rusis, Gerrits, and McGonegal charges).

Agreement at 27, Exhibit E.) However, in order for the arbitration agreement to be enforceable, the Court must hold that provision (to the extent IBM is correct that it waives the piggybacking rule) is not enforceable.

The Supreme Court made clear in <u>Gilmer</u>, 500 U.S. at 28, that even though a statutory claim (there, an ADEA claim) may be subject to arbitration generally, "the prospective litigant [must be able to] effectively . . . vindicate his or her statutory cause of action in the [specific] arbitral forum." Here, IBM insists that these Plaintiffs cannot pursue their ADEA claims **at all** in arbitration, even though, absent the arbitration agreement, there is no question that they could pursue their claims in this case in court, or in their own individual cases in court, by relying on the piggybacking rule.

Moreover, courts have routinely found provisions of arbitration agreements or contracts shortening the time to file discrimination claims (which effectively a waiver of the piggybacking rule would be) to be unenforceable. The Sixth Circuit, for example, recently held that an employer cannot contractually shorten the limitations period of Title VII, because "this abrogation would be prospectively detrimental to [the employee's] *substantive rights* under federal law and would frustrate the uniform application of Title VII." <u>Logan</u>, 939 F.3d at 833 (emphasis added).  As the Sixth Circuit reasoned, although statutes of limitations are traditionally regarded as procedural mechanisms, there are exceptions to this general rule where statutes that "create rights and remedies contain their own limitation periods." <u>Id.</u> (citing <u>Davis v. Mills</u>, 194 U.S. 451, 454 (1904)). In such instances, the statute of limitations is considered a "substantive right" that "generally is not waivable in advance by employees." <u>Id.</u> at 829. The court recognized that Title VII created rights and remedies and contained its own limitations period and held that "contractual clauses that purport to shorten the limitation period of Title VII to bring suit are not enforceable." <u>Id.</u> at 833. The court thus struck down a contract term purporting to reduce the limitations period for Title VII claims to six months.

Numerous courts in the Second Circuit and elsewhere have likewise refused to

enforce contractual limitations periods in cases concerning the ADEA, Title VII, and similar statutes. See Castellanos, 291 F. Supp. 3d at 298 (striking an arbitration agreement's shortening of the limitations period for a Fair Labor Standards Act claim); Friedmann v. Raymour Furniture Co., Inc., 2012 WL 4976124 (E.D. N.Y. Oct. 16, 2012) (refusing to enforce a shortening of an employee's limitations period to pursue claims under the ADEA and Americans with Disabilities Act); see also Ragone, 595 F.3d at 125-26 (indicating that if the employer had not waived a shortened statute of limitations for a Title VII claim, the court may well have invalidated the arbitration agreement in question).[22] The timing provisions of the ADEA likewise create a substantive non-waivable right, as the EEOC explained in its recent *amicus* brief before the Sixth Circuit. See Thompson, EEOC Brief, 2020 WL 1160190, at *19-23.[23]  As the EEOC explained, "the ADEA's statutory limitations period is a substantive right and prospective waivers of its limitations period are unenforceable." EEOC Brief, 2020 WL 1160190, at *19.[24] The

---

[22]    See also Graham Oil v. Arco Products Co., 43 F.3d 1244, 1248-49 (9th Cir. 1994) (effort to truncate the limitations period was unenforceable, because it "expressly forfeits [the plaintiff's] statutorily-mandated right to a one-year statute of limitations."); Sanford v. Quicken Loans, 2014 WL 266410 (E.D. Mich. Jan. 24, 2014) (refusing to enforce shortening of Title VII limitations period); Mazurkiewicz v. Clayton Homes, Inc., 971 F.Supp.2d 682 (S.D. Tex.2013) (same); Cole v. Convergys Customer Mgmt. Grp., Inc., 2012 WL 6047741 (D. Kan. Dec. 5, 2012) (same); O'Phelan v. Fed. Express Corp., 2005 WL 2387647 (N.D. Ill. Sept. 27, 2005) (same); Mabry v. W. & S. Life Ins. Co., 2005 WL 1167002 (M.D.N.C. Apr. 19, 2005) (same); Wineman v. Durkee Lakes Hunting & Fishing Club, Inc., 352 F. Supp. 2d 815, 821 (E.D. Mich. Jan. 13, 2005) (holding that an arbitration provision shortening the limitations period for a claim under the Fair Labor Standards Act could not be enforced because "[a] contractual agreement that limits an employee's enforcement rights can have public policy implications beyond those affecting the private parties to the contract"); Lewis v. Harper Hosp., 241 F.Supp.2d 769 (E.D. Mich. 2002) (refusing to enforce shortening of Title VII limitations period); Salisbury v. Art Van Furniture, 938 F.Supp. 435 (W.D. Mich. 1996) (same).

[23]    The EEOC's reasonable interpretation of the ADEA is entitled to deference. See EEOC v. Comm. Office Prods. Co., 486 U.S. 107, 115 (1988) ("[I]t is axiomatic that the EEOC's interpretation of [the ADEA], for which it has primary enforcement responsibility, need . . . only be reasonable to be entitled to deference."). The EEOC's interpretations of the ADEA reflect "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 399 (2008) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)). See also Jones v. American Postal Workers Union, 192 F.3d 417, 427 (4th Cir. 1999) (holding that an EEOC interpretation in an amicus brief was entitled to deference).

EEOC explained further:

> Thus, while Title VII and the ADEA may differ in a few ways with respect to pre-suit procedures, they are extremely similar in every way material to the question before the Court here and in <u>Logan</u>: whether the ADEA's statutory limitations periods, like Title VII's, are substantive rights not waivable in advance. As this Court observed regarding Title VII, ADEA "enforcement relies on a combination of public and private action and mandates that the EEOC . . . must afford non-compliant employers the chance to voluntarily cure their violations before . . . litigation may be brought against them." <u>Logan</u>, 939 F.3d at 827. Like Title VII, the ADEA sets out a "pre-suit process" that serves the Congressional purpose of "cooperation and voluntary compliance . . . as the preferred means of eradicating workplace discrimination." <u>Id.</u> at 828. Accordingly, through the ADEA's pre-suit process, "Congress 'established a procedure whereby ... the [EEOC] would have an opportunity to investigate individual charges of discrimination, to promote voluntary compliance with the requirements of [the statute].'" <u>Id.</u>
>
> Of particular importance here, both statutes provide similar limitations periods with "important implications for an employee who has suffered workplace discrimination." <u>Logan</u>, 939 F.3d at 829. As described above, the limitations period under the ADEA does differ somewhat from Title VII, in that the former permits the charging party to file suit once the initial sixty-day post-charge-filing period has passed and without requiring a right-to-sue notice. But this distinction is not a material difference for purposes of determining whether the ADEA's statutory limitations period is a substantive right not waivable in advance.

<u>Id.</u> at *23. While some courts have attempted to distinguish between Title VII and the

ADEA with respect to whether their timing schemes were procedural or substantive,[25]

---

[24]   The Sixth Circuit held oral argument in <u>Thompson</u> on July 28, 2020, and appears poised to adopt the EEOC's position. The EEOC's counsel discussed the issue only briefly, and the only response from the panel was that his interpretation was "pretty clearly correct . . . ." <u>See</u>, Audio Recording of Argument at 12:41-13:35, https://www.opn.ca6.uscourts.gov/internet/court_audio/aud2.php?link=recent/07-28-2020%20-%20Tuesday/20-3060%20Cassandra%20Thompson%20v%20Fresh%20Products%20LLC%20et%20al.mp3&name=20-3060%20Cassandra%20Thompson%20v%20Fresh%20Products%20LLC%20et%20al (accessed September 22, 2020).

[25]   For example, IBM may cite to <u>Cerjanec v. FCA US, LLC</u>, 2017 WL 6407337, *7-10 (E.D. Mich. Dec. 15, 2017), and <u>Smithson v. Hamlin Pub, Inc.</u>, 2016 WL 465564, *2-3 (E.D. Mich. Feb. 8, 2016), in which the court found that a contractual shortening of the ADEA limitations period from 300 days to 180 days was permissible because ADEA was distinguishable from Title VII. But as the EEOC has argued, the differences are immaterial. EEOC Brief, 2020 WL 1160190, at *23. Furthermore, those cases are poised to be overturned by the Sixth Circuit in <u>Thompson</u>. <u>See</u>, note 24, *supra*. Likewise, IBM may cite to <u>Hagan v. Katz Communications, Inc.</u>, 200 F. Supp. 3d 435, 444-45 (S.D.N.Y. 2016), but in that case there was no argument that the ADEA's timing scheme had been abridged in any way – the plaintiff simply argued that the ADEA's limitations period should not have been incorporated into the arbitration agreement at all.

such distinctions are no longer viable in light of <u>Logan</u> and the EEOC's position set forth in its amicus brief in <u>Thompson</u>. Simply put, by purporting to waive the Plaintiffs' right to rely on the piggybacking rule, the agreement abridges a substantive, non-waivable right. This provision in the arbitration agreement therefore cannot be enforced.

Furthermore, IBM obtained the waiver of these Plaintiffs' right to rely on the piggybacking rule in violation of the OWBPA, which is a provision within the ADEA that mandates strict requirements that employers must meet in order to obtain a valid waiver from an employee of "any right or claim" under the ADEA. <u>See</u> 29 U.S.C. § 626(f)(1)(H); 29 C.F.R. § 1625.22(f). One such requirement in a group termination (such as a reduction in force) is that the employer must issue information to all employees over age 40 who are being terminated regarding their termination, including any eligibility factors that affected the workers' selection for termination, the job titles and ages of all individuals who were terminated, and the ages of all individuals in the organizational unit who were not being terminated. 29 U.S.C. § 626(f)(1)(H); 29 C.F.R. § 1625.22(f). If an employer does not issue these disclosures to employees over age 40, any waiver of a "right or claim" under the ADEA that an employer has obtained from an employee is invalid. IBM has not issued OWBPA disclosures to its employees over age 40 who have been terminated since 2014 and does not dispute that it did not do so for the Plaintiffs in question. (Exemplar Arbitration Agreement at 23, Exhibit E.)

As the Supreme Court has explained, "The policy of the OWBPA is . . . clear from its title: It is designed to protect the rights and benefits of older workers." <u>Oubre v. Entergy Operations, Inc.</u>, 522 U.S. 422, 426-27 (1998). Therefore, an employee may not waive a right under the ADEA "unless the employer complies with the statute." <u>Id.</u> Importantly, the EEOC has taken the position that the OWBPA protects employees from waiving rights by abridging their time to pursue their claims if they did not receive the proper disclosures:

The ADEA does have one other arguably relevant provision with no analogue in

> Title VII: 29 U.S.C. § 626(f) . . ., which expressly governs waivers of "rights or claims under this chapter." However, § 626(f), read together with *Logan*'s holding that a statutory limitation period is a substantive right, only strengthens the argument against construing the ADEA's limitations period as prospectively waivable.

EEOC Brief, 2020 WL 1160190, at *25. Because IBM did not provide OWBPA disclosures to the Plaintiffs, any waiver that IBM argues that the Plaintiffs made with respect to their right to utilize the piggybacking rule by signing the arbitration agreement is invalid. Indeed, for that reason, the arbitration agreement itself is only valid if Plaintiffs are allowed to use the piggybacking rule, as without the use of the piggybacking rule, these Plaintiffs will be completely precluded from advancing their ADEA claims.

Plaintiffs expect that IBM will argue that the OWBPA protects only substantive rights, and that the limitations period at issue here is procedural. But as Plaintiffs explained, *supra*, the ADEA's timing scheme is a substantive right rather than a procedural right, just like Title VII. Logan, 939 F.3d at 829-33; EEOC Brief, 2020 WL 1160190, at *19. Indeed, given the fact that the Second Circuit has taken such a strong and expansive position in favor of the piggybacking rule, it seems apparent that the Second Circuit would agree with the Sixth Circuit in Logan.  As one court has described it, the Second Circuit has "aligned itself with the 'broadest' interpretation" of the piggybacking rule.  Cronas, 2007 WL 2739769, at *5 (applying the piggybacking rule because the court should not "elevate form over substance" when ensuring that employees bringing discrimination claims can have their complaints heard) (citing Tolliver, 918 F.2d at 1057).[26]  In sum, because the enforcement of the piggybacking

---

[26]     Even if the piggybacking rule was a procedural right, the express language of the OWBPA does not distinguish between procedural and substantive rights, stating that "[a]n individual may not waive **any right or claim**" without first receiving the OWBPA disclosures. 29 U.S.C. § 626(f)(1).  See Hammaker v. Brown & Brown, Inc., 214 F. Supp. 2d 575, 578-81 (E.D. Va. 2002) (holding the OWBPA to apply to procedural rights and substantive rights under the ADEA and noting that the OWBPA must be interpreted broadly in furtherance of "the OWBPA's purpose to protect the rights and benefits of older workers"); Thiele v. Merrill Lynch, Pierce, Fenner & Smith, 59 F. Supp. 3d 1060, 1064-65 (S.D. Cal. 1999) (examining the legislative purpose of the OWBPA and concluding that the OWBPA was intended to substantive rights and procedural rights under the ADEA equally).  IBM will likely respond that the Supreme Court held in 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 259 (2009), that the OWBPA only protects

waiver in IBM's arbitration would violate abridge these Plaintiffs' substantive rights under the ADEA and violate the OWBPA, the Court must hold the waiver to be invalid, thus permitting these Plaintiffs to proceed with pursuing their claims in arbitration.

### C.     The Plaintiffs Who Received Arbitration Awards are not Precluded from Advancing their Claims by *Res Judicata*

IBM argues that these Plaintiffs are now precluded from advancing their argument in this case by the doctrine of *res judicata*, since they received final awards at arbitration finding their claims untimely. IBM is wrong, however, because the plain language of IBM's arbitration agreement **did not** empower the arbitrators to address the crucial question in determining the timeliness of the arbitration claimants' demands – whether the provision of the arbitration agreement that purported to waive the Plaintiffs' right to rely on the piggybacking rule was valid. See note 3. As such, *res judicata* cannot now preclude Plaintiffs from raising that argument.

In order to establish that these Plaintiffs' claims are barred by *res judicata*, IBM must establish that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (internal quotation omitted). Claim preclusion can be applied only where "the parties have had a full and fair opportunity to litigate the matter." Channer v. Dep't of Homeland Sec., 527 F.3d 275,

---

procedural rights. However, the 14 Penn Plaza holding was limited to whether a union could waive a union member's right to bring an ADEA claim in court and simply did not address the question in this case. See id.

While another court in this district recently held that the OWBPA did not protect the procedural right of proceeding as a collective action under the ADEA, see Estle v. International Business Machines Corp., 2020 WL 5633154, at *3-7 (S.D.N.Y. Sept. 21, 2020), Plaintiffs do not agree that case was correctly decided, but in any event, that case did not address the question at issue here. In Estle, Plaintiffs sought to invalidate the class action waiver in IBM's arbitration agreement.  In contrast, here, these Plaintiffs are not trying to avoid arbitration or the impact of the class action waiver. Instead, they seek to avoid a result in which their ability to proceed on their ADEA claims is precluded altogether.  In Estle, the plaintiffs can still pursue their claims, albeit in arbitration.  Here, IBM is seeking to block the 45 opt-in Plaintiffs at issue here from pursuing their claims anywhere.

279 (2d Cir. 2008).  The Supreme Court has held that "claim preclusion does not apply where '[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts . . . ." Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 383 (1985) (quoting Restatement (Second) of Judgments § 26(1)(c)(1982)). Likewise, where an arbitrator is not empowered to decide an issue or a theory, courts do not afford an arbitration award *res judicata*. See W.J. O'Neil Co. v. Sheply, Bulfinch, Richardson & Abbott, Inc., 765 F.3d 625, 631 (6th Cir. 2014) ("It makes little sense to allow an arbitration proceeding or award to preclude a claim the arbitrator had no authority to decide") (citing Gilmer, 500 U.S. at 35); Williams v. E.F. Hutton & Co., Inc., 753 F.2d 117, 119 (D.C. Cir. 1985) (holding that "arbitration cannot be raised as a bar to claims falling outside the arbitration agreement," and that arbitrator decisions cannot bar a subsequent claim where "they were found to have exceeded their authority by reaching out to decide matters not consigned to their discretion by the arbitration agreement").

Here, IBM itself argued to the arbitrators that they *were not empowered* to find that the provision that waived the Plaintiffs' right to rely on the piggybacking rule was invalid, because the arbitration agreement states that "[a]ny issue concerning the validity or enforceability of this Agreement . . . shall be decided only by a court of competent jurisdiction." (Exemplar Arbitration Agreement at 25, Exhibit E.)  Most of the arbitrators found that they did not have such authority, finding that the arbitration agreement delegated questions of validity to the Court. See note 3. Because the arbitrators were not empowered to determine whether or not the arbitration agreement's provision purporting to waive piggybacking rule was valid and enforceable, IBM cannot now invoke *res judicata* with respect to these arbitrators' decisions.

There is an additional reason why the Court should reject IBM's argument that these Plaintiffs' claims are precluded by *res judicata*. Eleven of the arbitrators found that the piggybacking rule only applies where an individual has attempted to opt in to or

22

otherwise join another lawsuit.[27] While Plaintiffs did not agree this was necessary, these Plaintiffs then opted in to this case, so that under the rule set forth by the arbitrators overseeing their claims, they can now enjoy the piggybacking rule.[28]

### D. The Plaintiffs Who Began Their Claims in Arbitration Did Not Waive Their Argument Before This Court That the Piggybacking Waiver is Uneforceable

Finally, IBM argues that the 26 Plaintiffs who started in arbitration waived any challenge to the validity of the piggybacking waiver by first bringing their claims in arbitration.  As discussed above, it was not entirely clear whether a court or the arbitrator had the authority to decide the enforceability question, and the arbitration agreement delegated to the arbitrator the question of who decides what issues.[29]

Now that most arbitrators held that the enforceability issue is for the Court to decide, Plaintiffs are before this Court – and cannot be deemed to have waived their argument simply because they reasonably did what they believed the arbitration agreement directed them to do – which was pursue their claims in arbitration.  The arbitrators then determined that this enforceability issue was an issue for a Court to decide. See note 3.  Once these Plaintiffs learned that the arbitrators had deemed themselves to be not empowered to make this central decision in their cases, they came

---

[27]     See Abt, at *3-4 (Exhibit G); Burgoyne, at *7 (Exhibit I); Carlton, at *7-8 (Exhibit J); Chandler, at *1-2 (Exhibit K); Davis, at *4-5 (Exhibit N); DiFelice, at *3-4 (Exhibit O); Guerinot, at *4-7 (Exhibit S); Mandel, at *3-4 (Exhibit W); Vornhagen v. International Business Machines Corp., JAMS No. 1425028751, at *8 (Kornreich, Arb. Sept. 9, 2019) (Exhibit CC); Warren, at *3 (Exhibit DD); Wilson v. International Business Machines Corp., JAMS No. 1345000309, at *4 (Rhodes, Arb. Oct. 1, 2019) (Exhibit EE).

[28]     With respect to Plaintiff Brian Brown, the arbitrator did not issue a reasoned award. See Brown v. International Business Machines, Corp., JAMS No. 23773, Order, at *1 (Clark, Arb. Jan. 2, 2020) (Exhibit H). As such, res judicata cannot be applied to this decision. While arbitrators have no obligation to provide reasons for their award, without a reasoned award, it is not really possible to determine for res judicata purposes what issues were in fact "determined" by the arbitrator. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 58 (1974).

[29]     The arbitration agreement states: "Any issue concerning the arbitrability of a particular issue or claim pursuant to this section . . . must be resolved by an arbitrator and not a court." (Exemplar Arbitration Agreement at 25, Exhibit E.)

to this Court to make the decision.

The fact that the arbitrators held that the question of whether the Plaintiffs had effectively waived the piggybacking rule was a question for the court rather than the arbitrator does not mean that the Plaintiffs somehow waived their challenge to the validity of this term of the arbitration agreement. These Plaintiffs believed that the language of the arbitration agreement delegated timeliness issues to arbitrators rather than the Court, and they therefore brought their claims first to arbitrators. IBM argued otherwise, and the arbitrators agreed that the question was for a court of competent jurisdiction. As such, these Plaintiffs opted in to this case in order to raise the issue before the Court. At no point did these Plaintiffs waive or concede the issue.

Indeed, cases originally filed in arbitration routinely proceed in court if arbitrability or other issues prevent the arbitration from proceeding (or where it is determined that a particular issue needs to be decided first by a court). See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 946 (1995) (holding that "merely arguing the arbitrability issue to an arbitrator" does not waive the right to challenge an arbitration agreement's validity in court); Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1277-80 (9th Cir. 2006) (holding that a plaintiff who participated in preliminary arbitration stages did not waive her right to challenge the validity of the agreement in court).[30]

---

[30]     See also Tillman v. Tillman, 825 F.3d 1069, 1071 (9th Cir. 2016) (reinstating claims in court that were previously compelled to arbitration when plaintiff could not proceed in arbitration, there because the plaintiff could not afford to pay high costs of arbitration); Nadeu, 251 F. Supp. 3d at 641-44 (permitting the plaintiff to proceed in court after plaintiff had filed an arbitration demand but could not adjudicate claim in arbitration).
        The cases IBM relies on are easily distinguishable. For example, in Conntech Dev. Corp. v. Univ. of Conn. Educ. Props., Inc., 102 F.3d 677, 685 (2d Cir. 1996), the court found that the defendant had waived its right to challenge the validity of an arbitration agreement in court only where the arbitration hearing itself had been ongoing for 15 months over 45 days of hearings that included the testimony of 14 witnesses and the examination of 409 documentary exhibits. Here, on the other hand, the parties had only argued the initial motion to dismiss submitted by IBM. Likewise, IBM relies on PolyOne Corp. v. Westlake Vinyls, Inc., 937 F.3d 692, 698 (6th Cir. 2019), but in that case the plaintiff sought to challenge the validity of the entire agreement despite the fact that it first had initiated arbitration. In contrast, here Plaintiffs attempted to abide by the agreement only to be told by IBM and the arbitrators that a court had to decide the issue central to the timeliness question. IBM also relies on Env't Barrier Co. v. Slurry Sys., Inc., 540

24

At bottom, IBM seeks to put these Plaintiffs in a Catch 22. IBM convinced the arbitrators that they lacked the authority to find whether the piggybacking waiver was valid or enforceable since the arbitration agreement delegates such questions to the courts, and now that that these Plaintiffs seek to challenge the validity of the piggybacking waiver in court, IBM argues that they cannot do so because they first challenged it at arbitration. The Plaintiffs must be able to challenge the validity of the term somewhere. Likewise, Plaintiffs must be able to pursue their claims somewhere.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny IBM's Partial Motion for Judgment on the Pleadings as to Arbitration Opt-ins and to Compel Arbitration (Dkt. 121). While the Plaintiffs at issue here do not object to arbitrating their claims, it is for this Court to decide first that IBM's purported attempt to obtain a waiver of the piggybacking rule through its arbitration agreement is invalid. That would be a waiver of a substantive right, which is not allowed under Gilmer. Furthermore, for these plaintiffs, that would be a waiver of their rights under the ADEA, and IBM could not obtain such a waiver since it did not provide them with the OWBPA disclosures. The Court should thus deny the motion and rule that Plaintiffs may proceed on their claims in arbitration, with the piggybacking waiver stricken from the arbitration agreement.

---

F.3d 598, 607 (7th Cir. 2008), but in that the court found that the parties who were objecting to arbitrability had waived their right to challenge arbitrability in court because they took the arbitration all the way through a full hearing on the merits, received unfavorable decisions after their arbitration hearings, and then sought recourse from the court. Env't Barrier Co. differs from this case because here the arbitrators found that they lacked had the authority to decide Plaintiffs' argument. Finally, IBM cites Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1440 (9th Cir. 1994). The Nagrampa court distinguished Nghiem for reasons that are equally applicable here, as Nghiem concerned a case where "the objecting party has participated far more extensively . . . before resorting to the courts," and specifically, the plaintiff had "'initiated the arbitration, attended the hearings with representation, presented evidence, and submitted a closing brief of fifty pages' before filing suit in state court." Nagrampa, 469 F.3d at 1279.

In the cases at issue here regarding the 26 Plaintiffs who started arbitration cases, none of these arbitrations had gone all the way to hearing; indeed, none of them progressed beyond the initial threshold issue regarding timeliness and whether Plaintiffs could rely on piggybacking.

Dated: September 25, 2020

Respectfully submitted,

EDVIN RUSIS, HENRY GERRITS, and
PHIL MCGONEGAL, AND DAVID HO ENG, on
behalf of themselves and all others similarly
situated,

By their attorneys,


/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (NY Bar No. 2971927)
Thomas Fowler,
*pro hac vice* forthcoming
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, tfowler@llrlaw.com


## **CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2020, a true and accurate copy of the

foregoing Motion was filed via this Court's CM/ECF system.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan