UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDVIN RUSIS, HENRY GERRITS, PHIL MCGONEGAL, DAVID HO ENG, BRIAN HAUPT, PHILIP MONSON, CLAUDIA ZIEGLER, SALLY GEHRING, and JOHN MASON, individually and on behalf of all other similarly situated individuals,<br><br>             Plaintiffs,<br><br>   v.<br><br>INTERNATIONAL BUSINESS MACHINES CORP.<br><br>          Defendant. | **1:18-cv-08434 (VEC)** |

**DEFENDANT INTERNATIONAL BUSINESS MACHINES CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO THE ADEA CLAIMS OF PLAINTIFFS WHO FILED UNTIMELY CHARGES, AN UNTIMELY LAWSUIT, OR FALL OUTSIDE THE TEMPORAL <u>SCOPE OF THE REPRESENTATIVE ADMINISTRATIVE CHARGES</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

BACKGROUND ......................................................................................................... 2

I.    Procedural History. .......................................................................................... 2

II.   Facts Relevant To The Timeliness Of Specific Claims And The Temporal Scope
      Of This Action. .................................................................................................. 3

      A.    Original Named Plaintiffs ........................................................................ 4

            1.    Original Named Plaintiffs Edvin Rusis and Henry Gerrits ....................... 4

            2.    Original Named Plaintiff Phil McGonegal ................................. 4

      B.    New Named Plaintiffs ............................................................................... 5

            1.    Named Plaintiff John Mason ..................................................... 5

            2.    Named Plaintiff Brian Haupt .................................................... 5

            3.    Named Plaintiff Philip Monson ................................................. 6

            4.    Named Plaintiff Claudia Ziegler ............................................... 6

            5.    Named Plaintiff Sally Gehring ................................................... 6

      C.    Other Untimely Charge Filers ................................................................. 7

            1.    Opt-In Earl Gobin .................................................................... 7

            2.    Opt-In Walter Bayerle .............................................................. 7

      D.    Untimely Lawsuit Filers .......................................................................... 7

            1.    Opt-In Catherine Rodgers ....................................................... 7

            2.    Opt-In Errol Back-Cunningham ................................................ 8

            3.    Opt-In Scott Owen .................................................................. 8

            4.    Opt-In Thomas Parkin ............................................................. 8

      E.    The Remaining Opt-In Plaintiffs ............................................................. 8

LEGAL STANDARD .................................................................................................. 9

ARGUMENT .............................................................................................................. 10

I.    The ADEA's Procedural Requirements ............................................................ 10

      A.    The ADEA's Administrative Exhaustion and Timeliness Requirements ........... 10

      B.    The ADEA's Statute of Limitations for Judicial Causes of Action ................. 10

      C.    The Single-Filing, or "Piggybacking," Exception to Administrative
            Exhaustion .......................................................................................... 11

II.   Judgment Should Be Granted on the ADEA Claims of Those With Untimely
      Charges or Judicial Actions. ............................................................................ 13

**TABLE OF CONTENTS**

(continued)

**Page**

|  | A. | Named Plaintiff McGonegal and Opt-Ins Gobin and Bayerle Failed to File Timely Charges. | 13 |
|  | B. | Opt-Ins Rodgers, Back-Cunningham, Owen, and Parkin Failed to File Timely Suits. | 15 |
| III. | | Judgment Should Be Granted on the Claims of Opt-Ins That Accrued More Than 300 or 180 Days Before May 10, 2018. | 18 |
|  | A. | The Date of Named Plaintiff Rusis' Charge Sets the Rearward Scope. | 18 |
|  | B. | Named Plaintiff Sally Gehring's Charge Cannot Support Piggybacking. | 19 |
|  | C. | Plaintiffs Cannot Piggyback on the Charges of Named Plaintiffs in Other Lawsuits. | 22 |
| IV. | | Judgment Should Be Granted on the Claims of Opt-Ins That Accrued After July 10, 2018. | 23 |
|  | A. | The Date of Named Plaintiff Gerrits' Charge Sets the Forward Scope. | 23 |
|  | B. | No Other Charge Supports Extending the Forward Scope of This Collective. | 24 |
| CONCLUSION | | | 25 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bettcher v. Brown Sch., Inc.*,
    262 F.3d 492 (5th Cir. 2001) ...................................................................................22

*Boyce-Herbert v. New York & Presbyterian Hosp.*,
    2020 WL 376788 (E.D.N.Y. Jan. 23, 2020) ..........................................................17

*Coghlan v. Peters*,
    555 F. Supp. 2d 187 (D.D.C. 2008) ........................................................................22

*DeBose v. FedEx Corp.*,
    2009 WL 1542572 (S.D.N.Y. June 2, 2009) ...........................................................20

*Del. State Coll. v. Ricks*,
    449 U.S. 250 (1980) ...........................................................................................10, 14

*Delaney v. Bank of Am. Corp.*,
    766 F.3d 163 (2d Cir. 2014) .....................................................................................9

*EEOC v. Bloomberg L.P.*,
    967 F. Supp. 2d 816 (S.D.N.Y. 2013) ...............................................................19, 20

*Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    301 F. Supp. 2d 259 (S.D.N.Y. 2004) ....................................................................14

*Flaherty v. Metromail Corp.*,
    235 F.3d 133 (2d Cir. 2000) ...................................................................................13

*Friedman v. Columbia Univ.*,
    2014 WL 1041032 (S.D.N.Y. Mar. 13, 2014) ...................................................11, 14

*Gray v. Shearson Lehman Bros.*,
    947 F. Supp. 132 (S.D.N.Y. 1996) ..........................................................................10

*Grayson v. K Mart Corp.*,
    79 F.3d 1086 (11th Cir. 1996) .................................................................................21

*Green v. Brennan*,
    578 U.S. 547 (2016) .................................................................................................13

*Hipp v. Liberty Nat. Life Ins. Co.*,
   252 F.3d 1208 (11th Cir. 2001) ........................................................................24

*Holowecki v. FedEx Corp.*,
   440 F.3d 558 (2d Cir. 2006)....................................................................11, 14

*Ko v. JP Morgan Chase Bank*,
   730 F. App'x 62 (2d Cir. 2018) .......................................................................17

*Levy v. U.S. Gen. Acct. Off.*,
   175 F.3d 254 (2d Cir. 1999) (per curiam)......................................................11

*Morse v. Univ. of Vermont*,
   973 F.2d 122 (2d Cir. 1992)............................................................................14

*Morton v. ICI Acrylics, Inc.*,
   69 F. Supp. 2d 1038 (W.D. Tenn. 1999).........................................................22

*Orsaio v. New York State Dep't of Corr. & Cmty. Supervision*,
   2019 WL 3891085 (N.D.N.Y. Aug. 19, 2019) .................................................17

*Ruehl v. Viacom, Inc.*,
   500 F.3d 375 (3d Cir. 2007)............................................................................22

*Rusis v. IBM*,
   529 F. Supp. 3d 178 (S.D.N.Y. 2021)....................................................... passim

*Rusis v. Int'l Bus. Machines Corp.*,
   2020 WL 1151322 (S.D.N.Y. Mar. 10, 2020) .................................................23

*Tolliver v. Xerox Corp.*,
   918 F.2d 1052 (2d Cir. 1990)..................................................................passim

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000).................................................................................9

### STATUTES

29 U.S.C. § 216(b) ....................................................................................................22

29 U.S.C. § 626(d) ...............................................................................10, 11, 14, 25

29 U.S.C. § 626(e) ...................................................................................11, 15, 25

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ................................................................................................9

Fed. R. Civ. P. 56(e) ..............................................................................................10

## INTRODUCTION

Defendant IBM seeks summary judgment on the ADEA claims of Named Plaintiff Phil McGonegal, Opt-Ins Earl Gobin, Walter Bayerle, Catherine Rodgers, Errol Back-Cunningham, Scott Owen, and Thomas Parkin, as well as the claims of 96 Opt-Ins ("Timeliness Opt-Ins"), due to their respective failures to comply with the ADEA's timeliness or other procedural requirements. These individuals failed to file a timely administrative action, failed to file a timely judicial action, and/or failed to file an administrative charge and fall outside the temporal scope of any proper representative charge.

*First*, McGonegal, Gobin, Bayerle, Rodgers, Back-Cunningham, Owen, and Parkin each filed their own EEOC charges, but either those charges were untimely or they failed to later file a timely court action. This Court has already held that charge-filers may *not* rely on the piggybacking exception to save their untimely charge or claim. *Rusis v. IBM*, 529 F. Supp. 3d 178, 202-04 (S.D.N.Y. 2021). Thus, the Court should grant summary judgment on these claims.

*Second*, 57 Timeliness Opt-Ins were either notified of their separations or separated from IBM more than 180 or 300 days before the charge filed by Edvin Rusis—the earliest charge filed by any original named plaintiff in this action. Summary judgment must be granted on their ADEA claims because this Court has already held that "opt-ins whose claims accrued more than 180 or 300 days before the Rusis EEOC charge was filed may not piggyback onto that charge." *Rusis*, 529 F. Supp. 3d at 225. Nor can these Opt-Ins rely on the charge of new Named Plaintiff Sally Gehring to save their untimely claims. Gehring's charge exhausts only her own individual claim, not the claims of others. In addition, Gehring is not an original Named Plaintiff, and Plaintiffs should not be allowed to invoke her charge—three years into this litigation—for the sole purpose of extending the rearward scope of this action.

*Third*, summary judgment should be granted on the claims of 39 Timeliness Opt-Ins

whose claims accrued *after* the charged filed by Henry Gerrits—the latest charge filed by any original Named Plaintiff. While the Court initially declined to set the forward scope of the case, it should do so now. The Court reserved ruling in part to allow for discovery into the EEOC's investigation, but discovery has shown that the investigation extended only up to 2018. Moreover, while Plaintiffs have added three additional Named Plaintiffs with later-filed charges—Brian Haupt, Philip Monson, Claudia Ziegler—none of them were original Named Plaintiffs in this suit, and thus cannot provide a basis for piggybacking. In any event, this Court should set the forward scope as the date of Gerrits' charge to avoid the "piggybacking chain of near-infinite length and scope" it previously warned against. *See Rusis*, 529 F. Supp. 3d at 211.

## BACKGROUND

### I.     PROCEDURAL HISTORY.

Named Plaintiffs Edvin Rusis, Henry Gerrits, and Phil McGonegal initiated this lawsuit on September 17, 2018, asserting claims under the ADEA, California law, and North Carolina law. *See* Dkt. 1. They filed an amended complaint on December 11, 2018, adding Named Plaintiff David Ho Eng and an age-discrimination claim under New Jersey law. *See* Dkt. 11.

On May 6, 2019, Plaintiffs filed a Motion for Issuance of Notice (Dkt. 46), seeking conditional certification of a putative ADEA collective consisting of "all individuals who worked for IBM in the United States over forty (40) years of age whose employment with IBM ended . . . any time since July 14, 2017." *See* Dkt. 47 at 25, 22 n.36 (arguing the "rearward opt in window" should be based on Rusis' charge date). On March 10, 2020, the Court denied Plaintiffs' Motion in full, finding that Plaintiffs "made no showing, beyond conjecture and the individual affiants' beliefs, that a unifying scheme at IBM links the potential members of the collective to one another despite vast differences in their jobs, locations, and circumstances surrounding their departure from IBM." Dkt. 97 at 6. Thus, Plaintiffs failed to meet "even the lenient evidentiary

burden for issuing notice" to the proposed collective. *Id.*

On August 14, 2020, IBM moved for partial judgment on the pleadings on the ADEA claims of a number of Named Plaintiffs and individuals who had opted in to the putative collective ("Opt-Ins"), arguing among other things that their claims were untimely and that they failed to administratively exhaust. *See* Dkts. 120, 123, 129. On March 26, 2021, the Court granted in part and denied in part IBM's motions. Dkt. 156 (*Rusis v. IBM*, 529 F. Supp. 3d 178 (S.D.N.Y. 2021)). With respect to the individuals who filed untimely charges or otherwise failed to administratively exhaust their claims, the Court generally agreed with IBM's articulation of the limits of the "single filing" or "piggybacking" doctrine—a judicially created exception to the exhaustion requirement. *See, e.g.*, *Rusis*, 529 F. Supp. 3d 178 at 204, 210-11, 218 (holding that, among other limitations, the doctrine is only available to non-charge filers invoking a named plaintiff's charge, alleging they were subjected to the same treatment complained of in the charge). The Court, however, directed the parties to engage in limited discovery to determine which individuals must be dismissed in light of the Court's rulings. *Id.* at 234.

On June 11, 2021—nearly three years after this case began—Plaintiffs sought leave to file a Second Amended Complaint ("SAC"). Dkt. 166. On July 22, 2021, Plaintiffs filed the SAC adding five new Named Plaintiffs: Brian Haupt, Philip Monson, Claudia Ziegler, Sally Gehring, and John Mason. Dkt. 180. They also added claims under Massachusetts and New York laws. *Id.*

## II.   FACTS RELEVANT TO THE TIMELINESS OF SPECIFIC CLAIMS AND THE TEMPORAL SCOPE OF THIS ACTION.

With respect to the timeliness of specific claims and the proper temporal scope of this action, the following facts are undisputed.

### A.      Original Named Plaintiffs[1]

#### 1.      Original Named Plaintiffs Edvin Rusis and Henry Gerrits

On May 9, 2018, after receiving notice of his selection for a resource action, Named

Plaintiff Edvin Rusis filed a charge of discrimination with the EEOC. Defendant's L.R. 56.1

Statement of Material Facts ("SMF") ¶ 1. On July 10, 2018, Named Plaintiff Henry Gerrits filed

a separate (but materially identical) charge of discrimination. *Id.* ¶ 3. Both Rusis and Gerrits

claimed in their respective charges that IBM had engaged in age discrimination between March

2018 (the time they were each notified of their impending separations) and June 27, 2018 (the

date these separations became effective). *Id.* ¶ 4. Neither of them checked the "Continuing

Action" box on the EEOC charge form. *Id.* ¶ 5.

#### 2.      Original Named Plaintiff Phil McGonegal

Named Plaintiff Phil McGonegal lived in Georgia throughout the time he worked for

IBM, including at the time of his separation. SMF ¶ 6. On May 2, 2017, McGonegal was notified

that he was eligible to participate in IBM's Transition to Retirement Program. *Id.* ¶ 7. On May

12, 2017, McGonegal was notified that he would need to relocate to Raleigh, NC ("Research

Triangle Park" or "RTP") if he remained at IBM. *Id.* ¶ 8. Due to various personal circumstances,

on May 18, 2017, McGonegal contacted his first-line manager Dan Martin about an exception

that would allow him to remain in Georgia. *Id.* ¶ 9. McGonegal's request for an exception was

denied by no later than May 30, 2017. *Id.* ¶ 10.

On May 31, 2017, McGonegal elected to participate in IBM's Transition to Retirement

Program, knowing that this decision was irrevocable. *Id.* ¶ 12. On June 1, 2017, McGonegal

---

[1] This Court previously dismissed the ADEA claim of Named Plaintiff David Eng. *See Rusis*, 529 F. Supp. 3d at 204.

received confirmation that any individual, like him, who both applied for a relocation exception and later elected to participate in the Transition to Retirement program would not have his/her relocation exception reviewed. *Id.* ¶ 13. This information was reconfirmed for McGonegal a few days later on June 5, 2017. *Id.* ¶ 14. On June 30, 2018, McGonegal's retirement from IBM became effective. *Id.* ¶ 15.

On July 2, 2018, 397 days after McGonegal elected to participate in the Transition to Retirement Program, McGonegal's counsel submitted a charge to the EEOC complaining that his separation was due to age discrimination. *Id.* ¶¶ 16, 18-19.

**B.   New Named Plaintiffs**

**1.   Named Plaintiff John Mason**

John Mason separated from IBM in June 2018. SMF ¶ 21. He did not file an EEOC charge claiming his separation from IBM was discriminatory. Mason filed a consent to join this action as an opt-in plaintiff on March 1, 2019. *Id.* ¶ 23.

**2.   Named Plaintiff Brian Haupt**

On March 29, 2018, Brian Haupt received notice that he was being separated from IBM pursuant to a resource action. SMF ¶ 25. Haupt separated from IBM in June 2018. *Id.* ¶ 26. Haupt filed a consent to join this action as an opt-in plaintiff on December 10, 2018. *Id.* ¶ 27. On or around February 22, 2019, Haupt's counsel—counsel for Plaintiffs in this case—filed an age discrimination charge with the EEOC and a state agency claiming Haupt's separation was due to age discrimination. *Id.* ¶ 28. On May 28, 2019, Haupt withdrew his charge, asserting that he "wish[ed] to file a private right of action in civil court." *Id.* ¶ 30. The EEOC issued a Notice of Right to Sue on October 28, 2019. *Id.* ¶ 31. The SAC filed on July 22, 2021—613 days after Haupt's Right to Sue was issued—identified Haupt as a Named Plaintiff. Dkt. 180.

### 3. Named Plaintiff Philip Monson

In September 2019, Philip Monson separated from IBM. SMF ¶ 33. On November 26, 2019, Monson's counsel—also counsel in this case—filed a charge of discrimination claiming that his separation was due to his age. *Id.* ¶ 34. On January 22, 2020, Monson filed a consent to join this action as an opt-in plaintiff. *Id.* ¶ 36. On September 22, 2020, at Monson's request, the EEOC issued him a Notice of Right to Sue. *Id.* ¶ 37. The SAC filed on July 22, 2021—283 days after Monson's Right to Sue was issued—identified Monson as a Named Plaintiff. Dkt. 180.

### 4. Named Plaintiff Claudia Ziegler

On November 17, 2020, Claudia Ziegler received notice that she was being separated from IBM pursuant to a resource action. SMF ¶ 39. Ziegler, who lived in Florida, separated from IBM in December 2020. *Id.* ¶ 40. On or around December 17, 2020, Ziegler's counsel—again the same counsel for Plaintiffs in this case—filed an age discrimination charge with the EEOC claiming her separation was due to age discrimination. *Id.* ¶ 41. On January 6, 2021, Ziegler filed a consent to join this action as an opt-in plaintiff. *Id.* ¶ 43. The SAC filed on July 22, 2021 identified Ziegler as a Named Plaintiff. Dkt. 180.

### 5. Named Plaintiff Sally Gehring

On May 31, 2016, Named Plaintiff Sally Gehring separated from IBM. SMF ¶ 45. On or around November 9, 2016, she filed an individual charge of discrimination claiming her separation was due to race, sex, national origin, and age discrimination. *Id.* ¶ 46. She claimed:

> I was forced to train a new employee who was outside my protected statuses. I was subjected to a hostile work environment when training others to do my job duties. Particularly, I trained workers who were male, under age of 40, non-American national origin and a different race to do my job duties. After which, I was terminated and my job duties were taken over by workers outside all of my protected statuses. Many employees in my protected statuses have been terminated and are not being hired.

*Id.* ¶ 47. The SAC identified Gehring as a Named Plaintiff. Dkt. 180. Gehring has not filed a

consent form to participate in this case.

### C.   Other Untimely Charge Filers

#### 1.   Opt-In Earl Gobin

Opt-In Earl Gobin lived in Georgia when he worked for IBM, including at the time of his separation on May 16, 2014. SMF ¶ 50. On November 18, 2015, 551 days after his last day at IBM, Gobin submitted a charge to the EEOC complaining that his separation was due to age discrimination. *Id.* ¶ 51. The EEOC dismissed his charge as untimely. *Id.* ¶ 52.

#### 2.   Opt-In Walter Bayerle

On August 4, 2017, Opt-In Walter Bayerle's first line manager, Phil Utshig, notified Bayerle that he was being separated from IBM and his separation would be effective August 31, 2017. SMF ¶ 53. On June 13, 2018, 313 days after Mr. Utshig notified Bayerle of his separation, Bayerle filed a charge of discrimination. *Id.* ¶ 54.

### D.   Untimely Lawsuit Filers

#### 1.   Opt-In Catherine Rodgers

Opt-In Catherine Rodgers filed a charge of discrimination with the EEOC claiming her separation from IBM was due to sex and age discrimination. SMF ¶ 55. On January 22, 2018, Rodgers' counsel (Mark Mausert, Esq.) requested that the EEOC terminate the processing of Rodgers' charge and issue a "Notice of Right to Sue." *Id.* ¶ 56. Pursuant to this request, on March 30, 2018, the EEOC issued a Notice of Right to Sue and sent it to both Rodgers' counsel and Rodgers' personal address as listed on her charge. *Id.* ¶ 57. Rodgers did not file a lawsuit or pursue any further action against IBM based on her charge allegations until she filed a consent form to join this action on January 29, 2019—305 days after the EEOC issued Rodgers' Notice of Right to Sue. *Id.* ¶ 59.

### 2.      Opt-In Errol Back-Cunningham

Opt-In Errol Back-Cunningham filed an age and national origin discrimination charge with the EEOC. SMF ¶ 60. On September 13, 2017, the EEOC issued a Notice of Right to Sue to Back-Cunningham's address as listed on his charge. *Id* .¶ 61. Back-Cunningham did not file a lawsuit or pursue any further action against IBM based on his charge allegations until he filed a consent form to join this action on November 6, 2020—1,150 days after the EEOC issued Back-Cunningham's Notice of Right to Sue. *Id.* ¶ 62.

### 3.      Opt-In Scott Owen

Opt-in Scott Owen filed an age discrimination charge with the EEOC. SMF ¶ 63. On March 23, 2017, the EEOC issued a Notice of Right to Sue to the same address Owen listed on his charge. *Id.* ¶ 64. Owen did not file a lawsuit or pursue any further action against IBM based on his charge allegations until he filed a consent form to join this action on November 6, 2020— 1,324 days after the EEOC issued Owen's Notice of Right to Sue. *Id.* ¶ 65.

### 4.      Opt-In Thomas Parkin

Opt-In Thomas Parkin filed an age discrimination charge with the EEOC. SMF ¶ 66. On November 1, 2016, the EEOC issued a Notice of Right to Sue to the same address Parkin listed on his charge. *Id.* ¶ 67. Parkin did not file a lawsuit or pursue any further action against IBM based on his charge allegations until he filed a consent form to join this action on November 6, 2020—1,589 days after the EEOC issued Parkin's Notice of Right to Sue. *Id.* ¶ 68.

### E.      The Remaining Opt-In Plaintiffs

Currently, 148 individuals in addition to the Named Plaintiffs have filed consent forms to participate in this case.[2] SMF ¶ 69. These Opt-Ins separated from IBM over the span of six years,

---

[2] The Court previously dismissed 277 individuals who filed consent forms to join this action but had

from January 31, 2014 to December 31, 2020. *Id.* ¶¶ 70, 80. Forty-three of the Opt-Ins worked in deferral states and either separated or were notified of their impending separation from IBM before July 14, 2017—more than 300 days before Rusis filed his charge. *Id.* ¶¶ 70, 72. Another 14 Opt-Ins worked in non-deferral states and separated from IBM before November 11, 2017— more than 180 days before Rusis filed his charge. *Id.* ¶ 71.[3]

Within this group of 57 opt-ins whose claims accrued more than 180 or 300 days before Rusis' charge, 17 had claims that accrued more than 180 or 300 days before the earlier filed charge of Named Plaintiff Gehring. *Id.* ¶¶ 78-79.

Turning to the forward temporal scope, 39 Opt-Ins were notified and separated from IBM after Gerrits filed his charge on July 10, 2018, including 24 who left in 2019 and 2020. *Id.* ¶ 80.

## LEGAL STANDARD

Summary judgment should be granted when the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 256 (1986)). If the nonmoving party's evidence "is merely

---

already agreed to arbitrate their ADEA claims on an individual basis and had waived any state law claims. *See* Dkt. 165 (Stipulation and Order); *see also Rusis*, 529 F. Supp. 3d at 196-97.

[3] Opt-Ins Gobin, Back-Cunningham, Owen, and Parkin (along with Plaintiff McGonegal) each filed untimely charges or lawsuits and, therefore, cannot rely on the piggybacking doctrine to save their claims. However, even if they could invoke this doctrine, their claims would fail for the separate and distinct reason that their claims fall outside the rearward temporal scope of any representative charge.  SMF ¶¶ 70-71. Thus, they are included in this count.

colorable, or is not significantly probative," summary judgment should be entered against him.

*Anderson*, 477 U.S. at 249-50 (internal citations omitted); Fed. R. Civ. P. 56(e).

## ARGUMENT

I.     **THE ADEA'S PROCEDURAL REQUIREMENTS.**

   A.    **The ADEA's Administrative Exhaustion and Timeliness Requirements.**

By statute, the filing of a timely administrative charge with the EEOC or analogous state

agency by the complaining party is a prerequisite to suit under the ADEA. *See* 29 U.S.C.

§ 626(d)(1) ("[A] charge *shall* be filed . . . .") (emphasis added). In order to satisfy the

administrative exhaustion requirement, an individual must file a charge "within 180 days after

the alleged unlawful practice occurred; or [in a deferral state], within 300 days after the alleged

unlawful practice occurred." *Id.*

The period for filing an EEOC charge, as this Court has recognized, runs from the date

that the employee first has notice of the adverse action. *See Rusis*, 529 F. Supp. 3d at 227

(termination claims "accrued on the date on which the opt-in received notice of inclusion in the

Resource Action"). The clock does *not* start on the date the action becomes effective, nor does it

begin on the date the employee first believes that discrimination may have motivated the action.

*Id.*; *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 259 (1980) (termination claim accrued on

date the College notified the plaintiff of denial of tenure even though the College continued to

employ him for another year); *Gray v. Shearson Lehman Bros.*, 947 F. Supp. 132, 135 (S.D.N.Y.

1996) ("plaintiff's lack of awareness of defendants' intent does not toll the filing period").

   B.    **The ADEA's Statute of Limitations for Judicial Causes of Action.**

An individual who timely satisfies the administrative exhaustion requirement and

receives a right-to-sue letter from the EEOC is also subject to a statute of limitations for filing a

court action. Under the ADEA, a filing party cannot commence an action until "60 days after a

charge alleging unlawful discrimination has been filed with the [EEOC]," but may do so

thereafter. 29 U.S.C. § 626(d). When the EEOC responds to the charge with a right-to-sue letter,

however, a "civil action" *must* "be brought" "within 90 days after the date of the receipt of such

notice." *Id.* § 626(e); *Holowecki v. FedEx Corp.*, 440 F.3d 558, 563 (2d Cir. 2006) ("claimant

must file her federal suit within 90 days after receipt of the [right-to-sue] letter").

### C. The Single-Filing, or "Piggybacking," Exception to Administrative Exhaustion.

In the context of class and collective actions, the Second Circuit has developed an

exception to the administrative exhaustion requirement—the "single filing" or "piggybacking"

doctrine. Under this doctrine, plaintiffs who have *not* filed charges may, in certain

circumstances, fulfill their administrative exhaustion obligations by "piggybacking" on the

charge of a named plaintiff representing a collective. *Holowecki*, 440 F.3d at 564-65; *see also*

*Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1056 (2d Cir. 1990). This Court has already clearly

defined several important limits on the piggybacking exception relevant to this Motion.

*First*, an individual who filed his own charge may not rely on the piggybacking

exception. *See Rusis*, 529 F. Supp. 3d at 202-04 (citing cases). Thus, judgment must be entered

on the ADEA claims of any individual who either (1) filed his own untimely charge or (2) filed

his own timely charge but filed an untimely lawsuit (i.e., failed to file a lawsuit within 90 days of

receiving a right-to-sue letter). *See id.* (recognizing that many cases have rejected charge-filers'

attempts "to escape the consequences of their own failure to sue within the limitations period");

*see also Levy v. U.S. Gen. Acct. Off.*, 175 F.3d 254, 255 (2d Cir. 1999) (per curiam) (affirming

lower court holding that individuals who filed administrative charge but failed to file federal suit

within 90 days of receipt of right-to-sue letter could not take advantage of single filing rule);

*Friedman v. Columbia Univ.*, 2014 WL 1041032, at *3 (S.D.N.Y. Mar. 13, 2014) ("A plaintiff

cannot use the piggyback rule to avoid the consequences of his own untimely EEOC charge.").

*Second*, non-charge filers can piggyback only on the timely filed charge of an individual who "subsequently commenced a suit in reliance on that charge—i.e. *a named plaintiff*." *Rusis*, 529 F. Supp. 3d at 210-11. Thus, non-charge filers cannot piggyback on charges of individuals who do not have an "*existing* action," and cannot piggyback on charges of individuals who joined an action as an opt-in plaintiff. *Id.* (emphasis in original). As the Court recognized, this conclusion is "uniformly" supported by case law and it is also sound policy. *Id.* at 208-09. To expand the piggybacking doctrine to the unprecedented extent Plaintiffs advocate—allowing piggybacking on *any* EEOC charge, not just those of a named plaintiff in an existing lawsuit—would wrongly allow a "situation in which plaintiffs in a putative collective action can create a piggybacking chain of near-infinite length and scope by seeking out new opt-ins who have filed more recent or broader EEOC charges who can then save others in the action who would otherwise be unable to piggyback onto the charges of the named plaintiffs." *Id.* at 211.[4]

*Third*, "there is a separate timing requirement" that bars a plaintiff from piggybacking unless he could have filed a timely EEOC charge on the date the representative charge was filed. *Id.* at 223. Thus, "opt-ins whose claims accrued more than 180 or 300 days before the Rusis EEOC charge was filed may not piggyback onto that charge." *Id.* at 225.[5]

---

[4] The Court reserved ruling on whether non-charge filers may piggyback only on the charge of a named plaintiff in *this* action, or a named plaintiff in another existing action. *See Rusis*, 529 F. Supp. 3d at 211, n.26. As discussed in Sec. III.B, *infra*, the Court should now conclude that non-charge filers can piggyback only on charges of the *original* named plaintiffs in *this* action. That is consistent with the majority of courts that have addressed this issue, aligns with the requirement that the named plaintiffs' claims in *this* action dictate who may remain in this action, and avoids the problem of a "piggybacking chain of near-infinite length." *Id.* at 211.

[5] The Court reserved ruling on the appropriate forward scope cutoff. As discussed further in Section IV, *infra*, the proper forward scope cutoff for this action is the date the Gerrits charge was filed.

*Finally*, where, as here, the allegations in the representative charge "arise throughout a large group," there must be "'some indication that the grievance [asserted in the timely filed charge] affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim," such that "sufficient notice [has been provided] to the employer to explore conciliation with the affected group." *Id.* at 200 (quoting *Tolliver*, 918 F.2d at 1058).

The Named Plaintiffs and Opt-Ins here each fail to meet one or more of these procedural requirements—they filed either untimely charges or untimely lawsuits, or they failed to file any administrative charge and cannot piggyback on an original Named Plaintiff's charge. Accordingly, judgment must be entered against them on their ADEA claims.

## II.   JUDGMENT SHOULD BE GRANTED ON THE ADEA CLAIMS OF THOSE WITH UNTIMELY CHARGES OR JUDICIAL ACTIONS.

Summary judgment should be granted on the claims of Named Plaintiff McGonegal, as well as Opt-Ins Gobin, Bayerle, Rodgers, Back-Cunningham, Owen, and Parkin because they each filed their own administrative charges and either those charges were untimely or they failed to bring timely suit after receiving right-to-sue notices.

### A.   Named Plaintiff McGonegal and Opt-Ins Gobin and Bayerle Failed to File Timely Charges.[6]

McGonegal's ADEA claim accrued no later than May 31, 2017—the date when he gave notice of his intention to retire. SMF ¶ 12; *see Green v. Brennan*, 578 U.S. 547, 564 (2016) ("the limitations period begins to run[]when the employee gives notice of his resignation, not on the effective date of that resignation"); *Flaherty v. Metromail Corp.*, 235 F.3d 133, 139 (2d Cir. 2000) (ADEA claim accrued when the plaintiff "effectively communicated her intention to

---

[6] This motion covers IBM's procedural defenses only. If this motion is denied, IBM reserves the right to move for summary judgment on the merits of McGonegal's claim after Second-Phase Discovery.

resign"). Because he worked in Georgia, McGonegal had 180 days after May 31, 2017 (i.e., until November 27, 2017) to file a charge. SMF ¶ 6; *see* 29 U.S.C. § 626(d) ("[A] charge shall be filed . . . [in a non-deferral state] within 180 days after the alleged unlawful practice occurred"). Yet, McGonegal did not submit a charge until July 2, 2018, at the earliest[7]—397 days after the date his claim accrued. His charge was clearly untimely, and McGonegal cannot cure his defective charge by piggybacking on the timely charge of another named plaintiff. *Rusis*, 529 F. Supp.3d at 203-04; *Holowecki*, 440 F.3d at 565; *Friedman*, 2014 WL 1041032, at *3.

McGonegal may attempt to dispute that his ADEA claim accrued in May 2017 because, after he knowingly communicated to IBM his definite and irrevocable notice of his intent to retire, he subsequently attempted to challenge his retirement election through IBM's appeal procedures. But this position is contrary to law. It is well settled that an appeal or review process does not toll the statute of limitations of an ADEA claim. *See, e.g.*, *Ricks*, 449 U.S. at 261 ("[W]e already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods.") (citing *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976)); *Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992) ("[t]he fact that UVM . . . undertook an internal administrative review of its allegedly discriminatory decision has no effect on when the statute of limitations period begins to run"); *Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 301 F. Supp. 2d 259, 263 (S.D.N.Y. 2004) (employment dispute resolution program did not waive or displace the requirements for filing Title VII action, including the 300-day deadline).

---

[7] For purposes of this Motion, IBM assumes, but does not concede, that July 2, 2018 is the date McGonegal submitted his charge to the EEOC.

McGonegal may also attempt to argue that his ADEA claim did not accrue until some point after May 2017, when he first learned that other workers were granted exceptions to IBM's co-location program. This too is incorrect. As this Court has already recognized, an ADEA claim accrues at the time the employee has notice of his injury, *not* at the time the employee determines the harm was due to discrimination. *Rusis*, 529 F. Supp. 3d at 227, n.47 ("It is not a prerequisite to accrual that an employee have information necessary to decide whether the injury is due to . . . wrongdoing by the defendant." (quoting *Lugo-Young v. Courier Network, Inc.*, 2012 WL 847381, at *5 (E.D.N.Y. Mar. 13, 2012))). In any event, McGonegal admits that he learned his request for an exception to IBM's co-location program was denied by no later than May 30, 2017—*before* he elected to retire—and he knew at that time that this decision would not be overturned. SMF ¶¶ 10-11. Thus, McGonegal's claim accrued, at the latest, at the time he elected to retire from IBM and his charge filed 397 days later was untimely.

Judgment should be granted on Opt-In Gobin's ADEA claim for similar reasons. Gobin lived and worked in Georgia the time of his separation on May 16, 2014. SMF ¶ 50. He did not file an age discrimination charge until November 18, 2015—551 days after his last day at IBM. *Id.* ¶ 51. Thus, his charge was untimely, as the EEOC recognized when it dismissed it. *Id.* ¶ 52.

Finally, judgment should be granted on Opt-In Bayerle's ADEA claim because his charge was also untimely. On August 4, 2017, Bayerle was notified of his impending separation from IBM, which would be effective August 31, 2017. *Id.* ¶ 53. On June 13, 2018, 313 days after Bayerle was put on notice of his separation, Bayerle filed a charge of discrimination. *Id.* ¶ 54.

### B.    Opt-Ins Rodgers, Back-Cunningham, Owen, and Parkin Failed to File Timely Suits.

Opt-Ins Rodgers, Back-Cunningham, Owen, and Parkin each filed a timely EEOC charge but failed to file a lawsuit within 90 days of receiving a right-to-sue letter. 29 U.S.C. § 626(e) (a

15

"civil action" *must* "be brought" "within 90 days" of right-to-sue notice); *Rusis*, 529 F. Supp. 3d at 224 n.45 (statute of limitations is set as "90 days after receipt of a right-to-sue letter").

Opt-In Rodgers filed a charge of discrimination with the EEOC claiming her separation from IBM was due to sex and age discrimination. SMF ¶ 55. Her counsel later requested that the EEOC terminate the processing of Rodgers' charge and issue a right-to-sue notice. *Id.* ¶ 56. Pursuant to this request, on March 30, 2018, the EEOC issued a Notice of Right to Sue and sent it to both Rodgers' counsel and Rodgers as the address she had listed on her charge. *Id.* ¶ 57. Rodgers did not file a lawsuit or pursue any further action against IBM based on her charge allegations until filing a consent form to join this action on January 29, 2019—305 days after the EEOC issued her Notice of Right to Sue. *Id.* ¶ 59.

Opt-In Back-Cunningham filed an age and national-origin discrimination charge with the EEOC. *Id.* ¶ 60. On September 13, 2017, the EEOC issued a Notice of Right to Sue to the address Back-Cunningham had listed on his charge. *Id.* ¶ 61. Back-Cunningham did not file a lawsuit or pursue any further action against IBM based on his charge allegations until filing a consent form to join this action on November 6, 2020—1,150 days after the EEOC issued the Notice of Right to Sue. *Id.* ¶ 62.

Opt-in Owen filed an age discrimination charge with the EEOC. On March 23, 2017, the EEOC issued a Notice of Right to Sue to the same address Owen listed on his charge. SMF ¶ 64. Owen did not file a lawsuit or pursue any further action against IBM based on his charge allegations until filing a consent form to join this action on November 6, 2020—1,324 days after the EEOC issued Owen's Notice of Right to Sue. *Id.* ¶ 65.

Finally, Opt-In Parkin filed an age discrimination charge with the EEOC. On November 1, 2016, the EEOC issued a Notice of Right to Sue to the address Parkin listed on his charge.

*Id.* ¶ 67. Parkin did not file a lawsuit or pursue any further action against IBM based on his charge allegations until filing a consent form to join this action on November 6, 2020— 1,589 days after the EEOC issued Parkin's Notice of Right to Sue. *Id.* ¶ 68.

Because each of the above Opt-Ins received a right-to-sue notice but failed to initiate a lawsuit within 90 days of that notice, their ADEA claims are untimely and they cannot invoke the piggybacking doctrine to participate in this action. *Rusis*, 529 F. Supp. 3d at 224 ("the Second Circuit has held that the single-filing rule does not exist to save the claims of those who otherwise fail to meet the statutory timing requirements under the ADEA"). The above Opt-Ins may claim that, for some unknown reason, they did not receive their respective right-to-sue notices. But, in each case, the notice of right to sue was sent to the charging party's address listed on his or her charge. SMF ¶¶ 57, 61, 64, 67. In that circumstance, there is a presumption that the charging party received the right-to-sue-notice three days from the date of the notice.[8] *Ko v. JP Morgan Chase Bank,* 730 F. App'x 62, 63 (2d Cir. 2018) (Second Circuit "presumes that a mailed document is received three days after its mailing, and that the notice is presumed to have been mailed on the date shown on the notice" (internal citation omitted)). The charging party bears the burden of rebutting that presumption, and merely denying receipt is not sufficient to meet this burden. *See, e.g.*, *Boyce-Herbert v. New York & Presbyterian Hosp.*, 2020 WL 376788, at *4 (E.D.N.Y. Jan. 23, 2020) ("[A] plaintiff's assertion that she did not receive a properly mailed notice, without more, cannot be a basis for extending or equitably tolling the 90-day requirement."); *Orsaio v. New York State Dep't of Corr. & Cmty. Supervision*, 2019 WL 3891085, at *18 (N.D.N.Y. Aug. 19, 2019) ("Plaintiff solely relies on her assertion of nonreceipt

---

[8] Even accounting for three additional days, none of the above Opt-Ins' lawsuits were timely initiated, as they each missed the deadline to pursue their ADEA claim in court by hundreds or thousands of days. SMF ¶¶ 59, 62, 65, 68.

and does not describe any circumstances from which the Court could reasonably infer nonreceipt (or delayed receipt), such as a change of residence or other mail delivery issues. . . . Therefore, Plaintiff has not successfully rebutted the mailing and receipt presumptions, and her discrimination claims are time barred."). Absent some "significantly probative" evidence, *Anderson*, 477 U.S. at 249-50, of a mistake on the EEOC's part (such as sending the notice to an incorrect address) or on the part of the postal delivery service, the Court must presume that each notice was received three days after the date that appears on the notice.

The Opt-Ins cannot meet this burden. The Court should therefore conclude that the ADEA claims of Opt-Ins Rodgers, Back-Cunningham, Owen, and Parkin are untimely and, because they cannot invoke the piggybacking doctrine to save their untimely claims, enter judgment against them on their ADEA claims.

## III.   JUDGMENT SHOULD BE GRANTED ON THE CLAIMS OF OPT-INS THAT ACCRUED MORE THAN 300 OR 180 DAYS BEFORE MAY 10, 2018.

Fifty-seven Opt-Ins failed to file their own administrative charges and could not have filed a timely charge on May 10, 2018 (SMF ¶¶ 70-72)—the date of the earliest charge by an original Named Plaintiff (Rusis). Thus, judgment should be granted on their ADEA claims.

### A.   The Date of Named Plaintiff Rusis' Charge Sets the Rearward Scope.

This Court should enter judgment on the claims of 57 Opt-Ins whose ADEA claims accrued more than 180/300 days before Rusis' charge. In the Court's March opinion, it set the rearward scope of this case, finding that "opt-ins whose claims accrued more than 180 or 300 days before the Rusis EEOC charge was filed may not piggyback onto that charge." *Rusis*, 529 F. Supp. 3d at 225.

Here, documents produced in discovery show that 43 of the Opt-Ins worked in deferral states and either separated or were notified of their impending separation from IBM before July

14, 2017—more than 300 days before Rusis filed his charge. SMF ¶¶ 70, 72. Another 14 Opt-Ins

(plus Plaintiff McGonegal) worked in non-deferral states and were either separated or notified of

their impending separation from IBM before November 11, 2017—more than 180 days before

Rusis filed his charge. *Id.* ¶ 71; *see Rusis*, 529 F. Supp. 3d at 227 (termination claims accrue

when one receives notice of termination). Accordingly, these individuals cannot piggyback on

Rusis' charge and judgment should be entered in favor of IBM on their ADEA claims.

### B.    Named Plaintiff Sally Gehring's Charge Cannot Support Piggybacking.

To the extent Plaintiffs contend that any individual whose claims accrued more than

180/300 days before the Rusis EEOC charge can now piggyback on the earlier-filed charge of

new Named Plaintiff Sally Gehring, this argument should be rejected for several reasons:

*First*, Gehring's charge does not provide notice of a class claim upon which others can

piggyback. A representative charge must provide "some indication that the grievance [asserted in

the timely filed charge] affects a group of individuals defined broadly enough to include those

who seek to piggyback on the claim." *Rusis*, 529 F. Supp. 3d at 200 (quoting *Tolliver*, 918 F.2d

at 1058) (alteration in original). While this does not require the charge to "specify that the

claimant purports to represent a class or others similarly situated," it must give the EEOC and the

employer notice that *other* employees may be at issue and the general scope of that affected

group. *Tolliver*, 918 F.2d at 1058. As such, in determining whether this standard has been met,

the touchstone is whether the original charge "alerts the EEOC that more is alleged than an

isolated act of discrimination and affords sufficient notice to the employer to explore conciliation

with the affected group." *Id.* Vague allegations are not enough to put an employer or EEOC on

notice of a collective, especially when every other allegation in the charge is specific to the filer.

*EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 901, n.26 (S.D.N.Y. 2013) (statement that

plaintiff "believes that other women in similar situations have also been demoted" is insufficient

19

to permit others in putative collective to piggyback because "[o]ther than this broad statement, Patricot's charge alerts the EEOC only to isolated claims of discrimination specific to Patricot's personal experiences at Bloomberg."); *DeBose v. FedEx Corp.*, 2009 WL 1542572, at \*2 (S.D.N.Y. June 2, 2009) (even though "plaintiff's complaint did prompt the SDHR to investigate FedEx's city-wide hiring practices regarding age discrimination," it "did not meet the *Tolliver* standard" because "plaintiff's claims were highly individualized" and only generally referenced other workers' ages); *cf. Rusis*, 529 F. Supp. 3d at 216 ("General statements asserting only that IBM engaged in widespread age discrimination are patently insufficient to put the EEOC or IBM on notice" of non-resource-action-based claims).

Here, Gehring's charge includes only an individual claim that she was subjected to a hostile work environment when she was asked to train individuals who were "male, under age of 40, non-American national origin, and a different race." SMF ¶ 47. But this charge is unique to Gehring's circumstances and provides no "indication that [her] grievance affects a group of individuals." *See Tolliver*, 918 F.2d at 1058. Moreover, while Gehring's charge summarily concludes with a vague statement that "[m]any employees in my protected statuses have been terminated and are not being hired" (SMF  ¶ 47), this general statement is likewise insufficient prompt the employer to explore conciliation with the affected group. *See, e.g.*, *Bloomberg*, 967 F. Supp. 2d at 852 n.26; *DeBose*, 2009 WL 1542572, at \*2.

*Second*, even if Gehring's charge provided some indication that her complaint affected a reasonably identifiable group of individuals (which it does not), her charge cannot serve as the representative charge for the rearward temporal scope of this action because she was not an original named plaintiff. The Eleventh Circuit has expressly held that "putative plaintiffs should be allowed to piggyback only on the timely filed EEOC charge of an *original named plaintiff* of

20

class action." *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1108 (11th Cir. 1996) (emphasis

added). Just like in *Grayson*, here, Gehring is not an original named plaintiff and thus her

addition should not allow the rearward scope of the case to be extended.

     *Third*, allowing the Gehring charge to expand the rearward scope of the case would

create the very situation this Court cautioned against in its March Order. In that Order, the Court

recognized that there must be prudent limits to the single-filing doctrine to avoid "a

piggybacking chain of near-infinite length and scope." *Cf. Rusis*, 529 F. Supp. 3d at 211

(explaining why the charges of opt-in plaintiffs cannot support piggybacking). Through their

SAC, Plaintiffs attempt to do precisely that—create an "infinite" piggybacking chain. This action

had been pending for nearly three years before Plaintiffs added five additional named plaintiffs

with the clear intention of expanding the scope of the lawsuit beyond what the Court intended in

its March Order. *See* Dkt. 180 (adding Haupt, Gehring, Mason, Monson, and Ziegler as Named

Plaintiffs). Through these additions, Plaintiffs have attempted to seek out new charge-filing

individuals "who have filed more recent or broader EEOC charges who can then save others"

that otherwise would have been unable to join this action. *Rusis*, 529 F. Supp. 3d at 211.

     Not only would this inappropriately expand the scope of the case three years into this

litigation, but it would also expand it well beyond how the *original* Named Plaintiffs defined it.

In their motion for conditional certification, Plaintiffs set the rearward scope of the case at 180 or

300 days prior to the date Plaintiffs Rusis and Gerrits filed their charges. *See* Dkt. 47 at 22. Three

years into this litigation, Plaintiffs should not be permitted to move the goalposts.

     *Finally*, even if this Court were to permit individuals who separated from IBM years

before Named Plaintiff Rusis to piggyback on Gehring's charge, it must still dismiss the 17 Opt-

Ins whose claims accrued more than 180 or 300 days before Gehring's charge. SMF ¶¶ 78-79.

**C.      Plaintiffs Cannot Piggyback on the Charges of Named Plaintiffs in Other Lawsuits.**

Plaintiffs may also argue that Opt-Ins whose claims accrued outside of the temporal scope of the original Named Plaintiffs' charges in this action should be able to piggyback on the charges of named plaintiffs in *other* lawsuits. This position should be rejected. As this Court has already recognized, "it would be odd if piggybacking could be used to expand the scope of litigation beyond that delineated by the named plaintiffs." *Rusis*, 529 F. Supp. 3d at 211 n.26. Indeed, numerous courts around the country have concluded that individuals cannot piggyback on the claims of a plaintiff in a different lawsuit. *Bettcher v. Brown Sch., Inc.*, 262 F.3d 492, 495 (5th Cir. 2001) ("Such a reading would allow the single filing exception to consume the statutory rule, which clearly requires all ADEA plaintiffs to file a charge before filing a lawsuit."); *Coghlan v. Peters*, 555 F. Supp. 2d 187, 201 (D.D.C. 2008) ("The single-filing rule permits non-filing employees to join with other employees who have already filed suit."); *Morton v. ICI Acrylics, Inc.*, 69 F. Supp. 2d 1038, 1042 (W.D. Tenn. 1999) ("The single filing rule allows a plaintiff to join an ADEA action if another plaintiff filed a timely EEOC charge").

Allowing piggybacking on a charge filed by a plaintiff in a *different* case, without any consideration as to how the piggybacker's claim relates to named plaintiff's allegations in *this case*, would ignore the statutory rule that opt-ins be "similarly situated" to the named plaintiff in the action they joined. *See* 29 U.S.C. § 216(b); *see also Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 (3d Cir. 2007) (when "plaintiffs are not 'similarly situated' . . . our reasons for applying the single filing rule . . . are inapplicable").

Here, there remain 148 Opt-Ins despite the Court's finding that Plaintiffs failed to even make "a minimal showing" that the Opt-Ins are "similarly situated" to the original Named Plaintiffs. *See Rusis v. Int'l Bus. Machines Corp.*, 2020 WL 1151322, at *3-4 (S.D.N.Y. Mar. 10,

2020). Allowing non-charge filers to piggyback on the claims of named plaintiffs who are not even plaintiffs in *this* case would exacerbate the concerns the Court raised in denying Plaintiffs' motion, and turn this case into an unmanageable and improper collective action without the Court even ruling that conditional certification was appropriate.[9]

For these reasons, the Court should decide that only the charges of the original Named Plaintiffs remaining in this action—Rusis and Gerrits—can provide a basis for piggybacking. The Court should therefore dismiss the ADEA claims of the 57 non-charge-filing Opt-Ins (SMF ¶¶ 70-72) whose claims accrued more than 180/300 days before Rusis' charge.

## IV.   JUDGMENT SHOULD BE GRANTED ON THE CLAIMS OF OPT-INS THAT ACCRUED AFTER JULY 10, 2018.

### A.   The Date of Named Plaintiff Gerrits' Charge Sets the Forward Scope.

While the Court previously declined to rule on the forward limit of this case, *see Rusis*, 529 F. Supp. 3d at 228-32, it should now hold that the appropriate cutoff for the piggybacking exception is the latest charge-filing date of an original Named Plaintiff. Here, that is the date that Gerrits submitted his EEOC charge—July 10, 2018. SMF ¶ 3. The Court should dismiss the ADEA claims of the 39 non-charge-filing Opt-Ins (*id.* ¶ 80) whose claims accrued after this date.

The Court previously observed that the Second Circuit has not yet addressed the appropriate forward scope of the piggybacking doctrine. *Rusis*, 529 F. Supp. 3d at 228-32. However, it did observe that both the Eleventh and Fifth Circuits have endorsed the bright-line rule setting the cutoff on the filing date of the latest representative charge *Id.* (citing *Hipp v.*

---

[9] While the *Tolliver* court saw "no reason to limit [the piggybacking doctrine's] use to those electing to join preexisting lawsuits," there, the Court simply permitted individuals of a previously certified—and then decertified—collective to continue piggybacking on the charges of the *original named plaintiffs* from the decertified collective. *Tolliver*, 918 F.2d at 1057. IBM is aware of no case where the *Tolliver* holding has been used to build a collective action of claims of hundreds of non-charge filers that accrued over a six-year period by relying on various charges of individuals who were not ever parties to that collective and instead had filed completely separate lawsuits.

*Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1225 (11th Cir. 2001) and *Anson v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 962 F.2d 539, 543 (5th Cir. 1992)). The reasons for this rule are sound: neither the EEOC nor the employer is put on notice of claims that arise *after* the date the charge was filed. *See Hipp*, 252 F.3d at 1225 (bright-line rule "is necessary to remain faithful to the overriding purpose of the charge-filing requirement: notifying employers and the EEOC of the allegations in a timely manner"). That principle applies with equal force here, as none of the original Named Plaintiffs' charges provide notice of later claims. SMF ¶¶ 4-5.

The Court was previously hesitant to adopt this bright-line rule due to the fact that discovery had not yet commenced. *Rusis*, 529 F. Supp. 3d at 232 ("the Court is unwilling *at this stage* to prohibit opt-ins whose claims accrued after July 10, 2018, from piggybacking onto the Rusis/Gerrits charges" (emphasis added)). It noted that it was possible for information to "come[] out during discovery about the EEOC's investigation" that may indicate individuals whose claims accrued after July 10, 2018, should be permitted to join this action. *Id.* However, nothing in discovery has shown that the investigation extended beyond that year. SMF ¶¶ 81-82. Therefore, there is no basis to extend the forward scope of this action beyond 2018.

Accordingly, the Court should dismiss the ADEA claims of the 39 Opt-Ins (SMF ¶ 80) who did not file a charge and whose claims did not accrue until after July 10, 2018, as it was impossible for Gerrits' charge to put either the EEOC or IBM on notice of those claims.

**B.    No Other Charge Supports Extending the Forward Scope of This Collective.**

Plaintiffs may claim that new Named Plaintiffs Haupt, Monson, and Ziegler can expand the forward scope of the case, but the Court should reject this argument. *First*, allowing the addition of new plaintiffs three years into a litigation to support piggybacking would again allow Plaintiffs to "create a piggybacking chain of near-infinite length and scope by seeking out new opt-ins who have filed more recent or broader EEOC charges who can then save others in the

action who would otherwise be unable to piggyback onto the charges of the named plaintiffs." *Rusis*, 529 Fu. Supp. 3d at 211; *see also* Sec. III.B, *supra*.

 *Second*, even if adding named plaintiffs to expand the scope of piggybacking were permitted, these particular named plaintiffs cannot be representative plaintiffs for that purpose because none were original Named Plaintiffs in this case. *Supra*, Sec. III.B. In addition, neither Monson nor Haupt initiated a "suit in [his or] her own name" within 90 days of receiving their right-to sue-notices.[10] *Rusis*, 529 F. Supp. 3d at 210 (observing that courts have recognized that being an named plaintiff is an "implicit" requirement to piggybacking). A plaintiff *must* file suit within 90 days of receiving a right-to-sue letter, 29 U.S.C. § 626(e). While Haupt and Monson may have preserved his or her own *individual* claim by opting into this lawsuit, as relevant to the piggybacking issue, it is undisputed that these two plaintiffs received their right-to-sue letters more than 90 days before they became named plaintiffs in this case. SMF ¶¶ 32, 38. Thus, their charges also cannot properly be used to belatedly extend the scope of this action for this reason.

## CONCLUSION

 For the reasons stated above, the Court should grant IBM's Motion for Summary Judgment on the ADEA claims of Named Plaintiff McGonegal, Opt-Ins Gobin, Bayerle, Rodgers, Back-Cunningham, Owen, and Parkin, as well as those of the Timeliness Opt-Ins.

---

 [10] Monson, Ziegler and Haupt also each quickly withdrew their charges and/or joined this lawsuit prematurely (SMF ¶¶ 27-30, 34-37, 41-43), and thus provided neither the EEOC nor IBM with an opportunity to conciliate. 29 U.S.C. § 626(d)(1). Allowing the Timeliness Opt-Ins to piggyback on their charges would be inappropriate for this reason as well. *See Tolliver*, 918 F.2d at 1058 (charge must allege more than "an isolated act of discrimination and afford sufficient notice to the employer to explore conciliation with the affected group").

Dated: December 21, 2021
New York, New York

JONES DAY

By */s/ Matthew W. Lampe*
    Matthew W. Lampe
    Kristina A. Yost
    Ira Handa
    250 Vesey Street
    New York, New York 10281
    Tel: 212.326.3939
    Fax: 212.755.7306
    mwlampe@jonesday.com
    kyost@jonesday.com
    ihanda@jonesday.com

    Alison B. Marshall
    51 Louisiana Ave., N.W.
    Washington, D.C. 20001
    Tel: 202.879.3939
    Fax: 202.626.1700
    abmarshall@jonesday.com

    *Attorneys for Defendant IBM*