# EXHIBIT 11

# Individual Separation Allowance Plan Separation Agreement

You are being offered payments and benefits as part of the Individual Separation Allowance Plan (ISAP) that you otherwise would not have been entitled to receive. You will receive and be entitled to keep these payments and benefits only if you accept and do not timely revoke this Agreement. This Agreement requires you to release IBM and related parties from any claims you may have as described below.

You should thoroughly review and understand the effect of this Agreement before you sign it.

The ISAP Summary Plan Description is the only document that describes your eligibility for the payments and benefits you are being offered under this Agreement. Any other written or oral representations, promises, or other agreements of any kind made to you in connection with your decision to accept this Agreement have no effect.

## 1. DEFINITIONS OF CERTAIN WORDS USED IN THIS AGREEMENT

For purposes of this Agreement, certain words have specific definitions.

- "Agreement" means this Separation Agreement.

- "IBM" means International Business Machines Corporation and all of its subsidiary and affiliated companies and all of their respective former or current directors, officers, employees, agents, and benefits plans (and fiduciaries, insurers or other agents of those plans), and all successors and assigns of these entities or individuals.

- "You" or "you" means you and anyone acting as your representative, successor or heir.

- "Release" means your waiver of claims as specified below.

## 2. WHAT YOU RELEASE BY SIGNING THIS AGREEMENT

- BY SIGNING THIS AGREEMENT YOU RELEASE IBM FROM ALL CLAIMS THAT YOU MAY HAVE AGAINST IBM AT THE TIME YOU SIGN THIS AGREEMENT, EXCEPT FOR THE CLAIMS SPECIFICALLY IDENTIFIED IN SECTION 3.

    - The claims you are releasing include, without limitation:

        - All claims against IBM whether or not related to your employment with IBM or the termination of your employment.

        - All claims arising under any federal, state, local or foreign law dealing with or regulating employment, including, but not limited to: (1) laws prohibiting discrimination based on race, national origin, ancestry, color, creed, religion,

(Page 1 of 4)

1

sex, sexual orientation, ☐ pregnancy, marital status, age (including all claims under the Age Discrimination in Employment Act of 1967), disability, medical condition, or veteran status; (2) family and medical leave; (3) claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"); and (4) all waivable claims related to wages and hours, including under state or local labor or wage payment laws.

- Claims based on contract, tort, or any other legal theory.

- All claims whether or not you know about them at the time you sign this Agreement.

- Any right to use the IBM Open Door or Panel Review Programs.

- If you have worked or are working in California, you expressly agree to waive the protection of section 1542 of the California Civil Code because you are releasing all claims, whether they are known or unknown. Section 1542 of the California Civil Code states:

    "A general release does not extend to claims which a creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

    In the event that you do not understand the waiver of your rights under section 1542 or its legal effect on you, you should talk to a lawyer.

### 3. WHAT YOU DO NOT RELEASE BY SIGNING THIS AGREEMENT

By signing this Agreement, you do not release:

- Any claims you may have that arise after the date you sign this Agreement;

- Any claims that by law cannot be waived by private agreement without judicial or governmental supervision;

- Any claims for wages that IBM concedes are due and owing to you;

- Your right to file a charge with or participate in any investigation or proceeding conducted by the U.S. Equal Employment Opportunity Commission (EEOC) or similar government agency. But even though you can file a charge or participate in an investigation or proceeding conducted by the EEOC or similar government agency, by signing this Agreement you are waiving your ability to obtain relief of any kind from IBM to the extent permitted by law.

(Page 2 of 4)

PLAINTIFFS003645

- Your non-forfeitable rights to accrued benefits (within the meaning of sections 203 and 204 of the Employee Retirement Income Security Act of 1974) under the IBM Personal Pension Plan, the IBM Retirement Plan and the IBM Savings Plan.

- Any right you may have to challenge the validity of this Agreement.

- Your right to enforce this Agreement and to receive the benefits and payments pursuant to the ISAP.

## 4. YOU CAN TAKE UP TO 21 DAYS BEFORE SIGNING THIS AGREEMENT

You have the right to take up to twenty-one (21) days from the date you received this Agreement (even if your employment will end sooner) or until your last date of employment, whichever is longer, to consider this Agreement and the accompanying ISAP information. If you sign this Agreement before the expiration of the 21-day period, you acknowledge that you knowingly and voluntarily waived the right to wait the full 21 days.

## 5. YOU CAN REVOKE THIS AGREEMENT

This Agreement is not effective for SEVEN DAYS after you sign it. (For employees working in Minnesota, this period is 15 days.) You can revoke this Agreement during that time. To revoke this Agreement, your manager must receive a written notice of revocation from you within that time period. You understand that even if you revoke this Agreement, that will not change the fact that your employment has been terminated by IBM. You also understand that if you do revoke, you will not be entitled to any payments or benefits under this Agreement or the ISAP.

## 6. MISCELLANEOUS

If any part of this Agreement is held to be invalid or unenforceable, the remaining provisions of this Agreement will not be affected in any way, except that if your release of claims or promise not to sue is held to be unenforceable, then at its option IBM may seek to recover to the maximum extent permitted by law the payments and value of benefits that you received under this Agreement.

This Agreement will be governed by the substantive laws of New York.

(Page 3 of 4)

3

PLAINTIFFS003646

By signing this Agreement, you acknowledge that you fully understand any and all rights you have with respect to the claims you are releasing, and that you are voluntarily signing this Agreement without any threats, coercion or duress, whether economic or otherwise, and that you intend to be bound by the terms of this Agreement.

**YOU ARE ADVISED TO CONSULT WITH A LAWYER BEFORE YOU SIGN THIS AGREEMENT**

Name (print): _BRIDGET ROBERTI_

Serial #: _132837_

Signature: _[signature]_

Date: _2/27/15_

(Page 4 of 4)

International Business Machines Corporation
Version September 3, 2013

4

## IBM Statement of Understanding

**\*\*\* IBM Confidential when complete \*\*\***
(For employee who signed Confidential Agreement before 1/16/01)

EMPLOYEE NAME _Bridget Roberti_     SERIAL _132837_

EXIT INTERVIEW _2/27/15_ SEPARATION _2/27/15_

I have been reminded of my responsibilities and legal obligations to IBM regarding confidential information and intellectual property that will continue after my employment with IBM ceases. The following is a summary of such responsibilities and legal obligations, which I acknowledge by my signature below:

1. I am aware of my legal obligations as stated in the Agreement Relating to Confidential Information and Intellectual Property (Agreement) that I signed at the commencement of my employment to the effect that I will not, without IBM's written permission, disclose to anyone outside IBM or use in other than IBM's business, any confidential information or material of or possessed by IBM or its subsidiaries.

2. Confidential information or material of IBM or its subsidiaries is described in my Agreement. Confidential information of IBM does not include any general technical skills or the general experience gained by me during my employment with IBM, and I understand that IBM has no objection to my using these skills and experience in any new business venture or employment.

3. I have been advised that, without purporting to be all the confidential information of IBM to which I have had access or in any way limiting my obligations relative to other confidential information of IBM to which I have had access, the information set forth in the lower section of this statement, to which I have had access during my employment with IBM, is confidential information of IBM and thus falls within the nondisclosure and nonuse obligations of my Agreement.

4. I understand that my obligations not to use or disclose confidential information of IBM remains in effect after the termination of my employment with IBM and that if, at any time in the future, I wish to disclose or use any such confidential information or if I should be in doubt as to whether any information may be confidential to IBM, I will, prior to such disclosure or use, obtain written permission from IBM to do so. I further understand that such permission may be refused where confidential information of IBM is involved.

5. I have disclosed, and will disclose in writing to the IBM Intellectual Property Law Department any inventions, works of authorship or other Developments which IBM owns by virtue of my Agreement made, conceived, written or otherwise created, solely by me

Rev Date: 01/17/14

or jointly with others, during my employment with IBM. I recognize I still may have an obligation to execute papers in connection with patents or patent applications on such inventions.

6. I certify that I have returned all property in my possession (whether or not containing confidential information) including, but not limited to, diskettes and other storage media, drawings, notebooks, reports, and other documents, belonging to IBM or its subsidiaries. In addition any computer equipment, peripherals, cellular phones, and other related communication/data processing equipment. (Specify any outstanding property and state reason for not returning.)

| Item | Location | Reason Not Returned | Date |
|------|----------|---------------------|------|
|      |          |                     |      |

7. I certify that I have reported to IBM any violations of IBM's Business Conduct Guidelines and any information that I may have regarding any potential violations of laws or regulations relating to IBM's business, including U.S. securities laws and any laws related to anti-bribery, as well as any fraud or financial wrongdoing involving IBM.

Please list any areas of confidential information of IBM that you are aware of to which the employee has had access, (and to which local confirmation is readily available), such as technical information, business strategies, planned programs, cost data, pricing of unannounced products, competitive analyses, forecasts and other information of a sensitive nature. With respect to registered documents, list those to which the employee currently has access. The employee is to be given a copy of this list.

| Item | Location | Date |
|------|----------|------|
|      |          |      |

_Bridget Lobes_     2/27/15
Employee Signature Date

_JoAnne D'Acemaybolo_     2/27/15
Interviewer/Manager Signature Date

Rev Date: 01/17/14



...oft Excel 2013
...COBRA coverage.                                                          Page 1 of 8

## IBM Retraining Assistance Program (RAP)

The Retraining Assistance Program (RAP) is designed to provide an opportunity for employees affected by this resource action to help develop skills for a new career. The reimbursement will assist with the cost of items such as retraining and job-related skills building.

Eligible employees who depart from IBM will be reimbursed for eligible expenses up to a maximum of $2,500 for eligible retraining completed within 12 months of the departure date, with reimbursement applied for within 15 months of departure date.

These reimbursements are considered taxable income to the recipient. Employees will receive a copy of the 1099 Form filed at the end of the year. Taxes will not be withheld from the reimbursement.

> To be eligible, all courses must begin after separation and must end with documentation of successful completion within 12 months from the date of departure. RAP payments will not be prorated.

Institutions considered eligible are accredited colleges, universities and high schools, as well as business, technical or correspondence schools. Also eligible are non-accredited classes, seminars, lectures or workshops held by professional associations and instructors with established, documented credentials acceptable to IBM and whose primary purpose is to provide job-related skills training.

Eligible expenses include:

- All required institution/instructor's tuition or fees (except those specifically specified in ineligible expense section)
- Application fees (including transcript fees)
- College curriculum fees; college lab fees; computer access/use fees (information technology fees); course registration fees (except late registration); exam fees (certification exams, proficiency exams or Credit for Life Experience (CLEP)); general service fees (matriculation, non-matriculation)
- Required materials/books, including software, audio/video tapes, CDs, and/or DVDs; home study and/or Internet courses; also includes GMAT and real estate license fees
- Language courses require documentation from the provider that the course is job related

January 2015            Page 7 of 33

January 2015            Page 8 of 33