UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/3/22

EDVIN RUSIS, HENRY GERRITS, PHIL MCGONEGAL, and DAVID HO ENG, *individually and on behalf of all other similarly situated individuals*,

Plaintiffs,

-against-

INTERNATIONAL BUSINESS MACHINES CORP.,

Defendant.

18-CV-8434 (VEC)

MEMORANDUM OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

This is a putative collective action against Plaintiffs' former employer, International Business Machines Corp. ("IBM"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Second Am. Compl. ("SAC"), Dkt. 180 ¶¶ 1, 26–27. Plaintiffs allege that, since 2012, IBM has laid off or otherwise forced its older workers out of the company in a systematic effort to replace them with younger employees. *Id.* ¶ 22. IBM has moved for summary judgment as to a group of thirty-four Opt-In Plaintiffs who joined this lawsuit to pursue claims of constructive discharge or pretextual for-cause termination.[1] *See* Not.

[1] This group is comprised of Gabriele Avzaradel, Anne Belt, Thomas Caldwell, William Chaplin, David Edley, Judy Ghea, David Hamel, Cynthia Keefer, Diane Prater, Ronald Ragsdale, David Reid, John Stapleton, Christopher Stevenson, Diane Delaney, John Gates, Craig Grills, Sonali Bailey Perkins, Danny Peterman, Rene Ramos, Thomas Warthen, Mark Bauer, Melody Faeizi, Arleen Franceschi, James Rash, Bunyan Tadlock, Mark Mastel, Michael Shattuck, Vincent Daukas, John Gray, Raymond Otto Kulisch, Charles (Jim) Lundy, David Ogilbee, Chohreh Partovian, and Michael Rudge. Def. Mem., Dkt. 217 at 9–17 (citations omitted). Although IBM originally sought summary judgment as to forty-four Opt-In Plaintiffs, the Court has already granted summary judgment as to ten of them — Anne Bellew, Demostenes Gonzalez, Steven Black, Mark Grill, Peter Kondis, Walter Bayerle, Phillip Emma, Rose Kapor, Brian Schaaff, and Eric Selcov — in a separate opinion. Op. & Order, Dkt. 266 at 1 ns.1–2, 11.

of Mot., Dkt. 215. For the reasons that follow, IBM's motion is GRANTED in part and DENIED in part.

## BACKGROUND

The Court assumes familiarity with the facts of the case, which were outlined in the Court's opinion on IBM's motions for judgment on the pleadings dated March 26, 2021. *See Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 188–90 (S.D.N.Y. 2021). In brief, Named and Opt-In Plaintiffs are former IBM employees who separated from the company at age forty or older, and who allege that their terminations or separations violated the ADEA because they were part of a company-wide effort to oust older employees from IBM. SAC ¶¶ 22–29. Plaintiffs allege that IBM pursued this goal in several ways, such as by: engaging in mass layoffs known as "Resource Actions"; terminating older employees for pretextual reasons; and constructively discharging older employees. *Id.* ¶ 28.

IBM has filed three motions for non-merits summary judgment, *see* Nots. of Mot., Dkts. 207, 215, 222, one of which the Court has already granted in full, *see generally* Op. & Order, Dkt. 266. This opinion deals only with IBM's motion as to Opt-In Plaintiffs pursuing constructive discharge or pretextual for-cause termination claims (collectively "Separation Opt-Ins").

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)) (amended 2007). A party may not "rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). Summary judgment cannot be defeated by the presentation of "but a 'scintilla of evidence' supporting [plaintiffs'] claim." *Fincher v. Depository Tr. & Clearing Corp*., 604 F.3d 712, 726 (2d Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

On a motion for summary judgment, courts "construe the facts in the light most favorable to the non-moving party and [] resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted). A district court is not, however, under any "obligation to engage in an exhaustive search of the record" when considering a motion for summary judgment. *Jones v. Goord*, 435 F. Supp. 2d 221, 259 (S.D.N.Y. 2006) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002)).

As a threshold matter, it is undisputed that the thirty-four Separation Opt-Ins did not file administrative charges of discrimination. Def. Reply 56.1 Stmt., Dkt. 260 ¶ 47.[2] The question before the Court, therefore, is whether the Separation Opt-Ins can "piggyback" on other charges and join this lawsuit. Pursuant to the "single filing rule," individuals who failed to comply with

---

[2] The only Separation Opt-In to have done so is Walter Bayerle, Def. Reply 56.1 Stmt. ¶ 47 n.4 (citations omitted), one of the ten Opt-Ins whose claim was dismissed by the Court in its prior opinion, *see supra* n.1.

the administrative requirements to bring an ADEA claim can join an existing lawsuit, "so long as the matter complained of [by the non-filer] was within the scope of [a] previously filed charge, regardless of who filed it." *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1057 (2d Cir. 1990) (quoting 43 Fed. Reg. 138, 139 (1983)). An individual who has not filed an administrative charge may piggyback onto claims that were made, as well as any claims that are "reasonably related" to conduct alleged in another individual's charge. *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1403 (2d Cir. 1993), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071; *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001). "In determining whether claims are reasonably related, the focus should be 'on the factual allegations made in the [Equal Employment Opportunity Commission ("EEOC")] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002)). Whether a non-filing individual may piggyback on another's EEOC charge depends on the nature and scope of the "grievances" asserted in the charge. *Tolliver*, 918 F.2d at 1057–58.

Under the broadest test, preferred by the Second Circuit, the non-filing individual must demonstrate only that he was "similarly situated and received the same discriminatory treatment" as the charge-filing individual on whose claim he wishes to piggyback. *Snell v. Suffolk County*, 782 F.2d 1094, 1101 (2d Cir. 1986) (citation omitted). "[W]here the grievances are alleged to arise throughout a large group," however, the Second Circuit has imposed an additional requirement that there be "some indication that the grievance [asserted in the timely-filed charge] affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim," such that "sufficient notice [has been provided] to the employer to explore

conciliation with the affected group." *Tolliver*, 918 F.2d at 1058. For the filed charge to support piggybacking by the non-filer, the court must be convinced that "no conciliatory purpose" would have been served by the non-filer filing a separate EEOC charge. *Id.* at 1058–59 (quoting *Foster v. Gueory*, 655 F.2d 1319, 1322 (D.C. Cir. 1981)).

## II. The Separation Opt-Ins Cannot Piggyback on the Named Plaintiffs' Charges

Defendant first argues that the Separation Opt-Ins cannot piggyback on charges from Named Plaintiffs Phil McGonegal, Sally Gehring, Philip Monson, and Claudia Ziegler.[3] Def. Mem., Dkt. 217 at 17–24. The Court agrees.

### A. McGonegal's Charge Was Untimely, and Therefore Cannot Sustain Piggybacking

IBM argues that the Separation Opt-Ins cannot piggyback on McGonegal's charge because it was untimely,[4] and, in the alternative, that even if it had been timely, it cannot provide a basis for piggybacking on the merits. Def. Mem. at 18–19. The Court need not reach the second argument because IBM prevails on the first.

On May 1, 2017, McGonegal was notified that he was eligible to participate in IBM's Transition to Retirement Program, a program in which individuals work a reduced schedule for a year and then retire from the company. Def. Reply 56.1 Stmt. ¶¶ 4–5, 9. On May 12, 2017, IBM told McGonegal that if he did not participate in the Transition to Retirement Program, he must relocate to Raleigh, North Carolina, where he could continue to work full-time. *Id.* ¶ 6.

[3] The five other Named Plaintiffs' charges also cannot provide a basis for piggybacking. Named Plaintiff John Mason never filed a charge, Def. Reply 56.1 Stmt. ¶ 3, and the Court previously dismissed Named Plaintiff David Eng's ADEA claim with prejudice, *Rusis*, 529 F. Supp. 3d at 204. The Court has already held that the charges of Named Plaintiffs Edvin Rusis and Henry Gerrits "permit piggybacking only for former IBM employees who were terminated as part of an IBM Resource Action — *i.e.*, a layoff." *Id.* at 214. Finally, Plaintiffs do not claim that they can piggyback on Named Plaintiff Brian Haupt's charge. Pls. Opp., Dkt. 246 at 21–23.

[4] The Court previously declined to determine whether McGonegal's charge had been timely filed. *See Rusis*, 529 F. Supp. 3d at 220–22.

McGonegal sought an exception to the Raleigh transfer that was denied. *Id.* ¶¶ 7–8. He then joined the Transition to Retirement Program on May 31, 2017, *id.* ¶ 9, resulting in his separation from IBM on June 30, 2018, *id.* ¶ 10. These facts are undisputed; whether his charge was timely turns both on the date on which his charges were filed and on the date on which the claim underlying the charge accrued.

**1. The Effective Date of McGonegal's Charge Was July 2, 2018**

Although McGonegal faxed a charge to the EEOC on July 2, 2018, *id.* ¶ 13, in August 2020, the EEOC indicated that faxed communications were "not the ideal way to communicate with the" EEOC, implying that it had not actually received the charge when it was submitted, Liss-Riordan Decl., Dkt. 242, Ex. 5. Nevertheless, the EEOC processed the charge "as received" on July 2, 2018. *Id.*

IBM contends that because there is no evidence that McGonegal's charge was processed by the EEOC in July of 2018, and no receipt of the charge was provided until August 6, 2020, the charge cannot be deemed to have been filed as of July 2, 2018. Def. Mem. at 19. IBM fails, however, to cite any caselaw suggesting the Court should not give credence to the EEOC's determination that the date of receipt was July 2, 2018. *See id.*

Although the Second Circuit has yet to determine whether the date that a charge is submitted or the date of receipt is the operative filing date, *see Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 579 (2d Cir. 2020), district courts in this Circuit have held that the latter is the filing date, *Pearson v. City of New York*, No. 20-CV-3592, 2021 WL 2894776, at *4 (S.D.N.Y. July 9, 2021) (collecting cases). Whether IBM was on notice of the charge on or around the date it was received by the EEOC is irrelevant to whether it was timely filed. *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 567 (2d Cir. 2006), *aff'd*, 552 U.S. 389 (2008)

("[I]f an individual satisfactorily notifies the EEOC of her charge, she is not foreclosed from federal suit merely because the EEOC fails to follow through with notifying the employer . . . .").

Regardless of whether the date of submission or the date of receipt controls, the EEOC retroactively determined that the date of receipt was July 2, 2018 — the same date as the date of submission. *See* Liss-Riordan Decl., Ex. 5. IBM has offered no compelling argument why the Court should ignore the EEOC's determination; accordingly, the Court considers McGonegal's claim to have been filed with the EEOC on July 2, 2018.

**2. McGonegal's Charge Was Untimely**

IBM next argues that, even if McGonegal's charge was filed on July 2, 2018, it was untimely because his age discrimination claim accrued in May 2017. Def. Mem. at 19; *see also* Def. Mem. on Untimely Charges, Dkt. 209 at 13–15.[5] Plaintiffs argue that McGonegal's claim of constructive discharge did not accrue until he learned that younger employees were being granted exceptions to relocation orders, thus putting him on notice of a potential age discrimination claim. Pls. Opp. on Untimely Charges, Dkt. 249 at 2.

The Supreme Court has clearly held that "a wrongful-discharge claim accrues — and the limitations period begins to run — when the employee gives notice of his resignation, not on the effective date of that resignation." *Green v. Brennan*, 578 U.S. 547, 564 (2016). It is undisputed that McGonegal gave notice of his separation from IBM in May 2017 when he joined the Transition to Retirement Program. Def. Reply 56.1 Stmt. ¶ 9. To the extent that McGonegal's constructive discharge claim turns on the denial of his request for an exception to a relocation order, McGonegal learned of that denial by May 30, 2017. Def. Mem. on Untimely Charges at 15 (citations omitted). Whenever McGonegal learned that IBM was granting exceptions to

[5] Certain arguments dealt with in this opinion were addressed by the parties in their briefing for a separate summary judgment motion; the Court cites to that briefing where appropriate throughout.

younger employees is irrelevant to when his claim accrued. As the Court has already elucidated in its prior opinion, a claim accrues when a plaintiff suffers an injury, not when he learns that the injury was the result of wrongdoing. *Rusis*, 529 F. Supp. 3d at 227 n.47 (citing *Lugo-Young v. Courier Network, Inc.*, No. 10-CV-3197, 2012 WL 847381, at *5 (E.D.N.Y. Mar. 13, 2012)).

Plaintiffs attempt to rely on *Petrelli v. City of Mount Vernon*, 9 F.3d 250, 254 (2d Cir. 1993), in arguing that McGonegal's claim accrued when he allegedly became aware that younger employees were being granted exceptions to relocation orders. Pls. Opp. on Untimely Charges at 19. In *Petrelli*, the Second Circuit determined that a claim for failure-to-hire did not accrue until the plaintiff was on notice that a younger person had been hired to fill the position. 9 F.3d at 254.. But *Petrelli* is not helpful to McGonegal because McGonegal is not asserting a failure-to-hire claim. Because an element of a failure-to-hire ADEA claim is that the position was filled by a younger person, it is obvious that must happen before the claim can accrue. For that reason, *Petrelli* is not analogous.[6]

Plaintiffs also attempt to argue that, because McGonegal appealed the denial of his request for an exception to the relocation order, his injury did not occur until the appeal was denied. Pls. Opp. on Untimely Charges at 20. It is well-settled law, however, that the process of appealing an injurious decision does not toll the statute of limitations. *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods.") (citation omitted). The time of the injury, therefore, remains May 30, 2017, when McGonegal learned of

---

[6] Plaintiffs also point to *Fine v. Interpublic Grp. of Cos., Inc.*, No. 94-CV-4419, 1994 WL 701996, at *4 (S.D.N.Y. Dec. 14, 1994), for the same proposition. Pls. Opp. on Untimely Charges at 19. In *Fine*, the issue with respect to notice turned on whether the plaintiff had notice of his discharge or merely notice of being transferred. *Fine*, 1994 WL 701996, at *3–4. *Fine* cannot be read to suggest that the relevant notice is notice of discrimination or wrongdoing, as opposed to notice of injury.

the denial, regardless of his appeal or the date the appeal was decided. Def. Mem. on Untimely Charges at 15 (citations omitted).

In sum, although the Court credits the EEOC's determination that McGonegal's charge was properly filed and received on July 2, 2018, his charge was untimely because his claim accrued, at the latest, on May 31, 2017, the date on which he entered the Transition to Retirement Program. Because his charge was untimely, IBM is entitled to summary judgment on his claim, and Separation Opt-Ins cannot piggyback on his claim.[7]

### B. Individuals Can Piggyback on Charges of Named Plaintiffs, including Named Plaintiffs Added in an Amended Complaint, but the Separation Opt-Ins Cannot Do So Here

It is an open question whether non-charge filers can piggyback on the EEOC claims of Named Plaintiffs who join an action via an amended complaint. Defendant contends that they cannot. Def. Mem. at 23. IBM hangs its entire argument on a cherry-picked quote from an Eleventh Circuit case that refers in passing to piggybacking on claims from the "original named plaintiff". *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1108 (11th Cir. 1996) ("putative plaintiffs should be allowed to piggyback only on the timely filed EEOC charge of an original named plaintiff of class action.") (emphasis omitted). In context, this quote is not the stake in the heart that IBM suggests. In *Grayson*, the Eleventh Circuit held that an opt-in plaintiff cannot piggyback on another opt-in plaintiff's charge and must instead piggyback on a named plaintiff's charge. 79 F.3d at 1102. When summarizing this holding in its conclusion, the Court referred to the need to piggyback on an "original named plaintiff['s]" charge, not by way of contrast to the

[7] Even if McGonegal's charge had been timely, the Court previously noted that it "is substantively identical to the Rusis/Gerrits charges." *Rusis*, 529 F. Supp. 3d at 220 (citation omitted). As such, it is unlikely that Plaintiffs asserting claims of discrimination who were not terminated in a Resource Action could piggyback on his charge.

charge of an *added* named plaintiff, but by way of contrast to the charge of an opt-in plaintiff.[8] *Id.* at 1108 (emphasis omitted). In fact, the only case that appears to have addressed the issue head-on allowed piggybacking on the claim of a plaintiff who was added to the case by way of an amended complaint. *See Catlin v. Wal-Mart Stores, Inc.*, 123 F. Supp. 3d 1123, 1131 (D. Minn. 2015).

IBM likens allowing piggybacking on the claim of a later Named Plaintiff to allowing piggybacking on the claim of an opt-in plaintiff, which the Court has already determined is impermissible. *Rusis*, 529 F. Supp 3d at 210–11. But the concerns that animated the Court's holding that a non-charge filer cannot piggyback onto the charge of a charge-filer who opted into a collective are not directly applicable to the charge of a Named Plaintiff, even if that Named Plaintiff only joins the lawsuit by way of an amended complaint. The restriction on piggybacking to which the Court previously pointed is that "the individual who filed the EEOC charge must actually file a suit that the piggybacking plaintiff may join" in order for a putative plaintiff to piggyback onto that charge. *Bettcher v. Brown Schs.*, Inc., 262 F.3d 492, 494–95 (5th Cir. 2001) (emphasis omitted). A Named Plaintiff has filed a lawsuit, even if he or she has only done so by virtue of being added to the case by way of an amended complaint.

Although the Court appreciates IBM's point that adding Named Plaintiffs for piggybacking purposes could encourage gamesmanship, Def. Mem. at 21, the Court would be far more inclined to be sympathetic to that argument here had IBM objected to allowing Plaintiffs to file the Second Amended Complaint that added these Named Plaintiffs. Having consented to

---

8 The Court also notes that, although the Second Circuit in *Tolliver* referred in passing to the relationship between the opt-ins' claims and those of the "original named plaintiffs," 918 F.2d at 1059, as in *Grayson*, that was not in a context in which there were any new plaintiffs stemming from an amended complaint that could serve as a point of comparison.

Plaintiffs' filing the Second Amended Complaint, *see* Dkt. 176, which IBM knew added additional individuals as Named Plaintiffs, IBM is hard-pressed to seriously argue that allowing piggybacking on the additional Named Plaintiffs' charges would "eviscerate" the Court's ruling that non-charge filers cannot piggyback on opt-ins' charges. Def. Mem. at 23.[9]

Because the Court finds that piggybacking on an added Named Plaintiff's charge is permissible, it next turns to whether the Separation Opt-Ins can piggyback on the charges of the added Named Plaintiffs.

**1. The Separation Opt-Ins Cannot Piggyback on Gehring's Charge**

The Court first finds that the Separation Opt-Ins may not piggyback on Gehring's charge; no portion of her charge relates to claims of constructive discharge or pretextual for-cause termination. Gehring's charge reads in full:

> I was forced to train a new employee who was outside my protected statuses. I was subjected to a hostile work environment when training others to do my job duties. Particularly, I trained workers who were male, under age of 40, non-American national origin and a different race to do my job duties. After which, I was terminated and my job duties were taken over by workers outside all of my protected statuses. Many employees in my protected statuses have been terminated and are not being hired.

Liss-Riordan Decl., Dkt. 242, Ex. 9.

Even applying the broad test preferred in the Second Circuit, the Separation Opt-Ins cannot piggyback on that charge. The Court has already held that "[g]eneral statements asserting only that IBM engaged in widespread age discrimination are patently insufficient to put the EEOC or IBM on notice of future claims alleging constructive discharge or pretextual termination." *Rusis*, 529 F. Supp. 3d at 216 (citations omitted). "Many employees in my

---

9 Although the Court always appreciates parties working cooperatively with one another during litigation, it would not have been unreasonable for IBM to have opposed Plaintiffs' motion for leave to file a Second Amended Complaint, which did little beyond adding additional Named Plaintiffs. *See generally* SAC, Dkt. 180.

protected statuses have been terminated and are not being hired" is just such a general statement. Liss-Riordan Decl., Ex. 9. Other than her cursory, generalized reference to a pattern of discrimination, Gehring's charge is entirely individualized and refers to multiple forms of discrimination against herself based on multiple protected statuses; the Court can hardly find that "no conciliatory purpose would [have been] served by filing separate EEOC charges" where Gehring's charge only put the employer on notice of a laundry-list of individualized potential violations. *Tolliver*, 918 F.2d at 1058–59 (quoting *Foster*, 655 F.2d at 1322). Further, and perhaps more significantly, the Separation Opt-Ins are not "similarly situated" to Gehring; Gehring was separated in a Resource Action and they were not. Def. Reply 56.1 Stmt. ¶¶ 24–25; *see also Snell*, 782 F.2d at 1101 (holding the non-filing individual must have "received the same discriminatory treatment" as the charge-filing individual). As a result, the EEOC investigation that would have stemmed from her charge would not likely have been broad enough to encompass the claims asserted by the Separation Opt-Ins.

**2. Separation Opt-Ins Cannot Piggyback on Monson and Ziegler's Charges**

Unlike Gehring's charge, Monson and Ziegler's charges refer expressly to constructive discharge and pretextual for-cause termination claims. Both state:

> IBM is discriminating against its older workers on a class-wide basis across the entire company, both by laying them off or otherwise discharging them (through termination or constructive discharge) disproportionately to younger workers and not hiring them for open positions. Indeed, over the last several years, IBM has been in the process of systemically laying off (or otherwise discharging) its older employees in order to build a younger workforce. IBM has laid off (or otherwise discharged) at least 20,000 employees over the age of forty in the last five years.

Liss-Riordan Decl., Dkt. 242, Exs. 8, 10. Although these charges include conclusory assertions about termination and constructive discharge, the factual allegations of allegedly discriminatory treatment of Monson and Ziegler themselves related solely to Resource Actions. *See* Liss-

Riordan Decl., Ex. 8 (Monson stating: "I was laid off by IBM effective September 4, 2019."); Liss-Riordan Decl., Ex. 10 (Ziegler stating: "I was laid off by IBM effective December 17, 2020."); Def. Reply 56.1 Stmt. ¶¶ 29, 37. Thus, as with Gehring's charge, the charges themselves do not provide a basis for piggybacking by individuals who are complaining of constructive discharge and pretextual terminations. *Snell*, 782 F.2d at 1101 (holding the non-filing individual must have "received the same discriminatory treatment" as the charge-filing individual); *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008) (in determining the scope of a charge for purposes of piggybacking, the Court must look at the factual allegations describing the discrimination about which the claimant is complaining) (citation omitted); *Butts*, 990 F.2d at 1403 (vague, general allegations do not invite a meaningful EEOC response and do not define the scope of a reasonable EEOC investigation). For reasons similar to those explained above, the Separation Opt-Ins cannot piggyback on these charges.

## III. IBM Has Not Met Its Burden of Showing That, as a Matter of Law, the Separation Opt-Ins Cannot Piggyback on Charges from Named Plaintiffs in Other Lawsuits

Because the Separation Opt-Ins cannot piggyback on the charges of any of the Named Plaintiffs, the Court turns to the parties' dispute over whether the Separation Opt-Ins can piggyback on the charges of plaintiffs who filed other lawsuits ("Unrelated Named Plaintiffs"). Def. Mem. at 24–25; Pls. Opp. at 17–21.

As the Court noted in its prior opinion, there is "markedly little guidance" as to whether opt-ins in a putative class and collective action may piggyback on the charges of an Unrelated Named Plaintiff. *Rusis*, 529 F. Supp. 3d at 211 n.26. Two district courts in the Northern District of Illinois have expressly held that an opt-in plaintiff must join the suit of the named party on whose claim he or she is piggybacking. *Zuckerstein v. Argonne Nat. Lab'y*, 663 F. Supp. 569,

574 (N.D. Ill. 1987) ("[A]t least one complying plaintiff must be a party to the suit."); *Brewton v. City of Harvey*, 285 F. Supp. 2d 1121, 1127–28 (N.D. Ill. 2003) (applying *Zuckerstein*). Apart from that, despite IBM's efforts to claim otherwise, there is virtually no caselaw on the issue.[10] That said, as this Court has previously observed, "as a matter of normal litigation practice, the named plaintiffs in litigation control the scope of the litigation based on the injury they allegedly suffered." *Rusis*, 529 F. Supp. 3d at 211 n.26.

Plaintiffs argue that because the Second Circuit in *Tolliver* allowed subsequent claimants to use a prior charge as a predicate for filing their own separate suits, this Court ought to allow the Separation Opt-Ins to piggyback on the claims of Unrelated Named Plaintiffs to join this case. Pls. Opp. at 15–16 (citing 918 F.2d at 1057, 1060). *Tolliver* turned on whether decertification of a class prevented individuals from piggybacking on charges of the named plaintiff in the action into which they had opted when filing a separate lawsuit. 918 F.2d at 1057, 1059–60. Although *Tolliver* allows individuals to bring separate lawsuits by piggybacking on charges filed by plaintiffs in an existing lawsuit, it did not face the question currently before the Court — namely, whether an opt-in plaintiff can expand the scope of the claims in a lawsuit as defined by the complaint filed by the Named Plaintiffs by piggybacking on an Unrelated Named Plaintiff's charge.

The primary concern that the Court has if the Separation Opt-Ins are allowed to piggyback on Unrelated Named Plaintiffs' claims is that they would then be asserting claims that no Named Plaintiff has asserted. Other than McGonegal, who asserted a constructive discharge claim but who is no longer part of this case as of this opinion, *see supra* Section II(A), none of

10 IBM boldly states that "numerous courts around the country have concluded that individuals cannot piggyback on the claims of a plaintiff in a different lawsuit," and proceeds to cite three cases, none of which so hold. Def. Mem. on Untimely Charges at 22 (citing *Bettcher*, 262 F.3d at 495; *Coghlan v. Peters*, 555 F. Supp. 2d 187, 201 (D.D.C. 2008); and *Morton v. ICI Acrylics, Inc.*, 69 F. Supp. 2d 1038, 1042 (W.D. Tenn. 1999)).

the remaining Named Plaintiffs alleges constructive discharge or pretextual for-cause termination. Def. Reply 56.1 Stmt. ¶¶ 1, 16, 19, 24, 29, 37. Notwithstanding conclusory assertions of discrimination in the form of constructive discharge and pretextual for-cause termination scattered throughout the Second Amended Complaint, *see*, *e.g.*, SAC ¶¶ 1, 28, as defined by the claims of the Named Plaintiffs, this lawsuit is about older employees who were terminated by IBM in Resource Actions, full stop. If the Separation Opt-Ins are allowed to opt-in to this case based on claims filed with the EEOC and in federal court by Unrelated Named Plaintiffs, they will expand the case beyond the basis of the lawsuit as defined by the Named Plaintiffs. While *Tolliver* contemplates that non-charge-filing individuals can bring their own lawsuits, the scope of which would be determined by their claims, by piggybacking on charges from separate lawsuits, the question presented here is not whether the Separation Opt-Ins can bring their own lawsuits; nor is the question even necessarily whether, in theory, an opt-in can piggyback on the claim of an Unrelated Named Plaintiff to join a separate collective action. Instead, the question squarely before the Court in this case is whether the Separation Opt-Ins can expand the scope of *this* lawsuit beyond the claims asserted by the remaining Named Plaintiffs by piggybacking on Unrelated Named Plaintiffs' charges.

Although the Court is skeptical that the Separation Opt-Ins can piggyback on the charges of Unrelated Named Plaintiffs, because IBM has failed to cite any caselaw discussing whether an opt-in may broaden the scope of a lawsuit as determined by the Named Plaintiffs' claims, IBM's motion is denied without prejudice on this point.[11] If IBM decides to file another non-merits summary judgment motion on this limited issue as to the remaining thirty-four Separation Opt-ins, its brief in support must address: (i) whether the scope of claims in a collective action, as

---

11 As a result, the remaining thirty-four Separation Opt-Ins may still proceed in this lawsuit.

defined by the complaint filed by the Named Plaintiffs, may be expanded by claims asserted by an opt-in, and (ii) if not, whether the fact that a particular claim had been asserted in a lawsuit at the time the opt-in joined the lawsuit but was subsequently dismissed (here, McGonegal's claim of constructive discharge) means that the opt-in is improperly expanding the scope of the lawsuit.[12]

**IV. The Separation Opt-Ins Cannot Piggyback on Other Opt-Ins' Claims or on EEOC Charges from Non-Lawsuit Filers**

Finally, Plaintiffs argue that the Separation Opt-Ins should be permitted to piggyback on other Opt-In Plaintiffs' charges — not just those of the Named Plaintiffs — and EEOC charges filed by individuals who did not subsequently file a lawsuit. Pls. Opp. at 24–25. The Court has already held that an individual may only piggyback on a charge-filing individual's lawsuit, *see Rusis*, 529 F. Supp. 3d at 210, and that a non-charge filer cannot piggyback onto the charge of a charge-filer who opted into a collective, *see id.* at 211. The Court sees no reason to revisit its prior holding.

**CONCLUSION**

For the foregoing reasons, IBM's motion is GRANTED in part and DENIED in part, without prejudice to IBM moving for summary judgment on the basis that Separation Opt-Ins cannot piggyback on the charges of named plaintiffs from other lawsuits because it would improperly expand the scope of the case beyond that defined by the Named Plaintiffs'

[12] Depending on the resolution of the latter question, Separation Opt-Ins alleging constructive discharge, but not those alleging pretextual for-cause termination, would theoretically be able to remain in the lawsuit by piggybacking on Unrelated Named Plaintiffs' charges.

Complaint. Should IBM seek to make such a motion, it must meet and confer with Plaintiffs and file a joint proposed briefing schedule not later than **July 18, 2022**.

The Clerk of Court is respectfully directed to close the open motion at Docket 215.

**SO ORDERED.**

**Date: July 3, 2022**
**New York, NY**

**VALERIE CAPRONI**
**United States District Judge**