UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RYAN MOUNT, individually and on behalf of all other similarly situated individuals,<br><br>        Plaintiff,<br><br>        v.<br><br>INTERNATIONAL BUSINESS MACHINES CORP.<br><br>        Defendant. | Civil Action No. 1:18-cv-08434<br><br>**JURY DEMANDED** |

**THIRD AMENDED CLASS
AND COLLECTIVE ACTION COMPLAINT**

1.  This is a class and collective action brought by Ryan Mount on behalf of himself and all other similarly situated employees who have worked for Defendant International Business Machines Corporation (hereinafter "IBM"), alleging that IBM, through its termination and hiring practices, has violated the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621 *et seq.*, as well as the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.* (for the employees who worked in California). As described further below, IBM has discriminated, and continues to discriminate, against its older workers, both by laying them off (or terminating or constructively discharging them) disproportionately to younger workers and then not hiring them for open positions. Over the last several years, IBM has been in the process of systematically reducing its employment of older workers in order to build a younger workforce. Between 2012 and the present, IBM has

laid off at least 20,000 employees over the age of forty. Such discriminatory layoff and hiring practices constitute unlawful discrimination under the ADEA and state anti-discrimination law.

2.     Plaintiff brings these claims on behalf of himself and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

3.     Plaintiff also brings class claims under California law pursuant to Fed. R. Civ. P. 23.

## II.     PARTIES

4.     Plaintiff Ryan Mount is 54 years old and resides in Nevada City, California. Mr. Mount worked for IBM for approximately seven (7) years, before his separation, effective on October 1, 2018.

5.     Plaintiff brings these claims on behalf of himself and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

6.     Plaintiff also brings this case as a class action on behalf of himself and similarly situated individuals over the age of forty (40) who worked for IBM in California whose employment ended within the relevant period, pursuant to Fed. R. Civ. P. 23.

7.     Defendant International Business Machines Corp. is a New York corporation with its principal place of business in Armonk, New York. IBM is an American multinational technology business that offers services and goods ranging from computing, cloud platforms, advanced analytics tools and others.

**III.     JURISDICTION AND VENUE**

8. This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiff has brought a claim pursuant to the federal Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq*. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

9. The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is in Armonk, New York.

**IV.     STATEMENT OF FACTS**

10. Plaintiff was among thousands of IBM employees to be laid off (or otherwise separated from IBM) recently, as the result of a shift in IBM's personnel focus to the generation of workers referred to as "Millennials" (which IBM defines as the generation born after 1980) that began in approximately 2012.  At that time, IBM began a program to reform itself into a leading company in the fields of cloud services, big data analytics, mobile, security and social media. As a part of this transformation, IBM endeavored to begin heavily recruiting Millennials in order to make the face of IBM younger, while at the same time pushing out older employees. At the direction of IBM's CEO Virginia Rometty and other corporate leaders, IBM instituted a plan to bring in 25,000 younger employees that it referred to as "Early Professional Hires" or "New Collar Hires." At the same time, in order to make room for these younger workers, IBM sought to reduce its headcount of older workers over a period of several years.

11. In an article published by ProPublica following an investigation of IBM's hiring practices, ProPublica reported that it estimates that "in the past five years alone, IBM has eliminated more than 20,000 American employees ages 40 and over, about 60 percent of its estimated total U.S. job cuts during those years." Peter Gosselin and Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (March 22, 2018), https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/

12. As reported by ProPublica, IBM's shift in focus toward the Millennial workforce came as "IBM was falling behind . . . by failing to quickly devise innovative uses for the internet like its new rivals, Google, Facebook, and Amazon." Id. In response to that problem, IBM's CEO Virginia Rometty "launched a major overhaul that aimed to make IBM a major player in the emerging technologies of cloud services, big data analytics, mobile security and social media, or what came to be known inside as CAMS" and "sought to sharply increase hiring of people born after 1980." Id. Additionally, IBM embraced the belief that "CAMS are driven by Millennial traits." Id.

13. Moreover, in 2006 one of IBM's consulting arms issued a paper that referred to workers in the "Baby Boomer" generation as "gray hairs" and "old heads," stated that "successor generations . . . are generally much more innovative and receptive to technology than baby boomers," and advised that "What businesses can't afford to do is simply rehire their experienced workers and put them back into their old jobs." See, The Maturing Workforce: Innovation in Workforce Enablement, IBM Business Consulting Services, https://www-935.ibm.com/services/uk/bcs/pdf/maturing-workforce-feus01291-1.pdf (2006).

14. As another expression of IBM's shift in focus to embrace Millennials, at a 2014 IBM conference called "Reinvention in the Age of the Millennial," IBM announced its intent to "embrace the 'Millennial mindset'" and announced that "What's good for Millennials is good for everyone." See Reinvention in the Age of the Millennial, https://ibmcai.com/2014/12/16/reinvention-in-the-age-of-the-millennial/ (Dec. 16, 2014).

15. Throughout the company, IBM implemented a plan to replace its headcount of older workers with younger ones. In conversations and corporate planning documents, executives and managers used terms such as "continuous talent refresh," "correcting seniority mix," and "shifting headcount" toward "Early Professional Hires." Indeed, IBM had a goal of achieving 55% Early Professional Hires by 2020. In 2017, IBM CEO Virginia Rometty boasted on CNBC's Mad Money that 50% of all IBM employees were now Millennials.

16. IBM has reduced the population of its older workers through several methods. Many older employees have been laid off through reductions in force or layoffs, which IBM refers to as "Resource Actions." (Meanwhile, IBM shields its youngest employees from layoff, exempting recent college graduates following their hire date.) IBM has also reduced its population of older workers by terminating older employees for pretextual reasons, or by constructively discharging them, or by conditioning their continued employment on untenable choices they are unlikely to accept, such as relocation.

17. Additionally, while older workers who lost their jobs through layoffs that IBM calls "Resource Actions" have frequently been encouraged to use IBM's internal hiring platform to apply for other open IBM positions for which they are qualified, IBM

5

has generally prevented workers subject to these layoffs to be hired into other positions. IBM has put obstacles in the way of such workers being hired into different positions, thus helping to ensure that these older workers are removed from the company and younger workers placed into open positions.

18.   Prior to 2014, IBM provided lists to any workers who were laid off, which disclosed the positions and ages of all the employees laid off from their business units at the same time, as well as a list showing the positions and ages of all those in the business units that were not being laid off.  IBM distributed this information, presumably, in order to comply with the Section 626(f) of the ADEA, which requires disclosure of this information if an employer seeks to obtain a release of age discrimination claims from a group of employees. However, in 2014, in an apparent effort to conceal its systematic effort to shed its older workers, IBM stopped disclosing this information to the employees. While IBM could no longer include a release of ADEA claims in its severance agreements with its employees as a result, it opted instead to require its employees to agree to binding individual arbitration of those claims, in order to receive a small severance payment.  Many IBM employees who were laid off, including the named plaintiff in this action, rejected the severance offer and did not sign the arbitration agreement.

19.   On approximately August 31, 2020, the Equal Employment Opportunity Commission ("EEOC") issued a classwide determination following an investigation of age discrimination at IBM. In that determination, the EEOC found reasonable cause to believe that IBM discriminated older employees through layoffs that took place between 2013 and 2018.  The EEOC explained in this determination letter that its investigation

uncovered "top-down messaging from IBM's highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires." The EEOC revealed that it had analyzed data from across the company and that it was primarily older workers (85%) who were in the total potential pool of those considered for layoff.  The EEOC stated in the determination letter that its conclusion was supported by dozens of interviews it had conducted across the company, and it rejected IBM's attempt to justify and defend each of the 58 layoffs analyzed in that investigation through individualized explanations.

20. Plaintiff Mount began working for IBM, in October 2011 and held the position of Global Business Services Learning Experience Strategist. On June 10, 2018, Plaintiff Mount received a letter from his manager informing him that he was being laid off by IBM effective October 1, 2018.  Plaintiff Mount was one of the oldest employees in his group, and none of the younger employees were laid off. In the period leading up to Mr. Mount's layoff, IBM placed a special emphasis on hiring younger employees. Plaintiff Mount was actively engaged in interviewing and training the new individuals who were being hired, who were almost all in their twenties and thirties. At the time that IBM informed Plaintiff Mount of his layoff, the only reason IBM provided was that IBM had need for some skills more than others. Plaintiff Mount, however, had deep skillsets in IBM's three major growth areas – digital reinvention, disruption, and design thinking – and he even helped design and develop the education programs used to train other IBM employees in those skills.  Although Plaintiff Mount applied to approximately fifteen (15) positions through IBM's internal hiring platform for which he was qualified, he did not

7

receive any response to his applications beyond notices that he was no longer under consideration.

## V. COLLECTIVE ACTION ALLEGATIONS

21. Plaintiff brings this case as a collective action under the ADEA on behalf of IBM employees over the age of forty (40) who have worked anywhere in the country whose employment separated within the relevant period, who may opt in to this action.

22. These employees who may opt in to this collective action are similarly situated to the named Plaintiff. They have all worked for IBM under substantially similar conditions and have all been subjected to IBM's policy and practices of targeting for layoff and disproportionately ending the employment of employees over forty (40) years old. They have also all been subject to IBM's policy of precluding those employees from consideration for other open internal IBM positions for which they are qualified.

## VI. CLASS ACTION ALLEGATIONS

23. Plaintiff also brings a class action claim pursuant to Fed. R. Civ. P. 23 under the laws of California, on behalf of IBM employees over the age of forty (40) who have worked for IBM in those respective states and whose employment separated within the relevant period.

24. This California class meets the prerequisites of Fed. R. Civ. P. 23 in that:

   a. The class is so numerous that joining all members is impracticable. The exact number of the members of each class is unknown, but it is estimated that there have been well more than forty (40) IBM employees over the age of forty (40) whose employment has ended in California

8

within the relevant period. As a result, joinder of all of these individuals is impracticable.

b. There are questions of fact and law common to all of the putative class members, because all of those individuals were subject to IBM's uniform effort to shift its personnel focus to Millennials, leading to the unlawful termination of a disproportionate number of older IBM employees, in violation of California law.

c. With respect to these common issues, the claims of the named plaintiff are typical of the claims of IBM employees over the age of forty (40) who had worked in California and who lost their jobs with IBM.

d. Plaintiff and his counsel will fairly and adequately represent the interests of each class. Plaintiff has no interests adverse to or in conflict with the class members whom he proposes to represent. Plaintiff's counsel has litigated and successfully resolved many dozens of class action cases involving employment law and have substantial experience representing employees in discrimination claims.

e. The questions of law or fact common to all members of the class predominate over any questions affecting only individual members. The common questions include, among other things, whether IBM targeted older employees for layoff, or otherwise disproportionately ended the employment of older workers, and whether IBM refused to consider hiring those employees to other open positions for which they were qualified due to their age.

    f.   Litigating these claims as a class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in a highly inefficient duplication of discovery for many IBM employees in California, briefing of legal issues, and court proceedings.

## VII. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

25. Former named Plaintiffs in this matter Edvin Rusis, Henry Gerrits, Claudia Ziegler, and Sally Gehring exhausted their administrative remedies before the EEOC prior to initiating this lawsuit. Additionally, the EEOC has investigated IBM's employment practices since at least 2014, and on August 31, 2020, issued a Letter of Determination finding reasonable cause to believe that IBM has engaged in age discrimination on a companywide basis.

## COUNT I

(Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*)
(On Behalf of Plaintiff and Class)

26. Plaintiff re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

27. IBM's conduct in systematically targeting for separation employees who are older than forty (40), including Plaintiff, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the ADEA. IBM's violation of the ADEA has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff and similarly situated employees have lost their jobs.

10

28. This claim is brought on behalf of a class of IBM employees across the country who may choose to opt in to this case, pursuant 29 U.S.C. §§ 216(b), 626(b).

## COUNT II

(California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.*)
(On Behalf of Plaintiff Mount and a California Class)

29. Plaintiff re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

30. Plaintiff Mount brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in California during the relevant period and have been subjected to the discriminatory practices described herein.  IBM's conduct in systematically targeting for separation employees who are older than forty (40), including Plaintiff Mount, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq*. IBM's violation of California law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Mount and similarly situated employees who have worked in California, have lost their jobs.

## JURY DEMAND

Plaintiff requests a trial by jury on all claims.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

1. Permission for Plaintiff to notify other IBM employees of their right to opt-in to this action under the ADEA, pursuant to 29 U.S.C. §§ 216(b), 626(b);

2. Find and declare that IBM violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*;

3. Certify a class action pursuant to Fed. R. Civ. P. 23 under Count II and appoint Plaintiff Mount, and his counsel, to represent a class of IBM employees who were over the age of forty (40), worked for IBM in California, and whose employment with IBM ended within the relevant time period;

4. Award compensatory damages, including back pay and front pay, in an amount according to proof;

5. Reinstate Plaintiff and similarly situated employees to their positions;

6. Award all costs and attorney's fees incurred prosecuting this claim;

7. Award liquidated damages and all appropriate statutory and regulatory damages;

8. Award interest;

9. Issue injunctive relief in the form of an order directing IBM to comply with the ADEA and California law;

10. Any other relief to which Plaintiff and class members may be entitled.

Respectfully Submitted,

RYAN MOUNT on behalf of himself and all others similarly situated,

By his attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (NY Bar No. 2971927)
Thomas Fowler, *pro hac vice*
Zachary Rubin (NY Bar No. 5442025)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com, tfowler@llrlaw.com, zrubin@llrlaw.com

Dated:   July 22, 2022

## **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of the foregoing document was served on all counsel of record for Defendant in this matter by electronic mail on July 22, 2022

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan